NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARUNAMUNIGE CHAMILA KRISHANTHI, et al., <br><br> Plaintiffs, <br><br> v. <br><br> RAJAKUMARA RAJARATNAM, JESUTHASAN RAJARATNAM, and TAMIL REHABILITATION ORGANIZATION, <br><br> Defendants. | Civil Action No. 09-5395 (JLL) <br><br> **OPINION** |

**LINARES, District Judge.**

This matter comes before the Court by way of Defendant Tamil Rehabilitation Organization ("Defendant" or "TRO")'s motion to dismiss Plaintiffs' Amended Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. [CM/ECF No. 174.] The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, Defendants' motion to dismiss is granted. Plaintiffs' Amended Complaint is dismissed *without* prejudice as to Defendant TRO.

**I.    BACKGROUND**

In an Opinion dated April 28, 2014, this Court set forth in detail the factual and procedural history of this case. (Docket #161.) As the Court writes only for the parties, it will set forth only those facts it deems relevant to deciding TRO's motion to dismiss.

The Liberation Tigers of Tamil Elam (the "LTTE") was founded in Sri Lanka in 1976. The United States government has designated the LTTE as a foreign terrorist organization since 1997.

Their goal is to establish a mono-ethnic Tamil State in northern Sri Lanka. According to the Federal Bureau of Investigation, the LTTE has murdered over 4,000 people since 2006. The LTTE is particularly known for its use of suicide bombings. The Plaintiffs in this case are victims of bombing attacks perpetrated by the LTTE in Sri Lanka in November 2007, February 2008, and April 2008.

TRO is a Sri Lankan based non-governmental organization that generates funds for the LTTE. TRO's main United States branch is located in Cumberland, Maryland. Plaintiffs state that TRO also maintains an office in Princeton Junction, New Jersey. On November 15, 2007, the United States Treasury Department ("USTD") designated TRO as a "charitable organization that acts as a front to facilitate fundraising and procurement for the LTTE." This designation prohibits United States individuals from engaging in activities with TRO. The USTD further specified that TRO-USA is the largest contributor to TRO's Sri Lankan branch. Additionally, the USTD expressly stated that TRO is "the preferred conduit of funds from the United States to the LTTE in Sri Lanka," and that TRO facilitated the "purchase of munitions, communication devices, and other technology for the LTTE" in the United States. Further, the United States Department of State indicated that "as late as 2007, [TRO-USA] was responsible for the largest percentage of overseas donations to the LTTE of any TRO office."

Plaintiffs allege that TRO funds have been used to pay the salaries of LTTE members and to pay pension benefits to the families of LTTE members who have been killed. Plaintiffs also claim that TRO knowingly gave money to the LTTE for the purpose of assisting the LTTE in carrying out the terrorist attacks that killed or injured Plaintiffs and their families. TRO held events

in New Jersey which commemorated LTTE fighters and raised money that was subsequently sent to the LTTE.

Plaintiffs filed an Amended Complaint against TRO on June 13, 2014, alleging i) aiding and abetting crimes against humanity, ii) aiding and abetting acts of terrorism, iii) reckless disregard, iv) negligence, v) wrongful death, vi) survival action, and vii) negligent/intentional infliction of emotional distress (Docket #163.) Defendant TRO filed a Motion to Dismiss on August 1, 2014, arguing that the Complaint should be dismissed for lack of personal and subject matter jurisdiction. (Docket #174.)

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure states that a defendant may move to dismiss a complaint for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). Once a defendant moves to dismiss a complaint for lack of personal jurisdiction, "the plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Provident Nat'l. Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987); *see also Mellon Bank (East) PSFS, Nat'l Assn. v. Farino,* 960 F.2d 1217, 1223 (3d Cir. 1992) ("[T]he plaintiff [must] come forward with sufficient facts to establish that jurisdiction is proper.").

Pursuant to 28 U.S.C. § 1332, a federal district court may exercise jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which it sits. *See O'Connor v. Sandy Lane Hotel Co., Ltd.,* 496 F.3d 312, 316 (3d Cir. 2007); *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 436 (3d Cir. 1987); Fed. R. Civ. P. 4(k). New Jersey's long-arm statute allows a court to exercise personal jurisdiction over non-resident defendants to the full extent allowed under the due process requirements of the United States Constitution. *See* N.J.Ct. R. 4:4–4; *Eaton Corp. v. Maslym Holding Co.,* 929 F.Supp. 792, 796 (D.N.J. 1996). Accordingly,

a party's amenability to suit in New Jersey "must be judged by Fourteenth Amendment standards." *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 284 (3d Cir. 1981).

