

THOMAS R. VALEN
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4885 Fax: (973) 639-6240
tvalen@gibbonslaw.com

June 14, 2017

**BY ECF – FILED UNDER SEAL**

The Honorable Joseph A. Dickson
United States Magistrate Judge
U.S. District Court, District of New Jersey
Martin Luther King Building - United States Courthouse
50 Walnut Street
Newark, New Jersey 07101

> Re:  **Krishanthi, et al. v. Rajaratnam, et al.,
> No. 2:09-cv-05395-JLL-JAD**

Dear Judge Dickson:

We respectfully submit this letter on behalf of Defendants Raj Rajaratnam and the Estate of the late J.M. Rajaratnam pursuant to Your Honor's Order dated May 24, 2017 (the "May 24th Order"). In it, we set forth our position on the issues identified in that Order and also respond to Plaintiffs' letter dated June 7, 2017 (the "June 7th Letter"), in which Plaintiffs (1) ask the Court to maintain confidential treatment under the Discovery Confidentiality Order and the Stipulated Amendment to Discovery Confidentiality Order (collectively, the "DCO") for all information regarding two potential fact witnesses and three Former Joint Terrorism Task Force ("JTTF") Agents (the "Former JTTF Agents"); and (2) informally and prematurely ask the Court to enter a protective order that would allow the two potential fact witnesses to testify at trial and in any deposition under pseudonyms.

In the May 24th Order, the Court instructed Plaintiffs to identify with specificity information for which Plaintiffs seek confidential treatment under the DCO. The Court required any such requests to be accompanied by a "detailed, non-conclusory explanation as to why that information is eligible for such protection." *See* ECF 301, at 6. The Court made clear that, "[a]ny designations regarding those three individuals [meaning the Former JTTF Agents] not so identified and justified shall be deemed waived." *Id.*

Plaintiffs have failed to comply with that Order. In their June 7th Letter, Plaintiffs simply restate their broad requests for confidential treatment under the DCO, rather than identify particular information for which they continue to seek confidential treatment. Instead, Plaintiffs submit in the June 7th Letter several pages of argument regarding two issues not responsive to the May 24th Order:

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
June 14, 2017
Page 2

- Plaintiffs attempt to relitigate an issue that Your Honor previously decided at the November 10, 2016 telephone conference regarding disclosure of the Former JTTF Agents' identities to Defendants; and,

- Plaintiffs seek a protective order regarding the deposition and trial testimony of two fact witnesses, without first seeking a meet and confer with Defendants on the issue and without seeking the Court's permission to file a formal motion in accordance with the Local Rules.

Moreover, Plaintiffs' June 7th Letter offers virtually no new information or explanation to support their request for confidential treatment. Plaintiffs have failed to demonstrate the propriety of their designations under the terms of the DCO, as is their burden, and have most certainly failed to demonstrate a valid basis for sealing any previously designated submissions in this matter. Accordingly, we ask that the Court remove any restrictions on the parties' use of information previously designated by Plaintiffs.[1]

    **A.**    <u>**Motley Rice Has Failed to Provide a "Detailed, Non-Conclusory" Explanation for Why Any Information Relating to the Former JTTF Agents Should Be Treated as Confidential or Outside Attorneys' Eyes Only.**</u>

On November 14, 2016, Motley Rice disclosed to Defendants the names, contact information, and partial employment history of three Former JTTF Agents whom Plaintiffs had retained as investigators in connection with this litigation: Jayat P. Kanetkar, John "Hank" Allison, and Brian P. Mallon. Plaintiffs designated all of the information contained in their November 14, 2016 letter as "Outside Attorneys' Eyes Only – Subject to Discovery Confidentiality Order." When prompted by Your Honor's May 24th Order to provide "sufficiently detailed, non-conclusory explanation[s]" for any designations concerning the Former JTTF Agents, Plaintiffs again requested broadly that the Former JTTF Agents' identities, contact information, retention by Motley Rice, and their work on this litigation should all be treated as either "Confidential" or "Outside Attorneys' Eyes Only" under the DCO.

In support of this position, Plaintiffs offer affidavits from each of the three Former JTTF Agents, which recite in boilerplate language purported safety concerns. Plaintiffs offer no other rationale to support their request for designation under the DCO. <u>First</u>, this argument is patently frivolous with respect to potential disclosure to any United States government official regarding the Former JTTF Agents, which Defense counsel has consistently, over many months, emphasized is a primary purpose for their challenge to the designations. There is no safety concern whatsoever that is implicated by sharing information regarding the Former JTTF Agents

---

[1] For the Court's convenience, we have attached as Exhibit A a list of submissions in which Plaintiffs have made designations to which Defendants object. We have not attached them because some are quite lengthy, but can provide them to the Court if Your Honor would like. Nevertheless, we submit that Plaintiffs' failure to meet their burden to demonstrate the appropriateness of their designations allows the Court to lift the restrictions broadly without having to conduct a designation-by-designation analysis.

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
June 14, 2017
Page 3

with *any* U.S. government official, regardless of whether or not that official is aware of the Agents' former employment with the U.S. government or is aware of the Former JTTF Agents' work relating to Plaintiffs' pending litigation against Defendants.  The idea that former government law enforcement agents should be permitted to conceal their identities, contact information, or former U.S. government employment information from the U.S. government itself, specifically because of fear of physical harm from the U.S. government, defies logic and common sense.  Accordingly, there should be no protections under the DCO afforded to information relating to the Former JTTF Agents with respect to the government, or, for that matter, former government officials.

Second, Plaintiffs' safety argument also fails with respect to the public at large.  As a preliminary matter, Plaintiffs' claim is anchored to the notion that the subject matter of this litigation—purported financing of terrorism activities by the LTTE—in and of itself creates security risk.  However, Plaintiffs concede, as they must, that the LTTE was dismantled many years ago.  Plaintiffs also offer no specific or recent instance of witness intimidation or similar circumstances, despite numerous public prosecutions of LTTE terrorism financing cases.

As discussed in more detail below, when Plaintiffs' arguments are scrutinized with respect to each former JTTF Agent, they fare even worse.  Even with the limited due diligence that we have been able to conduct without disclosing the names of the Former JTTF Agents, we have already identified numerous public sources for much of the same information that Plaintiffs have designated as confidential and seek to seal.

### i.   Jayat P. Kanetkar

Ample evidence to rebut Plaintiffs' claims of safety concerns with respect to Kanetkar is already before the Court.  As the Court is already aware, Kanetkar himself placed his name, resume, and F.B.I. investigations regarding the LTTE and regarding Defendants into the public domain when he spoke for attribution about his work with the JTTF and specifically his investigation of the LTTE in an article for *Vanity Fair*.  *See* Vanity Fair Article, dated September 30, 2011, at MR-LTTE-00052447-MR-LTTE-00052448 (attached hereto as Exhibit B).  Standing alone, this defeats Plaintiffs' claim that Kanetkar truly has safety concerns warranting protection under the DCO.  *See* ECF 301, at 4-5.  In addition, however, Kanetkar, himself, states that he knows of no current threat to his safety or security in his most recent affidavit.  See ECF 304, at Exhibit 7.

