

THOMAS R. VALEN
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4885 Fax: (973) 639-6240
tvalen@gibbonslaw.com

April 2, 2018

**VIA ECF – FILED UNDER SEAL**

The Honorable Joseph A. Dickson
United States Magistrate Judge
U.S. District Court, District of New Jersey
Martin Luther King Building - United States Courthouse
50 Walnut Street
Newark, New Jersey  07101

      Re: *Krishanthi, et al. v. Rajaratnam, et al.*
           No. 2:09-cv-05395-JLL-JAD

Dear Judge Dickson:

    Please accept this submission seeking leave to file three motions and to request limited additional discovery. Our requests are based upon what we have learned as a result of the March 13, 2018 production of documents by ▬▬▬▬▬▬▬▬▬▬, the former United States government confidential witness who Motley Rice has introduced as a third-party fact witness in this litigation. We also propose a path forward for completing discovery for Phase I as expeditiously as is practical, taking into account the grave issues that this production reveals about the apparent misconduct of Motley Rice, the Former JTTF Agents, and ▬▬▬▬▬▬.

**I.    Background**

    On March 13, 2018, independent counsel for ▬▬▬▬▬▬▬▬▬▬ produced over 3,000 pages of documents in response to a subpoena issued by Defendants on October 2, 2017 (the "▬▬▬▬▬ Production"). The ▬▬▬▬▬▬ Production consists almost entirely of email correspondence and documents exchanged between ▬▬▬▬▬, Mr. Elsner of the Motley Rice law firm, and/or the Former JTTF Agents who were working as agents for Motley Rice.[1] The communications and attachments stretch from 2009 to 2017 and detail the collaborative efforts of Mr. Elsner, the Former JTTF Agents, and ▬▬▬▬▬ to further this litigation. Few, if any, of these documents were produced previously by Motley Rice.

    Among other things, the documents demonstrate that:

---

[1] *See, e.g.,* ECF No. 246, at 2 (Motley Rice asserting that "Counsel is well aware that these individuals – as hired investigators – are Plaintiffs' agents in the course of this litigation.").

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
April 2, 2018
Page 2

- Beginning at least in 2009, Motley Rice and/or the Former JTTF Agents ▮▮▮▮▮▮▮▮▮▮▮▮;[2]

- Motley Rice and the Former JTTF Agents gave ▮▮▮▮ large amounts of ▮▮▮▮ throughout this time period;[3]

- During the same period, ▮▮▮▮ met with ▮▮▮▮ officials and former ▮▮▮▮ officials, to leverage ▮▮▮▮. He did so apparently in order to ▮▮▮▮ for Motley Rice and the Former JTTF Agents, and ▮▮▮▮ for the Former JTTF Agents and himself. ▮▮▮▮'s actions were done openly: there is no indication that he requested, let alone required, that ▮▮▮▮ enter into confidentiality agreements or otherwise take steps to mask his identity, as one would have expected given the vigorous efforts by Motley Rice to limit the Defendants' investigation into ▮▮▮▮ and his past;[4]

---

[2] See Ex. A (memo from ▮▮▮▮ detailing ▮▮▮▮'s ▮▮▮▮); Ex. B (email from ▮▮▮▮); Ex. C (email from ▮▮▮▮). Note that the exhibits in this letter are attached to the Certification of Thomas R. Valen in Support of Request for Leave to File Motions.

[3] See Ex. D (email from ▮▮▮▮); Ex. E (email between ▮▮▮▮); Ex. F (email from ▮▮▮▮); Ex. G (emails between ▮▮▮▮); Ex. H (emails between ▮▮▮▮) including ▮▮▮▮. See also Ex. I (combined PDF ▮▮▮▮); Ex. J (▮▮▮▮). In addition, we note that Motley Rice previously produced documents partially describing payments to Sangarapillai totaling over $40,000.

[4] See Ex. A; Ex. K (memo from ▮▮▮▮); Ex. L (email from ▮▮▮▮); Ex. M (letter from ▮▮▮▮); Ex. N (email ▮▮▮▮).

