

THOMAS R. VALEN
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4885 Fax: (973) 639-6240
tvalen@gibbonslaw.com

January 22, 2021

**VIA ECF**

Honorable Joseph A. Dickson, U.S.M.J.
United States District Court
District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

    Re:   *Krishanthi, et al. v. Rajaratnam, et al.*
            **Civil Action No. 09-05395 (BRM)(JAD)**

Dear Judge Dickson:

    Please accept this letter on behalf of Defendants Raj Rajaratnam and the Estate of Jesuthasan M. Rajaratnam ("Defendants") in response to Your Honor's request for a summary of the bases[1] of Defendants' forthcoming motion for summary judgment.[2] *See* ECF No. 445. In addition, we briefly address why expert testimony can have no bearing on any of these bases for summary judgment and therefore should not be allowed.

    **I.**   **Plaintiffs cannot show that Defendants acted with the required specific intent.**

    Defendants' first argument in the forthcoming motion will be that summary judgment should be entered on Count I—aiding and abetting acts of terrorism in violation of the ATS—because Plaintiffs can present no evidence that would allow a reasonable fact-finder to conclude that Defendants intended to aid or abet the specific acts of terrorism Plaintiffs' complaint identifies. To the contrary, the evidence adduced through discovery shows that Defendants intended not to cause harm to Plaintiffs but instead to provide relief assistance to the people of Sri Lanka to help them recover from decades of civil war and natural disasters.

    It is law of this case that to prove a claim for aiding and abetting under the ATS, a plaintiff must show that Defendants (1) provided practical assistance to the principal which had a substantial effect on the perpetation of the crime (2) for the purpose of facilitating the commission of that crime. *See* ECF No. 48 at 20 (August 26, 2010 Opinion on Motion to Dismiss). The "purpose" element requires that Plaintiffs prove that Defendants knew of and intended to assist in committing the specific acts of terrorism alleged in the complaint, *i.e.*, the bombings that injured the Plaintiffs. *See id.* Plaintiffs, of course, cannot defeat summary judgment by relying upon mere allegations of intent; instead, they must introduce facts showing a specific intent to assist in the

---

[1] As Phase I discovery is not yet complete, Defendants reserve all rights to raise additional arguments not identified herein for purposes of summary judgment.

[2] On August 26, 2010, the Court granted Defendants' Motion to Dismiss as to the majority of Plaintiffs' claims. *See* ECF No. 48. Accordingly, the sole remaining claims are Count I, which alleges aiding and abetting crimes against humanity in violation of the ATS, and the intentional infliction of emotional distress ("IIED") claim in Count VII.

GIBBONS P.C.

January 22, 2021
Page 2

commission of particular crimes. Despite years of extensive discovery, Plaintiffs have failed to find any evidence that Defendants *intended* for their donations be diverted to fund any specific terrorist acts, let alone the acts identified in the complaint. Indeed, Plaintiffs have failed to adduce any evidence to even show that Defendants *knew* that their donations to the Tamil Relief Organization ("TRO"), which was recognized by the United States government at all times relevant to Defendants' donations as a lawful 501(c)(3) organization, would be diverted to the LTTE (if in fact they were) and thus could be used to finance the LTTE terrorist attacks.

Plaintiffs' failure to adduce evidence that Defendants had the specific intent to support the bombings warrants summary judgment in favor of Defendants with respect to Count I. It also warrants summary judgment in favor of Defendants with respect to the IIED claim in Count VII. IIED requires proof that a defendant intended both to commit an outrageous act and to produce emotional distress so severe that no reasonable person could be expected to endure it. *See, e.g.*, *Buckley v. Trenton Sav. Fund Soc.*, 111 N.J. 355, 366 (1988). Because Plaintiffs rely upon the same acts of terrorism to support both their ATS and IIED claims, and because there is no evidence that Defendants intended those acts to occur, Plaintiffs' IIED claim fails just like their ATS claim.

