

THOMAS R. VALEN
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4885 Fax: (973) 639-6240
tvalen@gibbonslaw.com

June 14, 2021

**VIA ECF**
Honorable Jessica S. Allen, U.S.M.J.
United States District Court
District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

  Re: *Krishanthi, et al. v. Rajaratnam, et al.*
     **Civil Action No. 09-05395 (BRM)(JSA)**

Dear Judge Allen:

  We were informed late this evening that Plaintiffs' counsel objects to submitting their portion of the joint letter, ordered by the Court on June 3, 2021, ECF No. 459, in the same document as Defendants' portion because of the length of our submission and they disagree with its content. At their request, we are filing this letter separately. Defendants Raj Rajaratnam and the Estate of Jesuthasan M. Rajaratnam ("Defendants") endeavored to constrain their arguments to the court-ordered two pages per party. However, we do not believe that we can adequately explain the relevant issues and their context for Your Honor, or fairly respond to the arguments made by Plaintiffs in their submission today, as well as their additional, unauthorized five-page filing of June 1, 2021, ECF 458, to which we did not respond, within that page limit. We therefore respectfully request that Your Honor accept this submission.

  In short, however, Defendants' fundamental objection to the schedule that Plaintiffs continue to propose is that Plaintiffs are omitting several, often long-standing, obligations that Magistrate Judge Dickson's prior orders in the case clearly place upon them. We identify those orders and explain their genesis below.

  The outstanding discovery disputes all stem from issues relating to the primary non-party fact witness identified by Plaintiffs, the "Confidential Witness."[1] More specifically, discovery has revealed that the Confidential Witness received at least tens of thousands of dollars in payments and benefits from Plaintiffs' counsel, both directly and through three investigators, some of whom previously worked with the Confidential Witness as FBI Joint Terrorism Task Force Agents during his criminal prosecution and subsequent incarceration (the "Former JTTF Agents"). Defendants submit that such payments are contrary to law (18 U.S.C. 201(c)(2) (payment to witness for testimony prohibited unless for "reasonable cost of travel and subsistence incurred and the

---

[1] As Judge Dickson described, "essentially every dispute that has arisen in this case in the last several years has related in some way to Plaintiffs' confidential witness, including ongoing efforts to cure the potential prejudice caused by Plaintiffs' eleventh-hour disclosure," of that witness. ECF No. 395 at 5-6 (rejecting Plaintiffs' efforts to quash subpoenas and close Phase I discovery, and noting that Plaintiffs and the Confidential Witness continued to disseminate information in an untimely manner).

GIBBONS P.C.

June 14, 2021
Page 2

reasonable value of time lost in attendance at any such trial, hearing, or proceeding")) and the Rules of Professional Conduct N.J. R.P.C. 3.4 (b) ("A lawyer shall not . . . offer an inducement to a witness that is prohibited by law.")), and that they warrant preclusion of any testimony from the Confidential Witness and possibly additional sanctions.  Judge Dickson previously ordered that Defendants were entitled to discovery from the Former JTTF Agents to conduct a full investigation of the Confidential Witness; that investigation includes exploring the financial relationship between the Confidential Witness and Plaintiffs' counsel, as well as their agents, and any malfeasance related to the extensive payments made.  *See* ECF Nos. 395, 451.[2]  Despite this clear roadmap set forth by Judge Dickson, Plaintiffs' proposed scheduling order seeks to avoid two key components of discovery to which Defendants are entitled:  (1) continuing the deposition of the Confidential Witness; and (2) resolving deficiencies related to the production and privilege designations of documents in the possession of the Former JTTF Agents.

