Joseph J. DePalma
**LITE DEPALMA GREENBERG & AFANADOR, LLC**
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Phone: (973) 623-3000
Fax: (973) 623-0858
jdepalma@litedepalma.com

Michael E. Elsner (admitted *pro hac vice*)
John M. Eubanks (admitted *pro hac vice*)
**MOTLEY RICE LLC**
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Phone: (843) 216-9000
Fax: (843) 216-9450
melsner@motleyrice.com
jeubanks@motleyrice.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARUNAMUNIGE CHAMILA KRISHANTHI, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RAJAKUMARA RAJARATNAM, *et al*. <br><br> Defendants. | Civil Action No. 2:09-CV-05395 (BRM)(JSA) <br><br> **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO QUASH THE SUBPOENA AS TO JAYAT KANETKAR OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER FORBIDDING THE DISCOVERY** <br><br> **Motion Date:  January 3, 2022** |

897646.1

## TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ................................................................................................................ 1

LITIGATION BACKGROUND .......................................................................................... 2

STANDING TO MOVE TO QUASH ................................................................................. 4

STANDARDS RELATED TO MOTIONS TO QUASH AND PROTECTIVE ORDERS ........... 6

ARGUMENT ........................................................................................................................ 8

    I.   The Court should quash or modify the subpoena to prevent an end-run around pending motion practice before the Court regarding production of financial compensation by Plaintiffs to their investigators. .................................................................................... 8

    II.  The cumulative nature of the non-party discovery sought through the subpoena provides a practical rationale for quashing the subpoena or, in the alternative, issuing a protective order forbidding the discovery. ............................................................................. 10

    III. Prudential reasons support either quashing the subpoena or issuing a protective order forbidding the discovery sought through the subpoena. ............................................... 144

CONCLUSION .................................................................................................................... 15

897646.1

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aetrex Worldwide, Inc. v. Burten Distribution*,
   Case No. 13-1140 (SRC), 2014 U.S. Dist. LEXIS 172857 (D.N.J. Dec. 12, 2014) ................. 7

*Bowers v. Nat'l Collegiate Ath.Ass'n*,
   2008 U.S. Dist. LEXIS 14944 (D.N.J. Feb. 27, 2008) ......................................................... 8

*Burgess v. Galloway*,
   Case No. 20-06744 (FLW)(DEA), 2021 U.S. Dist. LEXIS 195505 (D.N.J. Jan. 28, 2021) 6, 7

*Chazanow v. Sussex Bank*,
   Case No. 11-1094 (CCC), 2014 U.S. Dist. LEXIS 89279 (D.N.J. July 1, 2014) ..... 6, 7, 12, 13

*F.T.C. v. Hope Now Modifications, LLC*,
   Case No. 09-1204 (JBS/JS), 2011 U.S. Dist. LEXIS 71921 (D.N.J. July 5, 2011) .................. 9

*Kelley v. Enhanced Recovery Co., LLC*,
   Case No. 16-6527 (CCC), 2016 U.S. Dist. LEXIS 140147 (D.N.J. Oct. 7, 2016) ................... 7

*Lexpath Techs. Holdings, Inc. v. Welch*,
   Case No. 13-5379 (PGS)(LHG), 2015 U.S. Dist. LEXIS 195899 (D.N.J. July 29, 2015) ....... 5

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
   2015 U.S. Dist. LEXIS 99782 (S.D.N.Y. July 30, 2015) ....................................................... 9

*Pleasant Gardens Realty Corp. v. H. Kohnstamm & Co.*,
   Case No. 08-5582 (JHR/JS), 2009 U.S. Dist. LEXIS 82975 (D.N.J. Sept. 10, 2009).......... 5, 7

*Schmulovuch v. 1161 Rt. 9 LLC*,
   Case No. 07-597 (FLW), 2007 U.S. Dist. LEXIS 59705 (D.N.J. Aug. 13, 2007) ................... 8

*Stamy v. Packer*,
   138 F.R.D. 412 (D.N.J. 1990) ............................................................................................... 7