To comply with the due process clause of the Fourteenth Amendment, a court must employ a two-part analysis. *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.,* 75 F.3d 147, 150 (3d Cir.1995). First, a court may not exercise personal jurisdiction over a non-resident defendant unless the defendant has certain 'minimum contacts' with the forum. *World–Wide Volkswagen Corp.v. Woodson,* 444 U.S. 286, 291 (1980). To find 'minimum contacts,' a court must determine that the defendant has purposefully directed its activities towards the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985). Thus, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). Second, if 'minimum contacts' are shown, "jurisdiction may be exercised where the court determines, in its discretion, that to do so would comport with 'traditional notions of fair play and substantial justice'" *Vetrotex,* 75 F.3d at 150–51 (citing *Int'l Shoe v. Washington,* 326 U.S. 310, 326 (1945)).

Minimum contacts may give rise to two types of personal jurisdiction: general jurisdiction and specific jurisdiction. To establish general jurisdiction, a plaintiff must demonstrate that a defendant "engaged in 'continuous and systemic' contacts with the forum state." *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.,* 983 F.2d 551, 554 (3d Cir. 1992). Specific jurisdiction is appropriate where "(1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to the defendant's activities with the forum; and (3) assertion of personal jurisdiction is reasonable and fair." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico,* 563 F.3d 1285, 1291 (Fed. Cir. 2009). "The first two factors correspond with the

'minimum contacts' prong of the Supreme Court's *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1360 (Fed. Cir. 2001).

### III. DISCUSSION

In response to Defendant's motion to dismiss,[1] Plaintiffs claim that this Court has personal jurisdiction over TRO under two theories: "(1) personal service within New Jersey on [TRO] under the laws of New Jersey comporting with due process; and (2) specific personal jurisdiction based on TRO's contacts with New Jersey that are sufficiently related to Plaintiff's injuries at the hands of the [LTTE] terrorist organization."

A. Personal Service on TRO's Director

Plaintiffs argue that "N.J. Court Rule 4:4-4(a)(6) permits *in personam* jurisdiction in this case over TRO." (Pl. Br. 8.) They claim that, according to this section of the rule, "personal jurisdiction can be obtained over a non-New Jersey defendant corporation" by personally serving an officer of that corporation. (*Id.*) This Court disagrees.

Paragraph (a) of R. 4:4-4 is inapplicable to this case because it deals with "personal service on individuals and entities who have a territorial presence in this State, that is, those who are subject to the State's exercise of *in personam* jurisdiction on the fundamental predicate of their being here." *Citibank, N.A. v. Estate of Simpson*, 676 A.2d 172, 176 (App. Div. 1996). However, personal service on someone who is authorized to receive service on behalf of a foreign corporation is insufficient to establish the necessary territorial presence that would subject that corporation to this State's *in personam* jurisdiction. *See Nehemiah v. Athletics Cong. of U.S.A.*, 765 F.2d 42, 47 (3d Cir. 1985) ("Since it is undisputed that mere service on a corporate agent cannot establish

---

[1] TRO also argues that Plaintiffs' Amended Complaint should be dismissed for lack of subject matter jurisdiction. This Court will not address this argument because it is unnecessary to decide this matter.

personal jurisdiction without a minimum contacts inquiry, we can find no cogent reason not to apply the same principle to an unincorporated association."); *Estate of Simpson*, 676 A.2d at 177. As such, TRO is not physically present in New Jersey for the purpose of R. 4:4-4.

The applicable section of this rule to the matter at hand is R. 4:4-4(b). Paragraph (b) refers to the appropriate service of "individuals and entities who are not present in the state but who, as a matter of due process of law, are subject to the exercise of its long-arm jurisdiction." *Estate of Simpson*, 676 A.2d at 176. Service under R. 4:4-4(b), like service under paragraph (a),[2] does not grant personal jurisdiction. Instead, "[c]onstitutional principles determine whether that service is effective for obtaining jurisdiction." *Id.* at 176-77. Service of a non-resident defendant is effective under the constitutional principle of due process of law when that defendant has 'minimum contacts' with the forum. *Woodson,* 444 U.S. at 291. A plaintiff can show that a defendant has 'minimum contacts' with the forum if they allege sufficient facts to establish either general or specific jurisdiction. *See Burger King,* 471 U.S. at 474. Thus, personal service alone is insufficient to establish personal jurisdiction. *See, e.g.*, *Nehemiah*, 765 F.2d at 47; *Estate of Simpson*, 676 A.2d at 177. As such, Plaintiffs' first theory for establishing personal jurisdiction is inapplicable to this case.