Undeterred by this reality, Motley Rice represents to the Court in their June 7th Letter that "[t]he investigators have not offered their services generally to the public and have not publicly disclosed their personal contact details."  *See* ECF 304, at 10.  Through Kanetkar's affidavit, which was attached to Plaintiffs' June 7th Letter as Exhibit 7, Plaintiffs proffer the following to the Court:

- Kanetkar "do[es] not publicly advertise [his] services as a private investigator.";

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
June 14, 2017
Page 4

- "Clients retain [Kanetkar] via word of mouth recommendation"; and,

- "[Kanetkar's] personal contact information is not available in relation to those services."

*See* ECF 304, Exhibit 7, at ¶¶ 5-6. Kanetkar attested to the truthfulness of these representations, under oath and under penalty of perjury, when he executed his affidavit on Plaintiffs' behalf.

There is no gentle way to say this:  Kanetkar's affidavit is demonstrably false and Motley Rice suborned this perjury.  A simple internet search alone demonstrates that Kanetkar has in fact advertised his experience and services to the public. Kanetkar has placed his contact information and professional biographies, which refer to his work on LTTE investigations, on the internet as part of his marketing efforts, all of which are readily available on at least one free website, Zoominfo.com.  His advertisement reads:

> Senior Partner and Legal Counsel Mr. Kanetkar has 10 years experience with the Federal Bureau of Investigation as a Case Agent in International Terrorism. He served as Case Agent on several high-profile investigations, including the kidnapping/ murder of Wall Street Journal reporter Daniel Pearl, for which he was awarded the FBI Director's Award for Outstanding Terrorism Investigation. He served as Case Agent on a five year, multifaceted investigation into the activities of the terrorist group Liberation Tigers of Tamil Eelam (LTTE), which led to arrests of many LTTE associates throughout the United States, as well as crippling the LTTE's abilities to operate and raise funds both in the US and worldwide. Post-FBI, for 2 years he has served as general counsel/legal consultant for a large IT firm, working on mergers and acquisitions, employment law, immigration law, and general contracts. Mr. Kanetkar began his career as an electronics engineer at the US Department of Defense Communications Engineering Command (CECOM), where he worked as a satellite and radio frequency communications designer and tester. Mr. Kanetkar merged this experience with a law degree to work as an attorney at the firm Carpenter, Bennett, and Morrisey, where he specialized in Government Contracts/Products Liability litigation, defending a client in an action involving breach of contract and fiduciary duties by a subcontractor to a prime US Government contractor. Mr. Kanetkar is a licensed attorney, admitted to practice in NJ and the Federal District of NJ. He has a JD from Seton Hall University and a BS in Electronics Engineering from Rutgers University. Mr. Kanetkar can be contacted directly at: jkanetkar@strategicsecurity-intl.com

Jayat Kanetkar, Zoominfo, http://www.zoominfo.com/p/Jayat-Kanetkar/2009418918 (last visited June 14, 2017) (attached hereto as Exhibit C).  A separate webpage on the Zoominfo website identifies Kanetkar's affiliation with his private investigation company, Guaranteed

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
June 14, 2017
Page 5

Investigations, Inc. Jayat Kanetkar, Zoominfo, http://www.zoominfo.com/p/Jay-Kanetkar/206605093 (last visited June 14, 2017) (attached hereto as Exhibit D). Moreover, the New Jersey Division of Revenue and Enterprise Services lists Kanetkar as a Principal of Guaranteed Investigations, Inc. *See* Standing Certificates, Guaranteed Investigations Inc., State of New Jersey Division of Revenue and Enterprise Service, https://www.njportal.com/DOR/businessrecords/EntityDocs/StandingCerts.aspx (searching for "Jayat Kanetkar" under "Principal Name") (last visited June 12, 2017) (attached hereto as Exhibit E). Guaranteed Investigations, Inc. has a website that advertises its various investigative services and lists contact information, including an address and telephone number. Guaranteed Investigations, Inc., http://www.guaranteedinvestigationsinc.com/ (last visited June 14, 2017) (screenshots of which are attached hereto as Exhibit F).

Moreover, because Kanetkar is also an active member of the New Jersey Bar, his location and a phone number are also available on the New Jersey Courts website.[2] *See* NJ Attorney Detail, Jayat Pramod Kanetkar, New Jersey Courts, https://portal.njcourts.gov/webe5/AttyPAWeb/pages/attorneySearchResultList.faces (searching for "Jayat Kanetkar") (last visited June 14, 2017) (attached hereto as Exhibit G). There is absolutely no basis to force Defendants to maintain Kanetkar's identity and activities as confidential when neither Motley Rice nor Kanetkar have seen fit to do so, and there likewise is no reason to credit their claim that further disclosure of such information could jeopardize his safety.

Furthermore, we note that any and all of this information was known to Kanetkar and presumably known to, or easily discoverable by, Motley Rice.

**ii. John "Hank" Allison**

Similarly, most of the information that Plaintiffs seeks to protect regarding Allison is also already publicly available. Allison's affiliations with the F.B.I. are readily available from even a cursory search of the internet. *See e.g.* Memorandum for the Record, NATIONAL ARCHIVES (Nov. 6, 2003), https://catalog.archives.gov/OpaAPI/media/2609949/content/arcmedia/9-11/MFR/t-0148-911MFR-00357.pdf (a declassified memorandum publicly disclosing Allison's employment with the F.B.I.). Other references to Allison and his employment are also available, again contradicting Plaintiffs' request for confidential treatment. Allison also concedes in his affidavit that he knows of no current threat to his safety or security.

---

[2] In their June 7th Letter, Plaintiffs state that they "do not seek confidential protection for Mr. Rohan Gunaratna, because Mr. Gunaratna publicly holds himself out as an expert and he discloses his contact details publically," ECF 304, at 9. If Plaintiffs do believe, as they represent to Your Honor, that "Mr. Gunaratna's contact details may be disclosed because they are otherwise publicly available," ECF 304, at 10, they have no basis to designate as confidential Kanetkar's information.

G IBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
June 14, 2017
Page 6

### iii.    Brian Mallon

Mallon's information, too, is publicly available, rebutting Plaintiffs' request for confidential treatment under the DCO.  Pulitzer Prize winning author and *New York Times* investigative reporter James Risen writes about Mallon in his 2014 book, *Pay Any Price: Greed, Power and Endless War*.[3]  Risen describes in detail the investigative work done by Mallon with none other than Motley Rice for Motley Rice's benefit in cases similar to this civil litigation.  It is again inconceivable that Motley Rice and Mallon were unaware of the fact that Mallon's investigative work conducted at the request of, and for the benefit of, Motley Rice was prominently featured in Risen's writing and already is publicly available.  This is especially so given that Mr. Elsner himself is several times quoted in Risen's chapter specifically involving Mallon's work for Motley Rice.  Yet, again, Motley Rice apparently elected to disregard its duty of candor to this Court regarding Mallon and the confidentiality issue.