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
April 2, 2018
Page 3

- There was apparently a free flow of ███████████ ███████ and ████████ passed between ████████, ███████████ ████████;[5] and

- Motley Rice appears to have withheld documents and information from Defendants and concealed information regarding the scope and sources of discovery in this litigation.

These revelations suggest a markedly different landscape of facts than that which has been presented by Motley Rice, ████████ and the Former JTTF Agents to date. As recently as the teleconference before Your Honor on Tuesday, March 20, 2018, Mr. Elsner represented that ████████ "is a third-party witness. He's not a party to the case, and there's -- *there is no time in which he was working as an agent for us*, he certainly wasn't a partner of mine as has been characterized. I'm not sure where any of that characterization comes from."[6] This unequivocal representation by Mr. Elsner is directly contradicted by the extensive discovery produced by ████████.

The hidden, unorthodox relationship among Motley Rice, the Former JTTF Agents, and ████████, masqueraded to the Court and to Defendants as a "third-party" fact witness, has had and continues to have significant implications for this litigation. We respectfully submit that three immediate steps are warranted based upon what the ████████ Production reveals. These steps can be pursued in parallel to minimize delay while hopefully ensuring that Defendants are not further prejudiced by Motley Rice's conduct.

II. **Motion to Preclude ████████'s Testimony**

Defendants seek leave to file a motion to preclude the testimony of ████████ in this litigation. The basis for the motion is straight-forward. Motley Rice's extensive payments and provision of other benefits to ████████ violate federal law, as well as the New Jersey Rules of Professional Conduct. The law prohibits "inducements" to fact witnesses, except for reimbursement for reasonable travel expenses and the reasonable value of lost time in connection with the witness' sworn testimony in judicial proceedings. 18 U.S.C. § 201(c)(2) (payment to witness for testimony prohibited, unless for "reasonable cost of travel and subsistence incurred and the reasonable value of time lost in attendance at any such trial, hearing, or proceeding"); NJRPC 3.4(b) ("A lawyer shall not . . . offer an inducement to a witness that is prohibited by

---

[5] *See* Ex. L; Ex. O (email between ████████████████████████████████████████ ████████████████████████████████████); Ex. P (email from ████████████████████████ ████████).

[6] *See* Mar. 20, 2018 Teleconference Tr. at 15:23 – 16:5 (emphasis added).

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
April 2, 2018
Page 4

law."); *see also* ABA Comm. On Ethics & Prof'l Responsibility Formal Op. 96-402 (Aug. 2, 1996) (amount of any appropriate compensation "must be reasonable to avoid affecting, even unintentionally, the content of a witness's testimony"). Compensating a fact witness in any manner other than reimbursing reasonable expenses and loss of time for actual testimony "lean[s] toward the procurement of perjury; toward the raising of a class of witnesses who, for a sufficient consideration, will give testimony that shall win or lose the lawsuit; toward the perversion of justice; and toward the perversion of our courts." *In re PMD Enters.*, 215 F. Supp.2d 519, 530 (D.N.J. 2002) (Brown, J.). Motley Rice's payments, direct and indirect, to ▮▮▮ run afoul of these prohibitions and cast an impenetrable shadow over any testimony that ▮▮▮ might give, thereby warranting preclusion.

The inventory of ▮▮▮ provided by Motley Rice and the Former JTTF Agents to ▮▮▮ is extensive and occurred over nearly a decade in connection with this litigation. The ▮▮▮ Production, and to a lesser extent the limited "expense" discovery belatedly produced by Motley Rice in December 2016, document, among other things, ▮▮▮'s receipt of ▮▮▮



. The documents further show that:

- Motley Rice ▮▮▮.[7]

- Jay Kanetkar, one of the Former JTTF Agents who is also an attorney, ▮▮▮.[8]

- Motley Rice and the Former JTTF Agents ▮▮▮;[9]

- The Former JTTF Agents attempted to procure ▮▮▮. Motley Rice appears to have financed this effort.[10]

All or virtually all of these payments pre-date the commencement of discovery in this case, let alone the scheduling of any actual testimony for ▮▮▮.

---

[7] *See* Ex. D; Ex. K.
[8] *See* Ex. G.
[9] *See* Ex. Q; Ex. R.
[10] *See* Ex. S; Ex. T.