Moreover, because this is a factual argument regarding Defendants' intent, expert testimony would have no relevance. *Cf. United States v. Fowler*, 932 F.2d 306, 315 (4th Cir. 1991) (issue of whether defendant acted with specific intent is a factual question as to which it would be inappropriate to allow "expert witnesses to speculate about a defendant's state of mind."). Having failed to demonstrate in discovery that there is a genuine issue of material fact as to whether Defendants acted with specific intent, Plaintiffs cannot create one through expert testimony. Accordingly, the Court should not allow expert reports or testimony on this issue.[3]

## II. Plaintiffs' ATS claim improperly seeks to apply the statute extraterritorially.

The ATS is a jurisdictional statute that does not provide for extraterritorial claims. *See Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124 (2013). In their motion to dismiss,

---

[3] Defendants also may make the related argument that Plaintiffs cannot raise a genuine issue of material fact as to causation, another necessary element of both their aiding and abetting ATS claim and their IIED claim. Both claims require proof not only that Defendants transferred money to the TRO, but also that those funds actually made their way to the LTTE, and that those funds aided in the specific terrorist acts listed in the complaint. This court has previously concluded that Plaintiffs failed to show that TRO's New Jersey activities were essential links in the chain of causation leading to LTTE bombings, and that Plaintiffs failed to even allege facts supporting any inference that TRO's fundraising led to Plaintiffs' injuries. ECF No. 161 (April 28, 2014 Opinion granting TRO's Motion to Dismiss for Lack of Personal Jurisdiction) at 13; ECF No. 186 (September 19, 2014 Opinion granting TRO's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction) at 8. Plaintiffs failed to challenge this finding by seeking reconsideration, amending their complaint further, or filing an appeal, and nothing has been produced in discovery that contradicts the Court's findings. As such, at this point expert testimony on this issue would be futile.

Defendants also intend to seek summary judgment as to the IIED claims of most of the Plaintiffs because they are time-barred. The limitations period for such claims is two years from when the Plaintiffs first learned of their injuries and of facts sufficient to attribute those injuries to the fault of another. *Lloyd v. Ocean Twp. Council*, 2019 U.S. Dist. LEXIS 148963, at *8-9 (D.N.J. Aug. 31, 2019). The claims of more than three-fourths of the named Plaintiffs were filed after that two-year period expired. This straight-forward factual issue does not warrant expert testimony, either.

GIBBONS P.C.

January 22, 2021
Page 3

Defendants argued that Plaintiffs' claims based on acts of international terrorism in Sri Lanka constitute an impermissible extraterritorial application of the ATS. While the Court declined to grant the motion to dismiss on this argument in 2014, it did so based upon a standard that the Supreme Court has since rejected, the "touch and concern" standard. *See* ECF No. 161 at 14-17. In 2016, the Supreme Court instead held that it is not sufficient to assess whether the claims "touch and concern" the United States. Instead, the Supreme Court ruled that the proper inquiry asks where the conduct that is the statute's "focus" took place. *See RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2100-01 (2016). The focus of the ATS, of course, is to provide remedies to aliens injured by torts that violate international law. The statute is thus "focused" on the acts that injure the plaintiffs – here, the terrorist bombings. Those acts and injuries occurred entirely in Sri Lanka; therefore, Plaintiffs' claims improperly seek to apply the statute extraterritorially.[4]

This argument presents purely legal issues prompted by the allegations in Plaintiffs' complaint. As such, expert testimony would not be relevant. *See* Fed. R. Evid. 702 (permitting expert testimony only if it assists the trier of fact "to understand the *evidence* or to determine a *fact* in issue") (emphasis added).

In sum, none of the arguments Defendants intend to raise in their motion for summary judgment are appropriate subjects for expert testimony. The Court therefore should not allow any expert reports or discovery which, at this stage, will needlessly encumber this litigation.

Thank you for Your Honor's kind attention to this matter.

Respectfully submitted,

s/Thomas R. Valen
Thomas R. Valen

cc: All Counsel of Record (via ECF)

---

[4] The United States Supreme Court has granted *certiorari* and heard oral argument in two cases that are likely to further clarify the law on this issue by the end of the Court's current term. In *Nestlé USA v. Doe I*, No. 19-416, and *Cargill v. Doe I*, No. 19-453, the petitioners have argued that the ATS's focus is the plaintiffs' injury, and thus the statute does not provide jurisdiction unless the plaintiff is injured in the United States. No. 19-416, Petitioner's Brief at 15-23; No. 19-453, Petitioner's Brief at 27-33. In addition, the Solicitor General has argued in both of those cases that claims for secondary liability, such as the aiding and abetting claim alleged here by Plaintiffs, are not cognizable under the ATS as a matter of law. Nos. 19-416 & 19-453, Brief for the United States at 22-26. Defendants will raise this issue in their motion as well, and if the Supreme Court so rules, the Court should either grant summary judgment in favor of Defendants or dismiss the case for lack of subject matter jurisdiction.