1. Confidential Witness Deposition to Address Plaintiffs' Belated Productions

Years after discovery commenced and only after retaining independent counsel, the Confidential Witness produced over 3,000 pages of documents in March 2018, some of which revealed that the Former JTTF Agents, while in the employ of Plaintiffs' counsel, made payments to the Confidential Witness totaling approximately $80,000, only a portion of which had been previously disclosed by Plaintiffs' counsel.[3]  The documents also revealed that the Former JTTF Agents entered into lucrative, formal joint venture agreements with the Confidential Witness after the filing of the complaint in this case.  In July 2018, Defendants deposed the Confidential Witness.[4]  Several weeks *later*, Plaintiffs' counsel made an additional production of documents regarding the Confidential Witness, including detailed descriptions of information provided by the Confidential Witness to Motley Rice, memoranda summarizing interviews of the Confidential Witness, and documents that referenced other documents which had not yet been produced.  Within less than an hour of that production, Plaintiffs' counsel filed a motion asking the Court to declare Phase I discovery closed, transparently seeking to preclude Defendants from asking the

---

[2] Specifically, ECF No. 395 at 6 (Phase I includes obtaining discovery from Former JTTF Agents and conducting investigation into Confidential Witness); *Id.* at 8 ("If any documents responsive to the subpoenas are legitimately subject to protection, Plaintiffs and/or the Former JTTF Agents should prepare an appropriate privilege log and, after attempting to resolve any disputes in a good faith meet-and-confer session, the parties should raise any remaining issues with the Court."); ECF No. 451 at 3-5 ("We are not yet at the stage where the parties can fairly argue whether the work product doctrine applies"; Plaintiffs shall first "produce all Investigator communications – regardless of the time period – regarding any payments or other potential compensation" for that witness).

[3] In late 2018, Defendants moved to preclude the Confidential Witness's testimony, both as a sanction for misconduct by Plaintiffs' Counsel including misrepresentations to the Court and Defendants' counsel, and also because the excessive financial benefits given by Plaintiffs' counsel and their agents to the Confidential Witness, a fact witness, violate Rule of Professional Conduct 3.4(b) and 18 U.S.C. § 201(c)(2).  ECF Nos. 388-389.  Judge Dickson determined that the motion was premature in light of the anticipated additional discovery to be undertaken (*e.g.* further productions and continuing the witness's deposition), and directed that the motion to preclude be considered after the parties have developed a complete factual record.  ECF No. 395 at 9-10.

[4] The Confidential Witness's deposition was originally scheduled to take place in Fall 2016, but was postponed because on the eve of the deposition, Motley Rice produced documents, including an affidavit of the witness.

GIBBONS P.C.

June 14, 2021
Page 3

Confidential Witness about the belatedly-produced documents; Judge Dickson declined to do so.[5] *See* ECF No. 395 at 9.

Plaintiffs have suggested that Defendants file a brief arguing why the deposition should be continued, and we certainly can do so if the Court desires, but this is not a complex legal issue requiring extensive analysis. The simple truth is that Plaintiffs withheld damaging documents until after their witness's deposition, preventing Defendants from being able to ask the witness about them. Continuation of the deposition therefore is necessary before Phase I discovery can be concluded and dispositive motions – including a renewed motion to preclude the Confidential Witness's testimony – can be filed. *See* ECF No. 395 at 9-10. It is also completely fair and just.

   2.  Plaintiffs' Remaining Written Fact Discovery Obligations

Simultaneous to the ongoing discovery requests to the Confidential Witness, Defendants served separate subpoenas on each of the Former JTTF Agents in June 2018. Motley Rice asked Judge Dickson to quash the subpoenas, but he refused. *See* ECF Nos. 369, 382, 395. Motley Rice then retained counsel for the Former JTTF Agents, and we attempted to resolve various disputes with counsel for the Former JTTF Agents and Motley Rice, but no documents were produced for over two years. For approximately one year of that time period, Defendants' letters, follow-up emails and phone calls were never responded to by Plaintiffs' counsel. Finally, at a status conference in December 2020, Judge Dickson ordered that all non-privileged responsive documents be produced by January 15, 2021. ECF No. 445. The Former JTTF Agents produced 1,689 documents, or approximately 4% of the universe of responsive documents previously identified by the Former JTTF Agents and Motley Rice. Despite a number of documents obviously having been withheld and others having been heavily redacted, no privilege logs were produced. On February 10, 2021, Judge Dickson ordered Plaintiffs' counsel and/or counsel for the Former JTTF Agents to produce a privilege log, and also that each investigator submit an affidavit attesting to the start and end date of his retention, to help establish a time frame within which communications might potentially be privileged. ECF No. 451 at 4-5.