*U.S. EEOC v. United Galaxy*,
   2011 U.S. Dist. LEXIS 103398 (D.N.J. Sept. 13, 2011) ....................................................... 8

**RULES**

Fed. R. Civ. P. 1 ............................................................................................................................ 4

Fed. R. Civ. P. 26 .......................................................................................................................... 9

Fed. R. Civ. P. 26(b) ................................................................................................................. 6, 8

Fed. R. Civ. P. 26(b)(1) .................................................................................................. 10

Fed. R. Civ. P. 26(b)(2)(C) ........................................................................................ 6, 10, 12, 15

Fed. R. Civ. P. 26(b)(2)(C)(iii) ......................................................................................... 8

Fed. R. Civ. P. 26(c) ..................................................................................................... 1, 7

Fed. R. Civ. P. 26(c)(1)(A) .............................................................................................. 12

Fed. R. Civ. P. 45 ............................................................................................................. 6

Fed. R. Civ. P. 45(c) ......................................................................................................... 7

Fed. R. Civ. P. 45(d)(3) ....................................................................................... 1, 7, 12, 15

Fed. R. Civ. P. 45(d)(3)(A) .............................................................................................. 7

897646.1

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 45(d)(3), Plaintiffs respectfully submit this memorandum in support of their motion seeking an order quashing the subpoena served by Defendants on Plaintiffs' non-party investigator Jayat Kanetkar or, in the alternative, for a protective order under Fed. R. Civ. P. 26(c) to enjoin production of irrelevant information for the subpoena issued to a non-party.[1] A copy of the subpoena served on Mr. Kanetkar appears as Exhibit 1 to the Declaration of John M. Eubanks submitted with this memorandum. First, formal fact discovery in this case closed on September 30, 2016 and was held open for the purpose of responding to all discovery that was served on or prior to September 30, 2016 including four outstanding noticed or subpoenaed Phase I depositions. *See* ECF No. 255. Subsequently, Magistrate Judge Dickson adjourned the deposition of the Confidential Witness in this litigation "pending further discovery," ordered the parties to meet and confer regarding how much time would be needed to complete this discovery, and that Plaintiffs would produce the identity of investigators identified in a November 10, 2016 conference by November 16, 2016. *See* ECF No. 268. Over five years later, Plaintiffs submit that fact discovery is fully closed, as the investigation into the Confidential Witness has preoccupied this litigation since Judge Dickson's Order in 2016.

Second, Defendants' subpoena seeks to delve into the engagement between Plaintiffs' counsel and their investigators by seeking deposition testimony on the privileged payment arrangements between Plaintiffs' counsel and its investigators in this case and other topics that implicate privilege and attorney work product protections. Third, the subpoena topics are cumulative in relation to document discovery obtained by Defendants from the investigators and

---

[1] Identical subpoenas have been issued to two of Plaintiffs' other investigators, Brian Mallon and John "Hank" Allison, and though these subpoenas have not yet been served, the arguments contained herein apply with equal force to the subpoenas issued to all three individuals.

also from the Confidential Witness in this litigation. Plaintiffs' respectfully request that the Court quash the subpoenas.

## LITIGATION BACKGROUND

A casual observer reviewing the docket entries in this case over the course of the past five years would likely be unable to determine why this case remains pending in federal court. The docket is clouded with unsubstantiated allegations of bribes and improper payment arrangements between Plaintiffs' counsel, its investigators, and a former-Confidential Witness for the federal government who has agreed to provide testimony in this case on behalf of the Plaintiffs. Lost within the smokescreen of this never-ending barrage of hyperbole, misrepresentations, and mischaracterizations is the immutable fact that Plaintiffs are victims (or the family members of victims) of terrorist attacks carried out by the Liberation Tigers of Tamil Eelam ("LTTE") in Sri Lanka between the years 2006 and 2009 including shooting attacks, claymore mine attacks, parcel bombings, suicide bombings, remote-controlled bombings, and village massacres. *See* ECF No. 384 at ¶¶ 25-197. This case was filed on October 22, 2009, and while delays are attributable to both sides of this litigation over the course of the past 12 years—in addition to the fact that the parties are currently litigating in front of their third District Judge and third Magistrate Judge since the case was initially filed—the fact remains that these Plaintiffs have waited a significant period of time to obtain some form of accountability on the part of the Defendants here. The time for additional delays has come to an end. They have awaited their day in Court for far too long.