 B. Specific Jurisdiction

The analysis for determining whether a court has specific jurisdiction over a defendant has three parts. First, a court must establish whether the defendant "'purposefully directed [its] activities' at the forum." *O'Connor*, 496 F.3d at 317 (quoting *Burger King,* 471 U.S. at 472). The

---

[2] Rule 4:4-4 "does not undertake to define jurisdictional limits. It is rather a mechanical rule that merely prescribes the method of acquiring jurisdiction when constitutional principles of due process of law—not the rule—permit assertion of jurisdiction." *Estate of Simpson, 676 A.2d at 176.* An assertion of jurisdiction over a defendant that is physically present in New Jersey under paragraph (a) is permitted under the principle of due process because of that party's physical presence in the state. *Id.* Thus, the minimum contacts analysis is unnecessary under R. 4:4-4(a).

court must then decide whether "the litigation . . . "arise[s] out of or relate[s] to" at least one of those activities. *Id.* (quoting *Helicopteros,* 466 U.S. at 414; *Grimes v. Vitalink Commc'ns Corp.,* 17 F.3d 1553, 1559 (3d Cir. 1994)). "[I]f the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476 (quoting *Int'l Shoe,* 326 U.S. at 320). Though Plaintiffs have shown that TRO 'purposefully directed' its activities at New Jersey,[3] satisfying the first prong, they have failed to allege new facts that show that their injuries 'arise out of or relate' to those activities.

As this Court stated in its prior opinion, the Third Circuit has held that the inquiry of whether an injury 'arises out of or relates' to a defendant's actions begins with a "but for" causation test, which is satisfied "when the plaintiff's claim would not have arisen in the absence of the defendant's contacts." *O'Connor*, 496 F.3d at 319*; See also Med. Transcription Billing Corp. v. Bronx-Lebanon Hosp. Ctr.*, No. 12-1028, 2012 WL 2369425, at *3 (D.N.J. June 20, 2012) ("In *O'Connor*, the [Third Circuit] fully addressed [the relatedness requirement] for the first time. There, the court held that but-for causation was a necessary requirement for establishing relatedness between a defendant's purposeful contacts and each specific cause of action."); *Stinnett v. Atl. City Showboat, Inc.*, No. 07-4743, 2008 WL 1924125, at *6 n. 3 (E.D. Pa. Apr. 28, 2008) (stating that "district courts are advised to ensure the existence of 'some minimal link between contacts and claims' by beginning their analysis 'with but-for causation'"). This Court previously held that Plaintiffs failed to show any facts that establish that the LTTE's bombings would not have occurred but for TRO's New Jersey-specific activities. In doing so, this Court specifically noted that "[w]hile Plaintiffs' allegations indicate that TRO raised money in New Jersey with the

---

[3] This Court has previously held that Plaintiffs have shown that TRO 'purposefully directed' its activities at New Jersey. (Docket #161.)

7

intent that the money would eventually reach the LTTE, Plaintiffs have not shown that any of the money raised by TRO in New Jersey was used to facilitate the relevant bombings." (Docket #161.)

Plaintiffs have failed to allege any additional facts that would allow the Court to draw the reasonable inference that the money raised by TRO in New Jersey was used to injure Plaintiffs. Instead, they now argue that the "relatedness requirement set forth in *O'Connor* does not require Plaintiffs to establish in this stage that the money raised in New Jersey was used to pay for the bombs that were used in the respective attacks carried out by the LTTE." (Pl. Br. 15.) Though this Court rejected this very argument in its April 28, 2014 decision, (Docket #161), Plaintiffs did not raise this issue on a motion for reconsideration. This Court's prior holding is now law of the case. It is improper for Plaintiffs to attempt to collaterally challenge this Court's prior rulings through a response brief.

Furthermore, Plaintiffs fail to point to authority binding on this Court that supports their interpretation of *O'Connor*. Instead, Plaintiffs seem to substitute *O'Connor's* but-for causation test with the reasoning that they will ultimately succeed on the merits. (*See* Pl. Br. 13) ("[T]hough proximate cause is not the standard to determine personal jurisdiction, Plaintiffs will prove at trial that TRO's conduct proximately caused Plaintiffs' injuries. . . . the standard [in terrorist financing cases] is whether it was reasonably foreseeable that when TRO provided funding to the LTTE . . . the LTTE would cause injuries to the class of people including plaintiffs here." (Pl. Br. 13.) This is not the proper standard for establishing specific jurisdiction.

Because Plaintiffs have not alleged any additional facts to establish that LTTE's bombings would not have occurred but for TRO's New Jersey-specific activities, Plaintiffs' Amended Complaint is dismissed *without* prejudice as to Defendant TRO. To the extent the pleading deficiencies discussed herein can be cured by way of amendment, the Court will grant Plaintiffs

8

with one <u>final</u> opportunity to do so. Plaintiffs may file a Second Amended Complaint on or before October 31, 2014.

## IV. CONCLUSION

Based on the reasons set forth above, Defendant TRO's motion to dismiss [CM/ECF No. 174] is granted. Plaintiffs' Amended Complaint is dismissed *without* prejudice as to TRO. This Court will grant Plaintiffs one <u>final</u> opportunity to file a Second Amended Complaint that cures the pleading deficiencies discussed herein. Plaintiffs' failure to do so on or before October 31, 2014 will result in dismissal of Plaintiffs' claims as to Defendant TRO *with prejudice.*

An appropriate Order accompanies this Opinion.

    /s Jose L. Linares
Jose L. Linares
United States District Judge

Dated: September _19_, 2014