Third, Plaintiffs fail to articulate with any specificity safety concerns regarding public disclosure of the Former JTTF Agents' commercial retention by Motley Rice in this litigation.  As noted above, the relationship between Mallon and Motley Rice has been prominently and publicly documented, and Motley Rice offers no rationale as to why this retention in this matter is somehow different.  Tellingly, and contrary to the Court's request for sworn statements, none of the Former JTTF Agents mention any concerns regarding disclosure of their retention by Motley Rice in their affidavits.[4]

### iv.    No Work Product Concerns Are Implicated

Plaintiffs' June 7th Letter also inexplicably attempts to re-litigate issues that this Court has already resolved and that are now moot.  As Your Honor is aware, Plaintiffs have already disclosed to Defense counsel the names and contact information for the Former JTTF Agents in their November 14, 2016 letter.  Nevertheless, Plaintiffs  argue that all of the information in their November 14, 2016 letter is protected by the work product doctrine.  Their November 14, 2016 letter makes only the following reservation of rights: "By providing this disclosure, Plaintiffs do not waive their right *to withhold communications with these agents* pursuant to the attorney work-product doctrine or any other protections afforded these individuals as non-testifying experts under Rule 26."  (emphasis added).  However, Defense counsel has neither requested Plaintiffs' communications with the Former JTTF Agents, nor have we sought to obtain

---

[3] James Risen*, Pay Any Price: Greed, Power, and Endless War* 70-122 (2014).

[4] Curiously, Kanetkar states in his affidavit, without citing to any prejudice or harm, that he "never disclosed any of the work [he] performed as a private investigator for Motley Rice LLC from 2009 to 2013."  Left unanswered is the question of what disclosures Kanetkar made regarding his work as a private investigator for Motley Rice from 2013 until today, disclosures which would further gut Plaintiffs' claims for confidential treatment. It bears note that Kanetkar's statement, taken at face value, contradicts his earlier affidavit to this Court that in approximately 2009 or 2010, then-AUSA Jeffrey Knox was aware of his employment by Motley Rice and that "[Kanetkar] informed Mr. Knox that [he] was currently in contact with the former U.S. government confidential witness, Mr. ▮▮▮▮▮▮▮▮  *See* ECF 276, at 11.

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
June 14, 2017
Page 7

Plaintiffs' work product.  Plaintiffs' unilateral reservation of rights is therefore inapplicable to the issue at hand.

Even if Plaintiffs had asserted in their November 14, 2016 letter that they reserved some purported right to withhold the identities of the Former JTTF Agents, as they now represent they did, that argument would necessarily fail.  Plaintiffs mistakenly conflate two separate and unrelated concepts: work-product and confidentiality.  *See* ECF 304, at 9 ("The Discovery Confidentiality Order provides that information may be designated 'Confidential' if any information, document, or thing 'contains private or confidential information.'  The identity of non-testifying experts is specifically prohibited absent exceptional circumstances under Fed. R. Civ. P. 26 and is therefore correctly designated as confidential.").  Federal Rule of Civil Procedure 26 codifies privilege rules, and its scope is limited to the exchange of information between adversaries.  *See Maldonado v. New Jersey*, 225 F.R.D. 120, 131 (D.N.J. 2004) ("*The purpose of the work-product doctrine is to protect information against opposing parties,* rather than against all others outside a particular confidential relationship, in order to encourage effective trial preparation.") (emphasis in original).  It is well established that a party cannot claim work-product protection over information that they have already knowingly disclosed to an opposing party, as from that point on the privilege no longer applies.  *See id.* ("The essential question with respect to waiver of the work-product privilege by disclosure is whether the material has been kept away from adversaries.")  The case law cited by Plaintiffs is therefore inapposite.  The cases, most of which have already been briefed before Your Honor, arose in the context of initial disclosure of witness identities *to opposing counsel*, or in other irrelevant contexts.  We are past this point.  None of the cases cited by Plaintiffs involve disclosure of witness identities by opposing counsel *to third parties*.  Therefore, Plaintiffs' argument that because something is "prohibited" under Rule 26 it is "correctly designated as confidential" is simply incoherent.

Plaintiffs also state that "the disclosure at issue was undertaken by Plaintiffs without the Court deciding this issue in an attempt to short-circuit the very mini-trial that has ensued since Plaintiffs made their disclosures," and suggest that, despite their disclosure of the Former JTTF Agents' identities to Defense counsel, Plaintiffs still retained the right to challenge the use of this information pursuant to Rule 26.  But Motley Rice did not voluntarily disclose the identities of the Former JTTF Agents.  Your Honor *compelled* Plaintiffs to disclose the identities of their investigators to Defendants during the November 10, 2016 telephone conference.[5]  Indeed, Plaintiffs refusal to disclose the identities of their investigators to Defendants was one of the primary reasons for the conference.  This is yet another of a mounting list of examples of Motley Rice stretching the truth beyond recognition, presumably with the hopes of evading detection—a tactic that violates the fundamental obligation of candor to the Court.

---

[5] *See* ECF 268 (ordering that "[o]n or before 11/16/16, Plaintiffs shall produce to defense counsel the identity of the investigator discussed during the 11/10/16 conference in this matter").  *See also* ECF 305 (Transcript of Nov. 10, 2016 Status Conference).

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
June 14, 2017
Page 8

**B.**     **Motley Rice Has Failed to Provide a "Detailed, Non-Conclusory"**
           **Explanation for Why Any Information Relating to the Purported Fact**
           **Witnesses Should Be Treated as Confidential or Outside Attorneys' Eyes**
           **Only.**

In the May 24th Order, Your Honor was clear that Plaintiffs had a "final opportunity" to justify their positions, and to "provide a sufficiently detailed, non-conclusory explanation" as to why any information that Plaintiffs had designated under the DCO was appropriately designated. *See* ECF 301, at 4-5. Ignoring Your Honor's instructions, Plaintiffs requested broad treatment of the identities of ▮▮▮▮▮▮▮▮▮▮ and Anonymous Witness 1 as "Outside Attorneys' Eyes Only" under the DCO,[6] offering little in the way of detailed, specific support for their request. Plaintiffs' proposal is unworkable and would dramatically prejudice Defendants in this litigation.

As with the affidavits submitted by the Former JTTF Agents, both fact witnesses cite concerns about their safety as the sole justification for confidential treatment of their identities. Plaintiffs' June 7th letter ignores several critical distinctions that must be addressed. First, Plaintiffs do not adequately distinguish between *types* of information that they have designated as confidential. The reasons for designating ▮▮▮▮▮▮▮▮ (i) name; (ii) home address; (iii) e-mail address; (iv) telephone number; (v) history as a government confidential witness; (vi) relationship and history with the Former JTTF Agents; (vii) relationship and history with Motley Rice; and (viii) conversations with F.B.I. Agent Jason Goodman, who allegedly blessed ▮▮▮▮▮▮▮▮ involvement in this litigation, are all distinct pieces of information, the designations of which must be justified with particularity, as Your Honor clearly ordered. For example, Plaintiffs' reasons for designating ▮▮▮▮▮▮▮ ▮▮▮▮ ▮▮▮ ▮▮▮▮▮▮ which contains no personal identifying information, may necessarily be different than Plaintiffs' reasons for designating ▮▮▮▮▮▮▮▮ history as a government confidential witness. The strength of Plaintiffs' reasoning should in turn be evaluated with respect to each piece of information individually. Plaintiffs similarly fail to specifically identify, and provide particularized justifications for, different pieces of information designated as "Outside Attorneys' Eyes Only" with respect to Anonymous Witness 1.