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
April 2, 2018
Page 5

Numerous courts have held that where payments to a fact witness are not reasonable reimbursement for actual expenses or lost time attending depositions or court proceedings, any testimony from the witness must be excluded. *Rocheux Int'l of N.J., Inc. v. U.S. Merchs. Fin. Grp., Inc.*. No. 06-6147, 2009 U.S. Dist. LEXIS 93082, *7-11 (D.N.J. Oct. 5, 2009) (improper payments "cast a cloud over the legitimacy of [witness's] testimony, and the Court must prevent this suspect evidence from contaminating future proceedings") (Brown, C.J.); *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Assoc.*, 865 F. Supp. 1516, 1521, 1526-27 (S.D. Fla. 1994) (precluding witness testimony where Special Master identified that payments were really blanket, monthly lump sums and part of a bigger scheme to induce cooperative testimony), *aff'd in relevant part*, 117 F.3d 1328 (11th Cir. 1997).

What makes the ▮▮▮▮▮ Production and the true nature of the relationship between Motley Rice and ▮▮▮▮▮ more jarring is the manner in which this information has been disclosed. ▮▮▮▮▮'s deposition was initially scheduled to be taken by Defendants first in August 2016 and then again in November 2016. The deposition was further delayed because on September 30, 2016, which was to be the last day of Phase I of discovery, Motley Rice produced a declaration that it had secured from ▮▮▮▮▮ in February 2010 but failed to turn over to Defendants. It was difficult at the time to fathom that Motley Rice somehow "forgot" that they had secured a sworn affidavit from ▮▮▮▮▮, particularly in light of how closely the recent discovery reveals they have been working over the past eight years. Compounding this problem, Motley Rice in December 2016 produced select documents demonstrating, without explanation, $40,000 of purported "expenses" paid to ▮▮▮▮▮. The ▮▮▮▮▮ Production highlights the fact that even those two belated disclosures by Motley Rice were only a small part of the story, as they were still hiding the true scope and depth of Motley Rice's relationship with ▮▮▮▮▮. Indeed, comparison of the "expense" documents belatedly produced by Motley Rice with the recently produced ▮▮▮▮▮ Production demonstrates that the payments disclosed by Motley Rice were only the tip of the iceberg of benefits provided to ▮▮▮▮▮.[11]

Moreover, Motley Rice and the Former JTTF Agents made a calculated effort to disguise many of these payments. The documents reveal that, at least in some cases, Motley Rice ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[12] In one instance, the correspondence suggests that in July 2010 Motley Rice ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at ▮▮▮▮▮'s request *expressly* in order to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).[13] In another, the Former JTTF Agents and ▮▮▮▮▮

---

[11] The magnitude of these payments and in-kind benefits conferred by Motley Rice to ▮▮▮▮▮ is greatly increased when the purchasing power of the U.S. dollar in Sri Lanka is taken into account.

[12] *See* Ex. U.

[13] *See* Ex. V.

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
April 2, 2018
Page 6

███████████████████████████████████████.[14]  Furthermore, it is also unclear what, if any, tax filings to the IRS were filed by Motley Rice or ██████████ in connection with the years of payments and benefits conferred by Motley Rice and the Former JTTF Agents to ██████████ – none were produced or referred to in any way by Motley Rice in discovery.

In sum, while Motley Rice has represented that ██████████ is a "third-party" fact witness,[15] Motley Rice, both directly and through the Former JTTF Agents, has in reality paid vast funds and given in-kind gifts to ██████████ far in excess of any actual reasonable expenses for a "third-party" fact witness.  These benefits bear no relation to legitimate or reasonable expenses in connection with scheduled trial or possibly deposition testimony.  Indeed, Motley Rice and the Former JTTF Agents started the steady stream of benefits years before ██████████'s "third-party" testimony was ever requested or scheduled.  These funds and other benefits are plainly inducements to secure what is now inherently corrupted testimony from ██████████.