Plaintiffs produced two privilege logs on March 11, 2021, with the promise that another log and additional documents would be forthcoming. After receiving no additional documents or logs, Defendants sent an initial deficiency letter on May 5, 2021. Plaintiffs provided revised privilege logs on May 11, 2021, and Defendants sent two deficiency letters on May 21, 2021, one addressing privilege issues and the other addressing production issues. *See* ECF No. 458, Ex. D. Plaintiffs responded to the privilege deficiencies on June 4, 2021, but did not respond to the production deficiencies until Friday, June 11, 2021. Meanwhile, Defendants prepared responses to Plaintiffs' improper privilege assertions and provided a summary of the outstanding privilege issues following our June 8, 2021 meet and confer. See Ex. A (setting forth unresolved privilege issues). We reviewed Plaintiffs' response to the production deficiency letter over the weekend and have identified at least four remaining issues (we have asked our eDiscovery vendor to process the

---

[5] This has been Plaintiffs' counsel's practice: make a deficient discovery production and swiftly seek to foreclose Defendants from pursuing resolution of those deficiencies by asking the Court to close fact discovery. *See, e.g.*, ECF No. 458.

GIBBONS P.C.

June 14, 2021
Page 4

metadata file received on Friday afternoon for our review). We are preparing a response to counsels for Plaintiffs and the Former JTTF Agents in an effort to more thoroughly discuss these issues and seek resolution, but suffice to say that there are still numerous issues with the production, and closing fact discovery or moving immediately into briefing, as Plaintiffs request, without providing for the proper identification and resolution of those issues, would be wholly inappropriate.

\*     \*     \*

To be clear, Defendants are eager to complete Phase I discovery so that they can file a motion for summary judgment and dispose of this matter.[6]  And while Defendants are happy to be reasonable regarding the precise dates in a schedule that identifies deadlines for Plaintiffs' resolution of the identified deficiencies and completion of the open Phase I discovery that Judge Dickson already ruled is appropriate, Plaintiffs continue to insist upon a schedule that includes no deadlines for their obligations.  It appears that Plaintiffs' counsel may be opportunistically using the change in Magistrate Judge assignment to continue its long-standing practice of avoiding its discovery obligations.  The simple fact is that discovery remains to be completed.  It would be patently unfair to reward Plaintiffs' counsel for their own delayed disclosures and deficiencies by closing fact discovery at this juncture and permitting them to avoid the discovery obligations contemplated by Judge Dickson's prior orders.

We thank the Court for its attention and look forward to working with Your Honor to bring this matter to a resolution.  A proposed form of order is attached as Exhibit B for the Court's consideration.  Counsel is, as always, available to discuss this matter in person if it would be helpful to the Court, and would welcome the opportunity to do so.

Respectfully submitted,

s/Thomas R. Valen
Thomas R. Valen

cc:     All Counsel of Record (via ECF)

---

[6] Defendants intend to argue that summary judgment should be entered on both counts because Plaintiffs can present no evidence that would allow a reasonable fact-finder to conclude that Defendants even knew that their donations were being diverted to a terrorist organization, let alone that they intended to aid or abet the acts of terrorism Plaintiffs' complaint identifies, as the law requires.  See ECF No. 48 at 20 (Aug. 26, 2010 Opinion on Motion to Dismiss).  As the Court will learn, Mr. Rajaratnam and his now-late father have been long-time supporters of charitable organizations in their home country of Sri Lanka, where years of civil war and natural disasters created many humanitarian crises; Mr. Rajaratnam and his father sought to alleviate some of that turmoil through donations to charitable and NGO relief efforts.  They donated side by side with several governments who led the ceasefire process and who also donated through the Tamil Rehabilitation/Relief Organization ("TRO"), a registered NGO until the mid-2000s.  Defendants also intend to argue, among other things, that Plaintiffs' Second Amended Complaint is an impermissible attempt to apply the ATS extraterritorially, as all of the acts of terrorism that are alleged took place in Sri Lanka.  See Kiobel v. Royal Dutch Petroleum Co., 569 U.S. 108, 124 (2013).