The Defendants, Raj Rajaratnam and his now-deceased father Jesuthasan M. Rajaratnam, are alleged to have provided significant funding to the LTTE in the years leading up to the attacks in which the Plaintiffs were impacted. The following allegations have previously been credited by the Court in this litigation at the motion-to-dismiss stage:

- The Rajaratnam Defendants made numerous contributions to the Rajaratnam Family Foundation between 2001 and 2005 knowing they would be transmitted to the LTTE via the Tamils Rehabilitation Organization ("TRO"). ECF No. 161 at 3. "On November 15, 2007, the United States Treasury Department designated TRO as a 'charitable organization that acts as a front to facilitate fundraising and procurement for the LTTE." *Id.* at 2.

- Raj Rajaratnam "personally gave $1,000,000.00 to TRO-USA in June 2004, and that this contribution was funneled to the TRO in Sri Lanka." *Id.* at 3.

- Raj Rajaratnam founded Tsunami Relief, Inc. "after the Sri Lankan coast was struck with a tsunami in December 2004", and in 2005 and 2006, Tsunami Relief donated $2,500,000.00 to TRO in Sri Lanka and $1,000,000.00 to TRO-USA. *Id.* at 3-4.

- LTTE operatives have identified J.M. Rajaratnam "as a source of money used to bribe United States officials in connection with LTTE's attempts to remove itself from the United States' list of" designated foreign terrorist organizations. *Id.* at 4.

- J.M. Rajaratnam "hosted LTTE supporters and various fundraiser speakers at his home in New Jersey." *Id.*

- American-based LTTE operatives sought to arrange meetings between Raj Rajaratnam and LTTE leader Vellupillai Prabhakaran describing Raj Rajaratnam as "among the people who provide financial support for our struggle for freedom" and as an individual who "has been working actively on the forefront." *Id.* at 5.

- Following his capture by Sri Lankan authorities, LTTE leader Selvarasa Pathmanathan a/k/a "KP" "admitted that Raj[] Rajaratnam knowingly provided financial support to the LTTE." *Id.*

- A U.S.-based American LTTE operative confirmed to law enforcement officials to Raj Rajaratnam "donated $1,000,000.00 to the LTTE after a successful terrorist attack made by the LTTE in 2000." *Id.*

Facts determined during fact and expert discovery only serve to buttress these allegations that were well-supported when Plaintiffs filed their Complaint in October 2009. The presentation of many of these facts will take place during the summary judgment phase; however, the actions of the Defendants appear designed to prevent summary judgment briefing from ever coming to fruition. Unencumbered by the internally inconsistent positions they take, Defendants argue at every opportunity before the Court that their sole purpose in this litigation is to reach the summary-judgment stage of the proceedings to dispose of this case; however, any time that the case appears

3

to be moving forward toward briefing on dispositive motions, Defendants tap the proverbial brakes to grind this case to a halt. The imposition of the latest subpoena represents yet another attempt by the Defendants to stall this case by focusing all of their efforts on collateral discovery pursuits and not the damages incurred by the Plaintiffs—some of whom have been waiting over 15 years since they sustained their injuries in 2006. The delays and the waiting must stop. *See* Fed. R. Civ. P. 1 (the rules "should be construed, administered and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

## STANDING TO MOVE TO QUASH

In June 2018, Defendants served subpoenas *duces tecum* on these same three individuals to whom the instant subpoenas have been issued (with the subpoena to Mr. Kanetkar having been served on him in person). Plaintiffs sought to quash the subpoenas in August 2018 on various grounds including that the subpoenas violated to Scheduling Order in the case when they were issued, the requests were overbroad and unduly burdensome, and the subpoenas had the appearance of an unjust purpose. *See* ECF No. 369. In a Letter Order issued by Magistrate Judge Dickson on February 13, 2019, the Court found that Plaintiffs had "standing to challenge the subpoenas because certain of the information responsive to Defendants' requests may be subject to the work product doctrine in light of the former agents' roles as Plaintiffs' investigators." ECF No. 395 at 3-4. The Court, however, found that Plaintiffs lacked standing to argue that the subpoenas presented an undue burden as "any burden of compliance will ultimately fall on the Former JTTF Agents, and not Plaintiffs." *Id.* at 4. The Court denied the motion to quash noting that information regarding the Confidential Witness is "relevant information, at least in part." *Id,* at 7. The Court did, however, balk at the temporal scope of the Defendants' requests and the fact that certain requests were "so broad that they trigger both relevancy and proportionality concerns,