Second, and perhaps most critically, Plaintiffs do not distinguish between audiences. Plaintiffs broadly assert that any information regarding the fact witnesses should be protected under the DCO for one reason—the witnesses "fear that [they] may suffer physical harm by

---

[6] We note that Plaintiffs failed to request confidential treatment for Anonymous Witness 2 (a/k/a ▮▮▮▮▮▮▮▮ in their June 7th Letter. Plaintiffs have designated this witness's identify as "Highly Confidential – Outside Attorneys' Eyes Only," but did not address this designation in their letter. Given Your Honor's Order, and that Plaintiffs referenced every individual for which they have requested confidential treatment *except* for Anonymous Witness 2, any confidential treatment previously requested by Plaintiffs regarding Anonymous Witness 2 should be deemed waived.

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
June 14, 2017
Page 9

LTTE supporters" if their identities are disclosed in this litigation.[7]  *See* ECF 304, at 3.  Putting aside for a moment the question of whether the witnesses' safety concerns are legitimate and/or objectively reasonable, Defendants have repeatedly emphasized that there are primarily two potential recipients of the information in question: the government and the general public.

### i.    Disclosure With Respect to the Government

With respect to the government, Plaintiffs' assertion that the witnesses fear for their safety is utterly baseless.  Surely, the witnesses have no legitimate basis to argue that safety concerns about retribution from the LTTE require that information be kept from the U.S. government.  Moreover, as Plaintiffs have conceded, the government already has access to much, if not all, of the information about ███████████ that Plaintiffs have designated as "Outside Attorneys' Eyes Only."  Under the DCO, the witnesses' safety concerns are not a legitimate basis for keeping any information regarding the witnesses from the government.

Ironically, perhaps the best way to protect against any safety risks for ███████████ would be to confer with the government prior to eliciting ███████████ testimony—the very step that Defendants have emphasized for months that they wish to take, and which Plaintiffs have bitterly resisted.  Neither this Court, Motley Rice, nor Defendants, are better positioned than the government to assess such risk for a former confidential witness.  Nonetheless, Motley Rice has already created declarations and utilized information from ███████████ to "investigate" its civil claims without the expertise to properly assess the risk that it now claims.

### ii.    Disclosure With Respect to the Public

With respect to the general public, the question of whether or not the fact witnesses' identities may warrant protection from disclosure as a part of this litigation is admittedly a somewhat closer call.[8]  Unfortunately, Plaintiffs have not provided any significantly detailed information regarding the nature of the witnesses' safety concerns and therefore it is difficult to assess the merits of these claims.

However, even if the Plaintiffs sought and were granted permission to file a motion to keep the identities of these witnesses secret throughout discovery and the trial in this matter, they

---

[7] It must be noted that Plaintiffs seek to designate as "Outside Attorneys' Eyes Only" information regarding two individuals who claim to have been members of the LTTE.  Despite representations in the witnesses' affidavits, it strikes us equally possible that confidential treatment primarily serves the witnesses by preventing the U.S. government, the Sri Lankan government, or even fellow citizens of Sri Lanka, from discovering that ███████████ and Anonymous Witness 1 were members of a now-dismantled terrorist organization responsible for unspeakable atrocities in their home country.  Public policy would not require protecting the identities of such individuals.

[8] We take seriously the safety and security of any individuals associated with this litigation.  This litigation highlights atrocities committed in a war-torn Sri Lanka and has drawn significant public attention.  However, only legitimate, particularized safety concerns may be grounds for protections under the DCO.  General pleas regarding the safety concerns of individuals who voluntarily involved themselves in this public civil litigation, knowing full well the facts and issues at play, should be considered with careful scrutiny.

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
June 14, 2017
Page 10

would need to show good cause for such relief. *See Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir.1995) ("A party seeking a protective order over discovery materials must demonstrate that 'good cause' exists for the protection of that material."); Fed. R. Civ. P. 26(c). Plaintiffs would have to overcome a significant burden. *See Glenmede Trust Co.,* 56 F.3d at 483. ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing."). The Third Circuit has recognized several factors that may be considered in evaluating whether good cause exists: "1) whether disclosure will violate any privacy interests; 2) whether the information is being sought for a legitimate purpose or for an improper purpose; 3) whether disclosure of the information will cause a party embarrassment; 4) whether confidentiality is being sought over information important to public health and safety; 5) whether the sharing of information among litigants will promote fairness and efficiency; 6) whether a party benefitting from the order of confidentiality is a public entity or official; and 7) whether the case involves issues important to the public." *Id* (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-91 (3d Cir. 1994)).

### iii.   Designation Would Severely Prejudice Defendants

Here, on the facts that have been presented to the Court, no such good cause has been shown. At the same time, there is a substantial prejudice and unfairness to Defendants in restricting their use of information regarding the potential witnesses, particularly disclosure of their identities, such that the fifth factor above, "whether the sharing of information among litigants will promote fairness and efficiency," is heavily implicated. Plaintiffs here seek an unworkable restriction on Defendants' use of these witnesses' information. At the heart of the inquiry is whether a party will have sufficient opportunity to pursue "avenues of in-court examination and out-of-court investigation." *See U.S. v. Fuentes,* 988 F.Supp. 861, 866 (E.D. Pa. 1997) (citing *Smith. v. Illinois*, 390 U.S. 129, 131 (1968)). The protective order that Plaintiffs seek will significantly impair Defendants' ability to conduct any meaningful out-of-court investigation. Simply put, it is virtually impossible for Defendants to conduct any meaningful diligence or investigation regarding the witnesses in advance of their depositions or trial testimony if confidentiality restrictions are imposed and they cannot even disclose their names. As but one of many examples, Defendants would be unable, if the designation were upheld, to interview the individuals named by ████████████ in his declaration to determine if ████████ recitation was truthful. Defendants will be almost entirely prevented from investigating and pressure-testing the fact witnesses' allegations, either through declaration, deposition or trial testimony, if unable to make independent inquiry about the witnesses.

### iv.   Standing

There is also the foundational question of whether Plaintiffs even have standing to claim such protection for the witnesses. It is improper for a party to request a protective order on behalf of non-party witnesses. *See Constand v. Cosby*, 229 F.R.D. 472, 479 (E.D. Pa. 2005) (Plaintiff's motion for protective order on behalf of her witnesses denied because it "fail[ed] to show how 'disclosure will work a clearly defined and serious injury to [plaintiff herself, as] the

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
June 14, 2017
Page 11

party seeking closure'"").  Motley Rice presumably does not represent either of the witnesses in this litigation.  If there is a need at some point to address this issue, the proper litigant would be the witnesses themselves, not Plaintiffs.