Defendants will be able to prepare and file their motion to preclude ██████████'s testimony within thirty days, supporting it with the extensive documentation already in Defendants' possession.  We propose to do so notwithstanding the likelihood that even this extensive paper trail is incomplete, in the interest of pressing forward with this litigation.  The Court, of course, can thereafter determine if it requires an evidentiary hearing to adduce any additional factual information or to pressure test the representations of Motley Rice, the Former JTTF Agents, or ██████████ (each of whom has previously denied any improper payments) and compare them to the earlier affidavits submitted in this litigation.

### III.   Motion to Compel and Motion to Narrow the DCO Restrictions

####   A.   *Motion to Compel Directed at Motley Rice*

Defendants seek leave to file two additional motions in parallel with Defendants' motion to preclude the testimony of ██████████.  With respect to discovery, Defendants would move to compel Motley Rice to comply with their discovery obligations, both in terms of documents and interrogatory responses.  It is obvious from the ██████████ Production that Motley Rice elected not to produce documents in their possession and/or that of their admitted agents.  Production of such documents then in existence was due by the discovery cut-off date on September 30, 2016, one and a half years ago (a discovery date that even then already had been extended on several occasions at Motley Rice's request); documents created subsequently should

---

[14] *See* Ex. H (██████████████████████████████████████████████████████); *see also* Ex. Q.

[15] *See* Mar. 20, 2018 Teleconference Tr. at 15:23 – 16:5.

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
April 2, 2018
Page 7

have been timely produced pursuant to Motley Rice's continuing obligation to correct and supplement their responses.[16] It is also evident from the ▇▇▇ Production that Motley Rice's responses to fact interrogatories were materially incomplete and inadequate, failing to disclose numerous potential witnesses with knowledge and other sources of information regarding Motley Rice's allegations (including potential sources that contradict Motley Rice's claims).[17]

Counsel for the Plaintiffs sought to brush past these deficiencies in the recent case management call, stating, "[D]o litigants have the right to perfection [in discovery]? No . . . . There is no such thing as perfection."[18] Motley Rice's discovery productions here are not within a country mile of "perfection." The ▇▇▇ Production includes extensive correspondence and attachments from Motley Rice and from the Former JTTF Agents, yet none of these documents were produced by Motley Rice. But for Defendants' subpoena to ▇▇▇, they would never have seen the light of day. And Motley Rice's deficiencies do not appear to be limited to the correspondence now produced by ▇▇▇. For example, the ▇▇▇ Production includes a July 2, 2012 email between ▇▇▇ explicitly referring to "▇▇▇" and an attachment labeled ▇▇▇.[19] The attachment apparently includes ▇▇▇." Yet, Motley Rice has never before produced this correspondence or the underlying documents.[20] Even now, Defendants are not in a position to know the full extent of Motley Rice's discovery failings.

Simply put, this case cannot proceed to the close of Phase I discovery without Motley Rice fulfilling their discovery obligations. Allowing Motley Rice to avoid doing so would severely prejudice Defendants' ability to defend themselves and, worse yet, reward Motley Rice for their disregard, strategic or not, of their obligations. Defendants' motion would ask the Court to compel Motley Rice to:

- Identify all agents that assisted Motley Rice in its investigation and may have responsive materials – the ▇▇▇ documents, in addition to confirming ▇▇▇'s work at the direction of Motley Rice, suggest that Motley Rice also

---

[16] *See e.g.* Def.' First Set of Req. for Produc. To Pl. 3, 6-10, 13-16, 32, 34.

[17] *See e.g.* Def.' First Set of Interrog. To Pl. 2, 4-6, 12-15, 29-32.

[18] *See* Mar. 20, 2018 Teleconference Tr. at 16:25 – 17:4.

[19] *See* Ex. P.

[20] *See* Ex. W (letter from Motley Rice to defense counsel, representing that ▇▇▇ had provided them with only 37 seemingly benign documents, with corresponding bates ranges).