4

while others require the former JTTF Agents to make legal determinations regarding Plaintiffs' allegations." *Id.* at 6-7.

Here, Plaintiffs submit that Defendants' subpoena to Mr. Kanetkar is untimely and implicates privilege concerns giving Plaintiffs standing to seek to quash the subpoena. While a motion to quash generally should be filed by the individual or entity upon whom the subpoena was served, "a party has standing to bring a Motion to Quash or modify a subpoena upon a non-party when the party claims a personal right or privilege in the production sought." *See, e.g., Lexpath Techs. Holdings, Inc. v. Welch*, Case No. 13-5379 (PGS)(LHG), 2015 U.S. Dist. LEXIS 195899, at *7 (D.N.J. July 29, 2015); *see also Pleasant Gardens Realty Corp. v. H. Kohnstamm & Co.*, Case No. 08-5582 (JHR/JS), 2009 U.S. Dist. LEXIS 82975, at *8, n.3 (D.N.J. Sept. 10, 2009) (holding "[i]t makes no difference if the property right or privilege is embodied in a document or deposition testimony). The first two "Matters for Examination" in the subpoena seek testimony on the "decision not to enter into an engagement letter with Plaintiffs or with Motley Rice for the services rendered in connection with this litigation" and testimony regarding the "timing, terms and nature of Your retention by Motley Rice, including Your financial compensation." *See* Ex. 1 at 9. These two "Matters" seek testimony on the relationship between Plaintiffs' counsel and its investigators including the manner of engagement and the financial terms of that engagement. As the Court is aware, currently *sub judice* is a motion filed by the Defendants seeking to compel the removal of redactions in or documents withheld from the document production of Messrs. Mallon, Kanetkar, and Allison on the basis that Plaintiffs assert that the attorney work-product doctrine protects from disclosure the financial compensation provided by counsel to its non-testifying investigators in this case. *See* ECF Nos. 465, 466, and 468. Defendants' attempts to utilize a Fed. R. Civ. P. 45 subpoena to bypass Plaintiffs' objections on the basis of privilege are themselves

5

897646.1

grounds to quash the subpoena. But at the very least, the implication of these privilege concerns gives Plaintiffs standing to move to quash the subpoena.

**STANDARDS RELATED TO MOTIONS TO QUASH AND PROTECTIVE ORDERS**

"Under Rule 45, courts have significant discretion to quash or modify a subpoena where the discovery sought is irrelevant, or compliance with the subpoena would be unreasonable or oppressive." *Burgess v. Galloway*, Case No. 20-06744 (FLW)(DEA), 2021 U.S. Dist. LEXIS 195505, at *6 (D.N.J. Jan. 28, 2021). Discovery under a Rule 45 subpoena must fall within the scope of discovery permissible under Rule 26(b); however, "while undeniably broad, there are limits to the permissible scope of discovery. For example, Rule 26(b)(2)(C) specifically requires courts to limit discovery where 'the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive'...." *Chazanow v. Sussex Bank*, Case No. 11-1094 (CCC), 2014 U.S. Dist. LEXIS 89279, at *4-*5 (D.N.J. July 1, 2014). A subpoena used for discovery purposes must be made in good faith and cannot be used as a general 'fishing expedition.'" *Burgess*, 2021 U.S. Dist. LEXIS 195505, at *6.