> **v.   Plaintiffs' Informal and Premature Request for Restricting Public Access is Procedurally Infirm.**

        The inappropriateness of Plaintiffs' attempt to bypass the required protocol for motion practice is underscored by the extraordinary nature of the relief that they request.  Plaintiffs cite to inapplicable case law in the June 7th Letter, but they also fail to meet the requirements for protective order set forth in Local Civil Rule 5.3.  Subsection 5.3(c)(1) states: "Any motion and supporting papers to seal or otherwise restrict public access shall be available for review by the public."  Subsection 5.3(c)(3) provides that the motion shall "describe[e] with particularity: (a) the nature of the materials or proceedings at issue; (b) the legitimate private or public interests which warrant the relief sought; (c) the clearly defined and serious injury that would result if the relief sought is not granted; and (d) why a less restrictive alternative to the relief sought is not available."

        Plaintiffs have also neglected to address this Circuit's well established "common law right of access to judicial proceedings" to the public in civil cases.  *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1066 (3d Cir. 1984).  This public right of access entails not only the ability to attend open court proceedings, but also the ability to inspect and copy judicial records and documents.  *See In re Cendant Corp.,* 260 F.3d 183, 192 (3d Cir. 2001); *Littlejohn v. BIC Corp.,* 851 F.2d 673, 678 (3d Cir. 1988).  The public interests which underscore the public right of access have been summarized by the Third Circuit:

> The public's exercise of its common law access right in civil cases promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court . . . As with other branches of government, the bright light cast upon the judicial process by public observation diminishes possibilities for injustice, incompetence, perjury, and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness. *Littlejohn,* 851 F.2d at 678.

        In considering the competing interests here, the Court should take guidance from the deeds, not the words, of the two fact witnesses themselves.  These two witnesses have voluntarily elected to inject their allegations into this civil litigation.  They have done so in the absence of any Court ruling or assurance upon which they could rely that their testimony would be treated as confidential or that they would be allowed to testify anonymously.  These witnesses themselves considered the benefits of voluntarily participating and testifying in this civil litigation and apparently concluded that those benefits would outweigh any safety risks that they

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
June 14, 2017
Page 12

now claim exist.[9]   Because Plaintiffs have failed to produce any detailed explanation or documents supporting their request for blanket confidential treatment of the fact witnesses under the DCO, Plaintiffs' request should be denied.[10]

## CONCLUSION

Time and time again, Motley Rice has made broad appeals to safety concerns in order to prevent Defendants, the U.S. government, and Your Honor from learning information subject to disclosure under the Federal Rules of Civil Procedure, the Local Rules, and Orders of this Court. Time and time again, when pressed for explanation regarding the basis for these safety concerns, Motley Rice has failed to provide Defendants or this Court with any such detail. Even when given a "final opportunity" by Your Honor to explain with particularity why information should be kept confidential, Motley Rice failed to provide an adequate response. Motley Rice's consistent use of the DCO and the sealing authority of this Court as both a sword and a shield undermines the ability of Defendants to develop and present an adequate defense to the very serious allegations Plaintiffs have made.

We respectfully request that Your Honor deny Plaintiffs' requests (1) for a protective order permitting Anonymous Witness 1 and ▮▮▮▮▮▮▮ from testifying at trial or in any deposition under pseudonyms; (2) to maintain Anonymous Witness 1 and ▮▮▮▮▮▮▮ identities and contact details as "Outside Attorneys' Eyes Only"; (3) to maintain Mallon's address, phone number, and email address as "Outside Attorneys' Eyes Only"; (4) to designate the identities of Former JTTF Agents Kanetkar, Mallon, and Allison as "Confidential"; (5) to prohibit Defense counsel from engaging in "any further dissemination of this information"; (6) to maintain Kanetkar and Allison's contact information as "Confidential"; (7) to impose procedures whereby Plaintiffs supervise, restrict, or control Defense counsel's investigation, communications, or defense; and (8) to seal Your Honor's Letter Order, dated April 24, 2017. We further request that Your Honor deem as waived confidential treatment of any information

---

[9] This claim by the witnesses of safety risk casts even further doubt on the arrangement between Motley Rice and the witnesses. It is implausible to think that the witnesses willingly accepted the risk that they now claim with no quid pro quo from Motley Rice, given that there was no way to compel their participation in this litigation otherwise. And, while Motley Rice has represented that it has not compensated the witnesses, we do know that Motley Rice has already paid the former government confidential witness at least approximately US $40,000 (which today converts to approximately 6,102,000.00 Sri Lankan Rupees) the lion's share of which was provided by Motley Rice to the witness prior to the start of civil discovery in this case. This payment went towards items including a new iPhone 5, Microsoft Office software, a lease on a piece of property and a car lease in Sri Lanka for nearly three months, and rental cars, airfare, drivers, bridge tolls, hotel stays, and food in India, Sri Lanka, and/or the United States. While the confidentiality designations and the delay this dispute has caused have, to date, prevented Defendants from investigating this further, it would appear that such payment may be in violation of the prohibitions against compensating fact witnesses. *See, e.g., Goldstein v. Exxon Research & Eng'g Co.*, 1997 U.S. Dist. LEXIS 14600 (D.N.J. Feb. 28, 1997).

[10] It is telling that Motley Rice has never once sought protections for any of the Plaintiffs themselves, who are all living in Sri Lanka and have publicly denounced the LTTE through their Complaint and court filings. Indeed, Motley Rice has not designated as confidential the limited contact information they have provided for the Plaintiffs. *See* Plaintiffs' Address Report, dated September 8, 2016 (attached hereto as Exhibit I).

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
June 14, 2017
Page 13

not specifically designated as "Confidential" or "Outside Attorneys' Eyes Only" in Plaintiffs' June 7th Letter, such as (9) ██████████ history as a government confidential witness vis-a-vis the U.S. government, relationship and history with the Former JTTF Agents, relationship and history with Motley Rice, and conversations with F.B.I. Agent Jason Goodman; (10) any information regarding the Former JTTF Agents' previous employment, contact information, or personal history obtained by Defense counsel through public sources, private investigation, or communication with third parties; (11) information regarding Motley Rice's retention of the Former JTTF Agents. We further request that, pending the Court's consideration of the issues described herein, (12) any letters filed under seal in this litigation, by either party, specifically due to information that Your Honor determines is no longer entitled to confidential treatment, be unsealed or filed on the public docket with appropriate redactions. Above all, we respectfully request that (13) Defense counsel be permitted to share the information referenced in this letter with the U.S. government, as no showing has been made that Defense counsel's dissemination of any such information to the U.S. government would jeopardize the safety or security of ██████████ Anonymous Witness 1, Anonymous Witness 2, Kanetkar, Allison, or Mallon.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Apart from the designation issue that is before the Court now and is hopefully addressed above, Defendants would be remiss to not raise our concerns about Plaintiffs' conduct in this litigation. Motley Rice's solicitation and advancement of Kanetkar's blatantly false affidavit leaves no room for innocent explanation.