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
April 2, 2018
Page 8

        directed others including ▮▮▮▮▮▮▮, certain Sri Lankan government officials, and ▮▮▮▮▮▮▮;[21]

- Conduct comprehensive searches of relevant custodians who operated at Motley Rice's direction, including indirectly through Motley Rice's other agents;

- Revise Plaintiffs' interrogatory responses within thirty days of a ruling on the motion;

- Provide updated and comprehensive metadata files for any electronic documents that they received and have produced to date;

- Produce affidavits from Motley Rice, the Former JTTF Agents and any other individuals within their control attesting to the searches conducted and documents produced;

- Produce a comprehensive privilege log accompanying their production. Plaintiffs have not produced any privilege log to date.

B.   <u>Motion to Narrow the Scope of the DCO</u>

    With respect to the Discovery Confidentiality Order in this litigation, Defendants seek leave to move the Court to remove any confidentiality designation by Motley Rice with respect to ▮▮▮▮▮▮, and to revisit and narrow, where appropriate, Motley Rice's designations with respect to other individuals and documents in their production. We recognize that the DCO in this litigation was litigated extensively in 2017. However, it now appears from the ▮▮▮▮▮▮ Production that Motley Rice advanced a false narrative in the litigation of the DCO issues, which necessarily shaped both Defendants' concessions and certain of the Court's rulings.

    The documents show that ▮▮▮▮▮▮, at the collective direction of Motley Rice and the Former JTTF Agents, met with numerous third parties in Sri Lanka, India and elsewhere to discuss his role in this litigation and his past efforts on behalf of the United States government as a confidential witness, providing information to various people in and outside of Sri Lanka about, in his own words, the "US LTTE Investigation."[22] There is no indication that ▮▮▮▮▮▮ took steps to mask his identity, his past, or the source of his knowledge, or that he

---

[21] In accordance with Fed. R. Civ. P. 34(a), a party must produce documents that are within its "possession, custody, or control." "Control" is construed broadly, and the Third Circuit directs that "control" exists if a party "has the legal right or ability to obtain the documents from another source upon demand." *Mercy Catholic Med. Ctr. V. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004) (citing *Poole v. Textron*, 192 F.R.D. 494, 501 (D. Md. 2000) ("[A] party is charged with knowledge of what its agents know or what is in the records available to it.").

[22] *See* Ex. K.

Case 2:09-cv-05395-JLL-JAD Document 351 Filed 04/12/18 Page 9 of 11 PageID: 6941

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
April 2, 2018
Page 9

required any of the people to whom he spoke to enter into restrictive agreements resembling the DCO in this litigation.[23]  The import of this is significant.  Motley Rice has sought to limit drastically Defendants' ability to investigate their allegations by claiming that ▮▮▮▮▮'s life would be placed in jeopardy if they so much as uttered his name or revealed to anyone his role in this litigation.  Simultaneously, Motley Rice has been and is directing and paying ▮▮▮▮▮ to leverage both his identity and past cooperative efforts for their own benefit in this same litigation with third-parties, including the Sri Lankan government and the LTTE itself, who are in no way obligated to keep his name and activities secret.  It has never made sense that ▮▮▮▮▮ would volunteer to participate in this litigation as a fact witness while simultaneously fearing for his safety if disclosure of his past was made public.  It is now evident that any threat to ▮▮▮▮▮'s safety is highly suspect.

The documents in the ▮▮▮▮▮ Production suggest that Motley Rice's desire to protect ▮▮▮▮▮'s identity is driven not by legitimate safety concerns, but by a desire to cloak Motley Rice's efforts from scrutiny and limit Defendants' ability to investigate the case.  Motley Rice's tactical goals are not a basis for confidential treatment under the DCO or otherwise.  Defendants intend to move to remove any confidentiality designation in connection with ▮▮▮▮▮.[24]

Motley Rice's conduct, now laid bare by the ▮▮▮▮▮ Production, unfortunately will require some time to be remedied.  To minimize delay, the Defendants propose that the Court require Motley Rice to complete their discovery obligations and to allow the Defendants to investigate properly, unencumbered by the unnecessary and/or overly broad DCO protections for

---

[23] At Motley Rice's insistence, Defendants have attempted without success to investigate these allegations using one of ▮▮▮▮▮'s pseudonyms, "Rudra." Defendants have been stymied, both given the common nature of the name "Rudra" in the Sri Lankan community and the existence of more than one "Rudra" related to the United States criminal case regarding LTTE terrorism funding prosecuted in the Eastern District of New York.  The ▮▮▮▮▮ Production also now reveals that ▮▮▮▮▮ used more than one pseudonym in communications with Motley Rice, the Former JTTF Agents, and/or various third parties in Sri Lanka, including the pseudonym ▮▮▮▮▮  Defendants would have had no possible ability to identify or investigate this pseudonym but for the belated production on March 13, 2018, as Motley Rice never revealed it.