Nonparties are "afforded greater protection from discovery than a normal party", and "the standards for nonparty discovery require a stronger showing of relevance than for simple party discovery." *Kelley v. Enhanced Recovery Co., LLC*, Case No. 16-6527 (CCC), 2016 U.S. Dist. LEXIS 140147, at *7 (D.N.J. Oct. 7, 2016), *citing Chazanow*, 2014 U.S. Dist. LEXIS 98279, at *6, and *Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990). A movant has standing "where the subpoena infringes upon the movant's legitimate rights." *Pleasant Gardens Realty Corp.*, 2009 U.S. Dist. LEXIS 82975, at *8, n.3.

6

897646.1

Based on the text of Fed. R. Civ. P. 45(d)(3)(A), there are four circumstances under which a Court must quash or modify a subpoena. These include a subpoena that:

(i)      fails to allow reasonable time to comply;

(ii)     requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii)    requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv)    subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv). While the arguments related to burden fall to the individual upon whom the subpoena has been served, courts have nevertheless used several factors to determine the reasonableness of a subpoena: " (1) the party's need for the production; (2) the nature and importance of the litigation; (3) relevance; (4) the breadth of the request for the production; (5) the time period covered by the request; (6) the particularity with which the documents are described; and (7) the burden imposed on the subpoenaed entity." *Schmulovuch v. 1161 Rt. 9 LLC*, Case No. 07-597 (FLW), 2007 U.S. Dist. LEXIS 59705, at *11 (D.N.J. Aug. 13, 2007).

With regard to a protective order under Rule 26(c), "A party can move for a protective order in regard to a subpoena issued to a non-party if it believes its own interests are jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information." *Aetrex Worldwide, Inc. v. Burten Distribution*, Case No. 13-1140 (SRC), 2014 U.S. Dist. LEXIS 172857, at *12 (D.N.J. Dec. 12, 2014), *quoting U.S. EEOC v. United Galaxy*, 2011 U.S. Dist. LEXIS 103398, at *5 (D.N.J. Sept. 13, 2011). As one court determined, "while discovery and relevance may be broad, it is not boundless" and the "purpose of this rule of proportionality [in Fed. R. Civ. P. 26(b)(2)(C)(iii)] is 'to guard against redundant or disproportionate discovery by giving the court

7

authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Bowers v. Nat'l Collegiate Ath.Ass'n*, 2008 U.S. Dist. LEXIS 14944, at *14 (D.N.J. Feb. 27, 2008).

## ARGUMENT

I.  **The Court should quash or modify the subpoena to prevent an end-run around pending motion practice before the Court regarding production of financial compensation by Plaintiffs to their investigators.**

While Mr. Kanetkar's counsel will address the burden issues inherent in compliance with the subpoena, the fact remains that at least two of the "Matters for Examination" implicate the attorney work-product doctrine, and one is directly relevant to briefing currently *sub judice* before the Court. The first stated "Matter" in the subpoena seeks testimony about "the decision not to enter into an engagement letter with Plaintiffs or with Motley Rice for the services rendered in connection with this litigation." *See* Ex. 1 at 9. This topic is inextricably intertwined with the discussions between Plaintiffs' counsel and their investigators in anticipation of this litigation. While Defendants appear to imply that the decision not to enter into an engagement letter has some nefarious basis, the fact remains that Defendants' beliefs and suppositions alone do not constitute discovery within the scope of Rule 26(b) and instead implicates a fishing expedition. The document subpoenas issued in June 2018 elicited the production of nearly 6,000 pages of documents related to 176 separate requests and the use of approximately 120 separate agreed-upon search terms. Plaintiffs' counsel have disclosed that no written engagement agreements were executed with these individuals for their work on this litigation. ECF No. 476 at 3. Plaintiffs' investigators have submitted affidavits setting forth the periods of time during which they were engaged by Plaintiffs' counsel in this case. *See* ECF No. 453 at 8. If, through these substantial productions, Defendants continue to have questions about the engagement of Mr. Kanetkar and others by Motley Rice, then it would appear that no level of production will satisfy the Defendants.

8

897646.1

Just because they do not like the responses they have received to date does not entitle Defendants to additional bites at the apple through a deposition to explore privileged information under the attorney work-product doctrine.