But perhaps more troublingly at a macro level is Risen's book, *Pay Any Price: Greed, Power, and Endless War,* which details Motley Rice's clandestine use of government agents and information to profit via civil litigation. This calls directly into question Motley Rice's protestations over the past year and countless letters over the Former JTTF Agents. Motley Rice has insisted to Your Honor that Defendants' "outlandish" inquiries were "based on rank supposition and specious allegations that have no grounding in fact or law," and that "[d]efense counsel continues to manufacture facts in an attempt to support some vast conspiracy against them." *See* ECF 304, at 9; ECF 276, at 1; ECF 300, at 2. Motley Rice did so despite knowing—and hiding from the Court—the fact that similar allegations have been made against Motley Rice in other matters and have been the subject of investigation by the Department of Justice.[11] This fact alone would seem to explain Motley Rice's strident refusal to allow disclosure of its "arrangement" with the Former JTTF Agents to the government, while simultaneously and incoherently claiming to have received *post-hoc* approval for their retention of the Former JTTF Agents from various government officials.

---

[11]  *See* James Risen, Terrorist Claims Return Sept. 11 Suit to Spotlight, N.Y.Times (Feb. 10, 2015), https://www.nytimes.com/2015/02/11/world/middleeast/terrorists-claims-about-saudis-put-9-11-families-lawsuit-back-in-spotlight.html?mcubz=1 (attached hereto as Exhibit H).

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
June 14, 2017
Page 14

The prejudice to Defendants is that Motley Rice has been able to present and maintain sensational and poisonous allegations against Defendants by using tactics that may be improper or worse.  Even hamstrung as we have been by the confidentiality designations, what we have learned regarding Motley Rice and their retention of the Former JTTF Agents is disquieting. There is no dispute that the Former JTTF Agents gained knowledge relevant to this civil litigation from their service as government law enforcement agents.  The Former JTTF Agents then left government service in or about 2002 and 2006, while the prosecutions arising out of their investigative work for the government were ongoing.  Motley Rice secretly retained the Former JTTF Agents to provide it with information regarding the very same highly sensitive, terrorism prosecutions, and to do so in pursuit of private, financial gain.  Worse yet, Motley Rice has conceded that neither it nor the Former JTTF Agents received any advance approval from the government for this unorthodox (at best) arrangement, and they have fought tooth and nail for the past seven months to resist disclosure to the government even now.  Similarly, Motley Rice engaged the government's confidential witness—who was introduced to them by the Former JTTF Agents—while the terrorism prosecutions on which the confidential witness participated were ongoing.  Again, this was to assist Motley Rice in its pursuit of private, financial gain.  On this, too, Motley Rice has fought tooth and nail to avoid disclosure to the government.

Although we of course do not know the full extent of what has taken place, the potential implications may be profound.  The positions that Motley Rice has asked the Court to take would make it permissible for private plaintiffs to purchase secretly information derived from law enforcement evidence-gathering for private use with little or no oversight or limitation.  It would also suggest that government confidential witnesses would be able to sell their information to the highest private bidder, even while government prosecutions are ongoing.  This simply cannot be the case.  To offer an example of the absurdity of Motley Rice's conduct, Plaintiffs' argument, if accepted, would mean that any of the criminal defendants prosecuted as a result of the Former JTTF Agents' investigation and the government's confidential witness' anticipated testimony would themselves have been able secretly to retain the Former JTTF Agents (if they first left law enforcement) or the government's confidential witness while the criminal charges remained pending in order to purchase a preview of the government's evidence.  Understandably, this type of transaction—which appears to be precisely what Motley Rice has undertaken—is not permitted. [12]

---

[12] Although the limited factual information disclosed to date makes it premature to comprehensively brief the legal framework and potential consequences regarding the unauthorized disclosure, sale, or receipt of U.S. government information, we again note that our concerns are grounded in existing law.  *See* ECF 271, at 5-7; see 18 U.S.C. § 641 (making it a crime to steal, sell, convey, or dispose of any "record, voucher, money, or thing of value of the United States or any department or agency thereof"); 5 C.F.R. § 2635.703 ("An employee [of the Executive Branch] shall not engage in a financial transaction using nonpublic information, nor allow the improper use of nonpublic information to further his own interest or that of another, whether through advice or recommendation, or by knowing unauthorized disclosure.").

G<span>IBBONS</span> P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
June 14, 2017
Page 15

Thank you for Your Honor's time and patient consideration of these important and difficult issues.

Respectfully,

*s/Thomas R. Valen*

Thomas R. Valen

TRV/sgs
Encls.

cc:    All Counsel of Record
       (via ECF)

# EXHIBIT
# A

*Krishanthi, et al. v. Rajaratnam*,
No. 2:09-cv-05395-JLL-JAD

**PLAINTIFFS' IMPROPER DESIGNATIONS UNDER THE DCO**

| DATE | DESCRIPTION | RELEVANT INDIVIDUAL(S) | DESIGNATION | ECF No. |
|------|-------------|------------------------|-------------|---------|
| 11/25/2015 | Letter from Plaintiffs to Defendants | • ███████████████ | Highly Confidential | |
| 02/26/2016 | Letter from Plaintiffs to Defendants | • Anonymous Witness 1, ██████ ██████<br>• Anonymous Witness 2, ██████████ | Highly Confidential, Attorneys' Eyes Only | |
| 09/12/2016 | Email from Plaintiffs to Anura Meddegoda | • Anonymous Witness 1 [Unnamed] | Confidential | |
| 11/04/2016 | Letter from Plaintiffs to Judge Dickson | • ███████████ | Filed Under Seal | 260 |
| 11/08/2016 | Letter from Plaintiffs to Judge Dickson | • ███████████ | Filed Under Seal | 263 |
| 11/14/2016 | Letter from Plaintiffs to Defendants | • ███████████<br>• Anonymous Witness 1, ██████<br>• Dr. Rohan Gunaratna<br>• Brian P. Mallon<br>• Jayat P. Kanetkar<br>• John "Hank" Allison | Outside Attorneys' Eyes Only – Subject to Discovery Confidentiality Order | |
| 12/02/2016 | Letter from Plaintiffs to Defendants, Enclosing Affidavit of Anonymous Witness 1 and Related Documents | • Anonymous Witness 1, ██████ ██████ | Highly Confidential – Attorneys' Eyes Only | |

\* Note that Plaintiffs have incorrectly used various spellings to refer to ████████ ██████████i in the past.  For ease of understanding, we refer to ████████████ in this chart using what we understand to be the true spelling of his name.

1

| DATE | DESCRIPTION | RELEVANT INDIVIDUAL(S) | DESIGNATION | ECF No. |
|---|---|---|---|---|
| 12/09/2016 | Letter from Plaintiffs to Defendants, Enclosing Document | • ███████████ | Highly Confidential | |
| 12/13/2016 | Letter from Plaintiffs to Defendants, Enclosing Documents. | • ███████████ | Highly Confidential | |
| 12/20/2016 | Letter from Plaintiffs to Judge Dickson | • ███████████<br>• Anonymous Witness 1 [Unnamed]<br>• Brian P. Mallon<br>• Jayat P. Kanetkar<br>• John "Hank" Allison<br>• Jeffrey Knox | Filed Under Seal | 276 |
| 02/21/2017 | Email from Plaintiffs to Defendants | • ███████████ | Highly Confidential | |
| 05/17/2017 | Letter from Plaintiffs to Judge Dickson | • Jayat Kanetkar | Filed Under Seal | 300 |
| 06/07/2017 | Letter from Plaintiffs to Judge Dickson | • ███████████<br>• Anonymous Witness 1, ██████<br>• Dr. Rohan Gunaratna<br>• Brian P. Mallon<br>• Jayat P. Kanetkar<br>• John "Hank" Allison | Filed Under Seal | 304 |