[24] If ▮▮▮▮▮ – not Motley Rice -- seeks confidential treatment in this litigation with respect to specific individuals or specific pieces of information, ▮▮▮▮▮, through his independent counsel, should say so and support his request with detail.  Given his track record in this litigation and otherwise of submitting false affidavits under oath, he should be required to produce independent verification of any risks that he claims to face.  *See United States v. Stanislaus*, 104 F.3d 352, *1 (2d Cir. 1996) (affirming the District Court's rejection of ▮▮▮▮▮'s testimony citing as an example that "after ▮▮▮▮▮ had entered into the cooperation agreement ▮▮▮▮▮ changed his story about Diogenes Perez's involvement in a drug transaction to make it more incriminating of Perez."); *see also id.* at *2 ("Judge Sifton based this conclusion [denying ▮▮▮▮▮'s claim for the benefits of safety valve provisions of 18 U.S.C. §3553(f) and U.S.S.G. §5C1.2] not only on the defendant's history of lack of candor but also on 'the defendant's own testimony and conduct on the stand before [him].'").

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
April 2, 2018
Page 10

███████████████, on a parallel track to the Court's consideration of the motion to preclude. While the motion to preclude is pending, Defendants can review Motley Rice's completed discovery, conduct appropriate investigations, and look to schedule and take whatever additional depositions (if any) may be needed. This will position the parties after a ruling on the preclusion motion to complete whatever discovery is needed in short order on a definitive schedule, and then to move to summary judgment.

### IV. Sanctions

Defendants will also use the time period in which the motion to preclude is being briefed and adjudicated to determine whether it may seek sanctions for Motley Rice's conduct. We are mindful that sanctions are not to be sought lightly. But the facts that have emerged in this case are extraordinary. The ████████i Production calls into question numerous representations made by Motley Rice in this litigation,[25] upon which Defendants and potentially the Court relied. Perhaps worse yet, Motley Rice solicited and put forward to the Court sworn affidavits by the Former JTTF Agents and ████████ that, it now appears, included affirmatively false representations coupled with improper omissions and misleading statements.

To take the most recent example, Mr. Elsner's representation to the Court on March 20, 2018 that ████████ "is a third-party witness . . . [and] there is no time in which he was working as an agent for us" is alarming.[26] This is not an instance of Mr. Elsner having apparently overlooked a single document or "misremember[ed]" the details of a meeting, as he claimed with regard to the ████████ Declaration. In sharp contrast, the ████████ Production documents a detailed, multi-year working relationship between Mr. Elsner and ████████, both directly and through the Former JTTF Agents, that precludes a credible excuse of memory failure.[27]

Whatever Motley Rice's thinking or strategy may have been, it is unquestionably inappropriate. We intend to further consider whether Motley Rice's conduct constitutes a "fraud on the court," as that test has been established in this Circuit, and what remedy would be appropriate. Given the enormous waste of time, energy and resources arising out of Motley Rice's practices over the course of this litigation, it is at a minimum essential to ensure that Defendants are not prejudiced further and that such misconduct does not happen again.

Thank you in advance for Your Honor's time and consideration of these issues and concerns.

---

[25] Attached as Exhibit X is a partial list of past representations made by Motley Rice, the Former JTTF Agents and ████████ that are called into question by the recent production.

[26] *See* Mar. 20, 2018 Teleconference Tr. at 15:23 – 16:5.

[27] *See* Ex. Y (email chains ████████████████████████ ████████).

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
April 2, 2018
Page 11

Respectfully submitted,

s/ Thomas R. Valen
Thomas R. Valen

Enclosures

cc:   William P. Deni, Jr.
      Samidh Guha