Similarly, Defendants' second "Matter for Examination" seeks to obtain testimony on "the timing, terms and nature of Your retention by Motley Rice, including Your financial compensation." *See* Ex. 1 at 9. Again, Mr. Kanetkar (and Messrs. Mallon and Allison) were retained as non-testifying investigators in anticipation of this litigation, but Defendants seek to depose them on the terms of their retention and the amounts they were paid. The precise issue of the investigators' financial compensation was the impetus for Defendants' July 30, 2021 motion to compel and Plaintiffs' opposition to that motion on August 13, 2021. As set forth in Plaintiffs' August 13, 2021 submission:

> Here, Plaintiffs' investigators are not Plaintiffs' clients. Financial records between Plaintiffs' counsel and their investigators—absent some connection to the Confidential Witness—are not proper subjects for inquiry due to the attorney work-product doctrine. This is especially so where the attorneys' investigators "should generally be afforded the same protections as the attorneys for whom they work." *F.T.C. v. Hope Now Modifications, LLC*, 2011 U.S. Dist. LEXIS 71921, at *15-*16 [(D.N.J. July 5, 2011)]. Like a non-testifying expert, Plaintiffs' investigators' identities would generally not be known. *See LivePerson, Inc. v. 24/7 Customer, Inc.*, 2015 U.S. Dist. LEXIS 99782, at *4-*5 (S.D.N.Y. July 30, 2015) (holding that Rule 26 precludes discovery of the identity of an informal consulting expert). The Plaintiffs' investigators' identities have been disclosed in this litigation does not now open them up to full-blown discovery where they are not being proffered as percipient witnesses, and any information that they may possess relevant to Defendants' states purpose for the underlying subpoenas has been produced.

ECF No. 468 at 7. Because this issue is currently before the Court awaiting a determination, Defendants' attempt to conduct an end-run around pending motion practice should not be countenanced, and subpoena should be quashed as implicating privileged materials.

9

897646.1

**II.     The cumulative nature of the non-party discovery sought through the subpoena provides a practical rationale for quashing the subpoena or, in the alternative, issuing a protective order forbidding the discovery.**

The discovery sought through the subpoena to Mr. Kanetkar violates the principles of Fed. R. Civ. P. 26(b)(2)(C) which permits the Court to "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).  The last three "Matters for Examination" listed in the subpoena to Mr. Kanetkar relate to issues that have been the subject of ongoing discovery for the past five years—since the disclosure of Messrs. Mallon, Kanetkar, and Allison as Plaintiffs' investigators in November 2016.

The third area of inquiry sought by Defendants is testimony related to "compensation and other payments or benefits, including payment of expenses, for services performed by the Confidential Witness."  *See* Ex. 1 at 9.  Defendants have sought and obtained significant documentation regarding this proposed area of inquiry that it is beyond imagination what testimony Defendants would seek to elicit that was *not* simply cumulative in nature.  For example:

- On December 13, 2016, Plaintiffs produced to Defendants 106 pages of expenses and reimbursements paid to the Confidential Witness.

- On October 2, 2017, Defendants issued a subpoena to the Confidential Witness with 43 separate numbered requests (not including distinct sub-parts).

- On March 13, 2018, the Confidential Witness produced 2,957 pages of e-mail correspondence (including e-mail attachments) in response to Defendants October 2, 2017 subpoena.

- On May 8, 2018, Plaintiffs produced an additional 60 pages of expenses and reimbursements paid to the Confidential Witness.

- On June 18, 2018, Defendants sent subpoenas to Plaintiffs' counsel to Brian Mallon, Jayat Kanetkar, and John "Hank" Allison with 37 separate numbered requests each (not including subparts).

- On July 16, 17, 18, and 24, 2018, Defendants conducted the deposition of the Confidential Witness in Newark, New Jersey.

- On January 15, 2021, the former-JTTF agents produced 5,807 pages of e-mail correspondence (including e-mail attachments) to Defendants.

- On March 11, 2021, the former-JTTF agents produced an additional seven pages of e-mail correspondence (including e-mail attachments) to Defendants.

- On June 11, 2021, the former-JTTF agents produced an additional 66 pages of e-mail correspondence (including e-mail attachments) to Defendants.