Notwithstanding the above designations, the following documents contain information previously designated by Plaintiffs, but were not themselves designated.

| DATE | DESCRIPTION | RELEVANT INDIVIDUAL(S) | DESIGNATION | ECF No. |
|---|---|---|---|---|
| 08/19/2016 | Letter from Plaintiffs to Defendants, Enclosing Plaintiffs' Revised Objections and Responses to Defendants' First Set of Interrogatories to Plaintiffs | • ██████████████<br>• Anonymous Witness 1 [Unnamed]<br>• Anonymous Witness 2 [Unnamed] | ██████████████ was discussed at length, but Plaintiffs did place any confidential designation on the letter or the Objections and Responses themselves. | |
| 09/21/2016 | Letter from Plaintiffs to Defendants | • ██████████████<br>• Anonymous Witness 1 [Unnamed] | Plaintiffs referred to ██████████████ by name, but did not place any confidential designation on their letter. | |
| 09/29/2016 | Email from Plaintiffs to Defendants | • ██████████████<br>• Anonymous Witness 1 [Unnamed] | Plaintiffs referred to ██████████████ by name, but did not place any confidential designation on their email. | |
| 10/27/2016 | Letter from Plaintiffs to Defendants, Enclosing Plaintiffs' Revised Objections and Responses to Defendants' First Set of Interrogatories to Plaintiffs | • ██████████████<br>• Anonymous Witness 1 [Unnamed]<br>• Anonymous Witness 2 [Unnamed] | ██████████████ was discussed at length, but Plaintiffs did place any confidential designation on the letter or the Objections and Responses themselves. | |
| 01/06/2017 | Letter from Plaintiffs to Defendants | • ██████████████ | Plaintiffs referred to ██████████████ by | |

| DATE | DESCRIPTION | RELEVANT INDIVIDUAL(S) | DESIGNATION | ECF No. |
|------|-------------|------------------------|-------------|---------|
|      |             |                        | name, but did not place any confidential designation on their letter. |      |

# EXHIBIT
# I



RE: Krishanthi, et al. v. Rajaratnam, et al., No. 2:09-cv-05395-JLL-JAD - Plaintiff Address Report

"Unterreiner, Amanda" <ahobby@motleyrice.com>

to:

'George Barchini', William P. Deni Jr., Thomas R. Valen, Samidh Guha

09/08/2016 06:56 PM

Cc:

"Joseph J. DePalma", "Elsner, Mike", "Eubanks, John"

Hide Details

From: "Unterreiner, Amanda" <ahobby@motleyrice.com>
To: 'George Barchini' <gbarchini@jonesday.com>, "William P. Deni Jr." <wdeni@gibbonslaw.com>, "Thomas R. Valen" <tvalen@gibbonslaw.com>, "Samidh Guha" <sguha@jonesday.com>
Cc: "Joseph J. DePalma" <JDePalma@litedepalma.com>, "Elsner, Mike" <melsner@motleyrice.com>, "Eubanks, John" <jeubanks@motleyrice.com>

1 Attachment



20160908 Plaintiff Address Report.pdf

Counsel,

Pursuant to last week's request, please find the attached Plaintiff Address Report.

Thanks,

Amanda

**Amanda Unterreiner** | Paralegal | Motley Rice LLC
28 Bridgeside Blvd. | Mt. Pleasant, SC 29464
o. 843.216.9210 | f. 843.216.9450 | ahobby@motleyrice.com

**From:** George Barchini [mailto:gbarchini@jonesday.com]
**Sent:** Friday, September 02, 2016 2:20 PM
**To:** Elsner, Mike <melsner@motleyrice.com>; Eubanks, John <jeubanks@motleyrice.com>
**Cc:** Joseph J. DePalma <JDePalma@litedepalma.com>; Unterreiner, Amanda <ahobby@motleyrice.com>; Samidh Guha <sguha@jonesday.com>; Thomas R. Valen <tvalen@gibbonslaw.com>; William P. Deni Jr. <wdeni@gibbonslaw.com>
**Subject:** Krishanthi, et al. v. Rajaratnam, et al., No. 2:09-cv-05395-JLL-JAD

Counsel,

Please see the attached correspondence.

Best,

George

George M. Barchini
Associate
**JONES DAY® - One Firm Worldwide℠**
250 Vesey Street
New York, NY 10281-1047
Office: +1.212.326.7848
Fax:  +1.212.755.7306
gbarchini@jonesday.com

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by
attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without
copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

Confidential & Privileged


Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential
information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not
the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have
received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--
electronic, paper or otherwise--which you may have of this communication.

| Plaintiff First Name | Plaintiff Middle Name | Plaintiff Last Name |
| --- | --- | --- |
| M.H.M. | | Aarif |
| G. | | Pemawathie |
| W. Nimal | | Ratnasiri |
| H.P. | | Gnanawathie |
| T.M. | | Palihakkara |
| Dingiribandage | | Sirisena |
| A. Wasantha | | Amarasingha |
| Sadhisa | Jayasinghe | Gunasekara |
| Illukkuwe | Gedara Tikiri | Banda |
| A.M. | | Jothipala |
| P.P. | Wemal | Abeyratna |
| P.P. | | Jayasundara |
| Mestiyage | Ranjanee | Fernando |
| Mahasen | Arachchilage Pathminie | Kumari |
| Tennakone | Mudiyanselage Udaya Shantha | Bandara |
| Bandage | | Bandupala |
| Auwsadahamige | | Basnayake |
| Samarasingha | Gunasekara | LeeLawathie |
| Bandupalage | Chintha | Irangani |
| Weerasinghege | Murin | Silva |
| Pettage | | Chandradasa |
| W.A. | | Mithrawathie |
| C.M. Dilrukshi | | Chandrasiri |
| Shamila | Prasandika | Chandrasiri |
| W.M.A. | | Wijesiri |
| Menikralage | | Jayawardena |
| Auwsada | Hamige | Nandawathi |
| Dasanyakege | Kumaradasa | Dasanayake |
| Ukkuralage | | Dasanayaka |
| Bandage | | Sirisena |
| Punyaseeli | Dhammika | Rajapakse |
| Ranasinghege | | Leelawathi |
| Ukkubandage | | Anurakumari |
| H.A. | | Senevirathna |
| Basnayake | Mudiyanselage Champika Kumudini | Disanayake |
| Jayawardenage | | Padmini |
| Menikralage | | Mallikawathie |
| Wijesinghege | | Indrani |
| Mohamed | Faseen Mohamed | Fashan |