Through these productions and disclosures, Defendants have received documentary evidence related to any "compensation and other payments or benefits" to the Confidential Witness[2] and documentation of the relationship between the Confidential Witness and the former-JTTF agents after they had left government service. This puts this subpoena on par with the subpoena that PNC sought to quash in the *Chazanow* case. In that case, the court noted that "PNC has already been served with a subpoena which it represents has been fully complied with…. Thus, PNC has already been subjected to discovery in this matter as a non-party." 2014 U.S. Dist. LEXIS 89279, at *6-*7. Further, in that case, "the information sought by [the second subpoena] largely mirrors that of the original subpoena." *Id.* at *7. Here, the productions by Plaintiffs' counsel, the Confidential Witness, and the former-JTTF agents relate to payments to the Confidential Witness and the productions by the non-parties provided significant documentation regarding the relationship between the Confidential Witness and the former-JTTF agents. In *Chazanow*, the court granted the motion to quash, and this Court should do the same here.

---

[2] Plaintiffs have used Defendants' phrasing from the "Matters to be Examined" in the subpoena; however, it has been and remains the position of Plaintiffs that the Confidential Witness has not been compensated but rather he has received reimbursement of out-of-pocket expenses primarily for travel to and from Sri Lanka and/or India.

11

897646.1

Looking at Fed. R. Civ. P. 26(b)(2)(C), the discovery being sought here is cumulative and duplicative and has been obtained through document discovery thus obviating the need for a deposition subpoena. Further, Defendants have been pursuing their "investigation" into the Confidential Witness since the Fall of 2016. At some point, discovery must come to a close, and the parties be permitted to move this case to the next phase of litigation. If the Court determines that Plaintiffs do not possess standing to quash the subpoena based on the cumulative and irrelevant nature of the testimony sought, then Plaintiffs submit that the Court should issue a protective order under Fed. R. Civ. P. 26(c)(1)(A) and forbid the discovery to be sought by the Defendants. Plaintiffs admit their role in the delay of responses to the document subpoenas issued to the former-JTTF agents, but the lion's share of their production was made in January 2021, and the Confidential Witness' production and deposition both took place in 2018—over three years ago. Defendants have had ample time to complete their investigation, and their attempts to interpose delay should no longer be countenanced by this Court. Should this relief be provided through quashing the subpoena under Rule 45(d)(3) or by protective order under Rule 26(b)(2)(C) is of no consequence as long as this discovery is disallowed.

Finally, the same argument regarding the cumulative and duplicative nature of the subpoena applies with equal force to the final "Matter for Examination" regarding efforts undertaken to preserve the information sought in the prior document subpoena. Plaintiffs described in detail in their motion to quash the initial subpoena in 2018 the steps taken to preserve documents in the possession of their investigators related to party discovery which applied equally to the document subpoenas served on the investigators. Plaintiffs recounted the following:

> Plaintiffs offered "to go and visit with each of the third-party agents in their homes and make sure that there are no documents there that have not been produced. If we could do that in seven days, we'll try. I don't know if that's going to be possible, given where they're all at, but I'm happy to make that effort and then certify to you

12

that that process has been done." [Hrg. Tr. (May 15, 2018)] at 42:25-43:6. Plaintiffs' counsel has met with each of the three agents in person: Brian Mallon, Jayat Kanetkar, and John "Hank" Allison. Plaintiffs' counsel personally reviewed any hard files or computer files they have kept. Within these files (not including the investigators' e-mail correspondence), no additional documentation was found that was responsive to Defendants' discovery requests aside from those four documents already identified and ratified by Plaintiffs' counsel before the Court. Plaintiffs' efforts did not stop at searching the personal files of these individuals. Plaintiffs' counsel enlisted the assistance of a third-party vendor to pull the full e-mail files for these three individuals to allow searches to be conducted of their entire e-mail histories. The process of obtaining access to these files, having them indexed and loaded onto a document-review platform, and then actually reviewing them one by one has been a time-consuming process. While the conference with the Court took place in mid-May, the e-mail files were only accessible by Plaintiffs' counsel beginning the week of July 23, 2018. Since that time, Plaintiffs' counsel has engaged in an exhaustive search of the investigators' e-mails for documents responsive to the Defendants' outstanding discovery requests to Plaintiffs – precisely what we promised the Court we would do.