| | | |
|---|---|---|
| Hettiyakandage-Anusha | | Kumari-Fernando |
| Gangodawillge | Kusumawathi | Dabare |
| Wannaku Watta Waduge Ruwan Dananjaya | | Fernando |
| Wattoru | Tantrige Chaturika | Fernando |
| P. Bandula | | Gamini |
| Ranasinghege | | Gamini |
| Naiduralage | | Ratnayaka |
| Don Sarath | Chandrasoma | Hallala |
| Wijerathnage | | Karunaratna |
| Malamige | | Chandrawathi |
| A.A. | | Kusumawathi |
| Senehiweera | Arachchige | Munidasa |
| S. | | Pathmakanthi |
| W.A. | | Gnanawathi |
| K. Manjula | | Nayanakanthi |
| W. M. Saman | Kumara | Jayarathna |
| Karunamunige | Chamila | Krishanthi |
| Ratnayakage | Deepa | Kalyani |
| Bandage | | Kamalawathi |
| Ukkuralalage | | Kapuruhamy |
| K. Sujeewa | Malkanthi | Karanadasa |
| Karunadasage | Dinusha Disnakanthi | Karunadasa |
| K. Manjula | | Nayanakanthi |
| Karunadasage | Sunil | Karunadasa |
| Shama | Chaturangani | Karunadasa |
| Punchi | Bandage Nimal | Karunarathna |
| Diyawadanage | Subashini Sagarika | Priyadarshani |
| Mudalihamyge | | Karunaratne |
| Mudalihamyge | | Karunaratne |
| P.P. | | Jayasundara |
| Kapuruhamige | | Yasapala |
| Mudali | Hamige | Sugathadasa |
| Wijerathnage | | Karunaratna |
| Buda | Godage Vonica | Keerthilatha |
| Karunamunige | Chamila | Krishanthi |
| Appuhamyge | | Dayawathie |
| Dissanayaka | Mudiyanselage Sisira | Kumara |
| A. Chandra | | Swarnalatha |
| Kankanamage | | Wijeratna |
| Theymuni | Dewage | Dayawathi |

| | | |
|---|---|---|
| T.V.M. | | Sirisena |
| Ranpati Devalage Nishantha | | Kumara Ratnadawa |
| Menikralage | | Pemawathi |
| Seneviratnage | Chandra | Pathmakanthi |
| Thawamani | | Pushparani |
| G.S. Chitralal | | Perera |
| Bandupalage | Chintha | Irangani |
| Senaviratnace | | Leelaratna |
| Ranasinghege | | Leelawathi |
| Jayawardanage | Pathmini | Jayawardena |
| Kuruppuge | Done Lankika | Madhushani |
| Done | Pathminie | Mahamudalige |
| Auwsada | Hamyge | Ariyasena |
| Wijeratnage | Sujatha Chandralatha | Mallika |
| Galhenage | Dhanawathie | Perera |
| Dickovita | Kankanamge | Pemawathie |
| Mohamed Musthafa Sahul | | Hameed |
| Godihena Gamage | Niluka Sudarshani | Gamage |
| Wasantha | Kumari | Piyarathna |
| Wattege Seetha | | Pathmaseeli |
| Nanhamige | Samantha | Nimal |
| K.P. | | Premachandra |
| Seneviratnage | Chandra | Pathmakanthi |
| Shama | Chaturangani | Karunadasa |
| Bandage | | Jayawardana |
| Dingiri | Bandage | Pathmawathie |
| Hathwellage | Dona | Sriyani |
| Kasturi | Arachchige Done | Gunawathi |
| Juwandara | Kankanamge Niranjala Trixey | Perera |
| Naranpitage | Rohana Pathmasay | Perera |
| M. Nandasiri | | Peris |
| Auwsada | Hamige | Piyadasa |
| M. | Susil | Piyarathna |
| Balapuwaduge | Thusani Manahari | Mendis |
| P. | | Leelawathi |
| Wasantha | Kumari | Piyarathna |

| | | |
|---|---|---|
| Udahage | Don Asanka Chandra | Kumara |
| Nanhamyge | | Premadasa |
| Chandrasekerage | | Rupasinghe |
| Bandage | | Kamalawathi |
| T.V.M. | | Sirisena |
| Wijayan | | Rajaratnam |
| Wijeratnage | Sujatha Chandralatha | Mallika |
| Chandrasekerage | | Wimalawathie |
| Rajapakse | Manikkuthambi Yamuna | Rani |
| W. | Lalitha | Kumari |
| Naiduralage | | Chandrasekara |
| W. Nimal | | Ratnasiri |
| KandeDura | Aarachchilage Aananda | Ratnasiri |
| Naiduralage | | Ratnayaka |
| R. C. Kumara | | Ratnayake |
| Chandrasekerage | | Rupasinghe |
| Chandrasekerage | | Rupasinghe |
| Chandrasekerage | | Rupasinghe |
| Kaluwage | | Karunawathie |
| Heeralu Wattege Rasika | | Samanmali |
| Kapuru | Hamige Manal | Samaranayaka |
| K. Sujeewa | Malkanthi | Karanadasa |
| K. Sujeewa | Malkanthi | Karanadasa |
| Bandupalage | Chintha | Irangani |
| Krunadasage | Sunitha | Karunadasa |
| Bandage | | Senanayaka |
| Auwsadahamige | | Senanayake |
| Senanayakage | Anoma Privadarshani | Senanayake |
| H.A. Nirosh | Darshana | Senaviratna |
| Dingiri | Bandage | Pathmawathie |
| Silamburalage | | Seneviratne |
| Mudalihamyge | | Karunaratne |
| S.P.D. | | Somapala |
| Baddaralage | | Siripala |
| Auwsadahamige | | Kirimenika |
| Mudelihamige | | Siriwathie |
| L.A. | | Sisiliyana |
| Karunarathnage | | Somasiri |
| Wasantha | Kumari | Piyarathna |

| | | |
|---|---|---|
| Sirisenage | | Pemalatha |
| Malalgodapitiya | Gamage Lahiru | Madhusanka |
| P.P. | | Jayasundara |
| Mudali | Hamige | Sugathadasa |
| S.M. | Amarawathi | Menike |
| Kiribandage | | Piyaratne |
| A.M. | Evanus | Wimalasiri |
| K.L. | | Leelawathi |
| Captain | Pathmasiri | Thewarapperuma |
| M.G. | Manel | Ramyalatha |
| Auwsada | Hamige Ariyadasa | Thilakaratne |
| Auwsada | Hamige Ariyadasa | Thilakaratne |
| Palliyagoda Kalukankanamage | Ramani | Peiris |
| A.H. | | Darmasena |
| Pathiraja | Mudiyanselage | Punchibanda |
| Liyana | Arachchige Asoka | Upali |
| Baddaralage | | Siripala |
| Kirihamige | | Walliethana |
| K. Pavithra | | Warnakanthi |
| T.D. | | Kanthi |
| Nanhamyge | | Weerasena |
| Weerasingha | Aarachchige | Gnanasena |
| Senewirathnage | | Anulawathi |
| M. Sudarma | | Ranasinghe |
| Silambiralage | | Wijesinghe |
| Wijesinghege | Sarath | Wijesinghe |
| Bandage | | Senanayaka |
| W.M.A. | | Wijesiri |
| T.V.M. | | Sirisena |
| P. Thonoja | | Kumari |
| Witharanage | | Chularatne |
| Kapuruhamige | | Yasapala |
| Dasanyakege | Kumaradasa | Dasanayake |
| Ukkuralage | | Dasanayaka |
| Jayakodi Arachchige | Jude | Yurinton |