ECF No. 369 at 2-3 (footnotes omitted). In short, the documents that needed to be reviewed for purposes of compliance with Defendants' 2018 subpoena were collected and maintained by Plaintiffs' counsel contemporaneously with the service of the document subpoena. The participation of the former-JTTF agents was necessary to accomplish this task, and counsel for the agents had not yet been retained to represent their interests. This again raises the question that resonates with each additional request proffered by the Defendants: what is the reason for this additional imposition upon these non-parties? To this, there can be no good or appropriate answer because the only rationale for permitting Defendants to depose these individuals would be to allow further delay and to allow Defendants to unfairly and inaccurately impugn these former federal law-enforcement officers who served as investigators for Plaintiffs' counsel in this case. Again, on this basis, the Court should either quash the subpoena or issue a protective order disallowing the discovery sought through the subpoenas as the information is irrelevant, cumulative, and less-expensive means have already been employed that provided all of the ammunition that Defendants

13

897646.1

are entitled to possess in advance of Defendants filing a motion to preclude the Confidential Witness from testifying.

### III. Prudential reasons support either quashing the subpoena or issuing a protective order forbidding the discovery sought through the subpoena.

While not related to relevance or whether the subpoenas are cumulative or not, Plaintiffs submit that there are equitable reasons for preventing Defendants proposed discovery from moving forward.  First, while Defendants may be entitled to pursue discovery related to the Confidential Witness pursuant to Magistrate Judge Dickson's February 2019 decision denying Plaintiffs' motion to quash the initial document subpoena, that decision did not give the Defendants carte blanche to disregard the time that a case persists on the federal docket.  The more time that passes, the longer we get from the actual terrorist attacks that give rise to this litigation in which the Plaintiffs sustained their injuries.  Plaintiffs seek a discernible goal for reaching the end of Phase I discovery, but Plaintiffs are convinced that, absent Court intervention to stem the abuse of the discovery system to facilitate continual delays by the Defendants, this case will remain in fact and expert-discovery limbo for another five years without progress.  This works a disservice to those who are seeking accountability through this Court.  The time has arrived to address the true issues in this case—is there sufficient evidence in the record to allow the factfinder to determine whether Raj Rajaratnam and his late-father knowingly engaged in aiding and abetting widespread and systematic attacks on the civilian population in Sri Lanka by the LTTE?  Were the tens of millions of dollars that were funneled by Raj Rajaratnam and his late-father through the Tamils Rehabilitation Organization and other organizations to the LTTE a substantial factor in the LTTE's ability to carry out terrorist attacks on civilians in Sri Lanka?

Until the Court sets briefing on motions for summary judgment and decides that motion, these questions will remain unanswered.  While both sides of this dispute certainly have their own

14

respective views of the facts, the only entity that matters in this process is the judicial gatekeeper, the U.S. District Judge who can either grant or deny summary judgment. We are simply asking that—after this case has sat on the docket for 12 years—Plaintiffs be permitted to move their case forward through the close of Phase I to determine liability.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Court grant their motion and quash the deposition subpoena issued to Jayat Kanetkar under Fed. R. Civ. P. 45(d)(3) or, in the alternative, issue a protective order under Fed. R. Civ. P. 26(b)(2)(C) forbidding the discovery sought by the Defendants and allowing the parties to complete expert discovery and proceed to briefing on any dispositive motions.

Date:   December 8, 2021                           Respectfully submitted,

/s/ Joseph J. DePalma
Joseph J. DePalma
**LITE DEPALMA GREENBERG & AFANADOR, LLC**
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Phone: (973) 623-3000
Fax: (973) 623-0858

Michael E. Elsner (admitted *pro hac vice*)
John M. Eubanks (admitted *pro hac vice*)
**MOTLEY RICE LLC**
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Phone: (843) 216-9000
Fax: (843) 216-9450

*Attorneys for Plaintiffs*

897646.1