# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARUNAMUNIGE CHAMILA KRISHANTHI, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>RAJAKUMARA RAJARATNAM, *et al*.<br><br>*Defendants*. | Civil Action No. 2:09-cv-05395 (BRM)(JSA)<br><br>**Motion Date: February 6, 2023** |

---

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' APPEAL OF DECEMBER 22, 2022 ORDER OF SPECIAL MASTER

---

| | |
|---|---|
| **LITE DEPALMA GREENBERG & AFANADOR, LLC**<br>Joseph J. DePalma<br>570 Broad Street, Suite 1201<br>Newark, New Jersey 07102<br>Telephone: (973) 623-3000<br>Facsimile: (973) 623-0858 | **MOTLEY RICE LLC**<br>Michael E. Elsner (admitted *pro hac vice*)<br>John M. Eubanks (admitted *pro hac vice*)<br>28 Bridgeside Boulevard<br>Mount Pleasant, South Carolina 29464<br>Telephone: (843) 216-9000<br>Facsimile: (843) 216-9450 |

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .................................................................................................................1

FACTUAL BACKGROUND ................................................................................................3

SPECIAL MASTER'S DECEMBER 22, 2022 OPINION AND ORDER .....................................5

CORRECTIONS OF FACTUAL INACCURACIES IN DEFENDANTS' SUBMISSION ...........8

STANDARD OF REVIEW ..................................................................................................10

ARGUMENT .......................................................................................................................11

I.   Irrelevancy of the Requested Documents Satisfies the "Good Cause" Requirement for a Protective Order ...............................................................................................................11

II.  Plaintiffs Have not Relied on Foreign Law to Withhold Documents ..............................13

III. Plaintiffs are not Seeking a Confidentiality Order to Protect Disclosure of the Requested Documents but Rather an Order Prohibiting Further Non-Deposition Discovery of Dr. Gunaratna .......................................................................................................................14

IV.  Aside from the Foregoing Arguments, Defendants' Requests to Dr. Gunaratna Were Procedurally Improper ....................................................................................................15

CONCLUSION ....................................................................................................................16

## TABLE OF AUTHORITIES

**Cases**                                                                                                      Page(s)

*Adesanya v. Novartis Pharms. Corp.*,
   Case No. 13-cv-5564 (SDW-SCM), 2015 U.S. Dist. LEXIS 159712
   (D.N.J. Nov. 24, 2015) .................................................................................................. 1, 11

*Allah v. Bartkowski*,
   No. 11-03153 (MAS)(TJB), 2022 U.S. Dist. LEXIS 232706
   (D.N.J. Nov. 15, 2022) ............................................................................................. 2, 11, 12

*Campbell v. Sedgwick Detert, Moran & Arnold*,
   No. 11-642, 2013 U.S. Dist. LEXIS 45981 (D.N.J. Mar. 28, 2013) ............................... *passim*

*Cipollone v. Liggett Grp. Inc.*,
   785 F.2d 1108 (3d Cir. 1986) ................................................................................................ 11

*D'Souza v. Marmaxx Operating Corp.*,
   2017 WL 1322243 (W.D. Tex. Apr. 7, 2017) ....................................................................... 15

*Lehman v. Kornblau*,
   206 F.R.D. 345 (E.D.N.Y. 2001) .................................................................................... 15, 16

*Net2Phone, Inc. v. eBay, Inc.*,
   No. 06-2469, 2008 U.S. Dist. LEXIS 50451 (D.N.J. June 25, 2008) ..................................... 11

*Pansy v. Borough of Stroudsburg*,
   23 F.3d 772 (3d Cir. 1994) ..................................................................................................... 12

*Robinson v. Horizon Blue Cross Blue Shield of N.J.*,
   Case No. 12-2981 (ES), 2014 U.S. Dist. LEXIS 98345 (D.N.J. July 21, 2014) ............... 11, 13

*S.E.C. v. Desai*,
   145 F. Supp.3d 329 (D.N.J. 2015) ........................................................................................... 3

*World Triathlon Corp. v. Dunbar*,
   539 F. Supp.2d 1270, 1278 (D. Hawaii 2008) ....................................................................... 11

**Rules**

Fed. R. Civ. P. 1 ........................................................................................................................... 14

Fed. R. Civ. P. 26 ..................................................................................................................... 2, 15

Fed. R. Civ. P. 26(a)(2)(B) ........................................................................................................7

Fed. R. Civ. P. 26(b)(4)..............................................................................................................4

Fed. R. Civ. P. 26(b)(4)(A) ......................................................................................................16

Fed. R. Civ. P. 26(c) ........................................................................................................ *passim*

Fed. R. Civ. P. 33 ......................................................................................................................3

Fed. R. Civ. P. 44.1 .................................................................................................................14

Fed. R. Civ. P. 45 ....................................................................................................................15

Fed. R. Civ. P. 53(f) ..................................................................................................................1

## INTRODUCTION

Plaintiffs submit this memorandum in opposition to Defendants Raj Rajaratnam and the Estate of Jesuthasan M. Rajaratnam's appeal of the Special Master's December 22, 2022 Order (Filed Under Seal) pursuant to Fed. R. Civ. P. 53(f) and the Order Appointing Special Master issued by the Court on January 24, 2022. *See* ECF No. 496. Defendants' appeal misconstrues the nature of Plaintiffs' motion for a protective order that gave rise to the Special Master's Order while regaling the Court with a false narrative so lacking in veracity to be unconscionable.[1] Plaintiffs are not seeking a protective order to shield documents from public view akin to a confidentiality order as Defendants appear to argue. Rather, Plaintiffs have sought a protective order "to regulate the terms, conditions, time or place of discovery." *Adesanya v. Novartis Pharms. Corp.*, Case No. 13-cv-5564 (SDW-SCM), 2015 U.S. Dist. LEXIS 159712, at *5 (D.N.J. Nov. 24, 2015) (citing generally to Fed. R. Civ. P. 26(c)). More specifically, Plaintiffs explicitly sought in their June 30, 2022 submission to the Special Master "a protective order forbidding the further written and document discovery sought by Defendants as to Plaintiffs' expert witness Dr. Rohan Gunaratna, require that any discovery motions that Defendants have touted as forthcoming for an extended period of time be filed within 30 days with responses to be filed within 14 days thereafter, order the Defendants to take Dr. Gunaratna's deposition if they so desire with 45 days of the date of this motion, and allow this case to proceed to the close of expert discovery and to dispositive motions." *See* ECF No. 506 at 12.

---

[1] Plaintiffs dispute the false allegations peppered throughout the Defendants' submission, but Plaintiffs will not respond to each allegation because to do so would result in an overly voluminous submission. To the extent that certain allegations against Plaintiffs, Plaintiffs' counsel, the Confidential Witness, Plaintiffs' investigators, or Plaintiffs' expert witness Dr. Rohan Gunaratna have been made with no explicit response in this filing, Plaintiffs preserve any and all responses to these allegations to the extent the Court wishes to entertain them.

The bases for the protective order Plaintiffs have requested, and which the Special Master ordered to be granted, include the following:

- The discovery sought from Dr. Gunaratna, as a retained expert witness in this litigation and not a party to the litigation, was both procedurally improper and sought discovery outside even the broad conception of relevance set forth in Fed. R. Civ. P. 26.

- Defendants refused to meet and confer or even countenance Plaintiffs' objections and responses to the discovery requests served on counsel related to Plaintiffs' expert witness Dr. Rohan Gunaratna while also refusing to seek to compel production until significantly after Plaintiffs had moved for a protective order.

- Plaintiffs had complied with their discovery obligations vis-à-vis their expert witness Dr. Rohan Gunaratna, and any additional discovery sought was irrelevant, unduly burdensome, and harassing as the discovery sought from Dr. Gunaratna was not tethered in any manner to the litigation.

- Despite Plaintiffs' production of documents subject to their previously enumerated objections, it was clear that nothing short of full compliance on terms dictated solely by Defendants without legal basis would satisfy the Defendants and permit the case to proceed absent Court intervention and a protective order.

Defendants' appeal makes no attempt to rebut these points – many of which form the basis of the Special Master's Opinion and Order.

Defendants' appeal is bereft of any mention of factual findings made by the Special Master related to the relevancy—or lack thereof—of the additional documents sought by the Defendants. Defendants argue that Plaintiffs have failed to demonstrate good cause to support the entry of a protective order; however, case law in this District is filled with cases holding that "irrelevancy of the proposed discovery is sufficient to satisfy the 'good cause' requirement for a protective order." *See, e.g., Allah v. Bartkowski*, No. 11-03153 (MAS)(TJB), 2022 U.S. Dist. LEXIS 232706, at *15 (D.N.J. Nov. 15, 2022) (citing cases around the country that stand for this premise). As set forth below, Plaintiffs have asserted from the outset that the discovery sought from Dr. Gunaratna is irrelevant to this case, and Plaintiffs have never abandoned the objections interposed against the requests. Relevancy is the underpinning of the Special Master's determination that the protective

order should be granted, and Defendants have failed to make any attempt to demonstrate the relevance of their discovery requests. Instead, Defendants engage in a regurgitation of the same nonsense that has been asserted against Plaintiffs' counsel, the Confidential Witness, Plaintiffs' investigators, and Plaintiffs' expert witness Dr. Rohan Gunaratna by Defendants repeatedly since fact discovery was to have been completed in September 2016—over six years ago. Absent more than their rank falsehoods, Defendants' legal arguments have no basis in fact.

**FACTUAL BACKGROUND**

Rather than repeat what appears at some length in the record before the Special Master, Plaintiffs incorporate by reference the Factual Background set forth in their June 30, 2022 submission to the Special Master (ECF No. 506 at 2-8, including the exhibits incorporated therein) and the facts set forth in Plaintiffs' September 2, 2022 submission to the Special Master (ECF No. 525 including the exhibits incorporated therein). One specific point that bears repeating is Defendants' failure to address in any form—either in writing or through a meet and confer—the December 23, 2021 letter response to Defendants' discovery requests. The discovery requests, which were e-mailed from defense counsel to Plaintiffs' counsel on November 11, 2021, included a set of 17 interrogatories "to Rohan Gunaratna" and nine requests for production "to Rohan Gunaratna."[2] Plaintiffs' December 23, 2021 letter responded, in part, to questions posed during a meet-and-confer between the parties in early-December 2021 and included Plaintiffs' objections and responses to each of Defendants' nine requests for production served.[3]

---

[2] The transmission letter and the alleged discovery requests can be found as Exhibit B to the Eubanks Certification at ECF No. 506.

[3] The December 23, 2021 letter can be found as Exhibit E to the Eubanks Certification at ECF No. 506. As set forth in the letter and in briefing before the Special Master, Plaintiffs submit that interrogatories to expert witnesses, as non-parties to the litigation, are prohibited by Fed. R. Civ. P. 33. *See S.E.C. v. Desai*, 145 F. Supp.3d 329, 334 (D.N.J. 2015); *see also* Fed. R. Civ. P. 33 (the Rule pertains solely to party-to-party discovery).

3

Plaintiffs' letter included the following General Objection to be applied to each of the requests for production:

> As a **General Objection**, Plaintiffs submit that these requests seek information outside the scope of expert discovery, and fact discovery—even if it extended past the September 30, 2016 deadline—certainly does not extend to third-party requests for documents from Dr. Gunaratna unrelated to his expert report where: (1) fact discovery concluded on September 30, 2016; (2) subpoenas related to materials from both the Confidential Witness and the former-JTTF Agents were served more than three years ago, but no similar request was attempted to be served on Dr. Gunaratna; (3) Defendants were apprised in November 2016—over five years ago—that Dr. Gunaratna introduced the Anonymous Witness to Plaintiffs' counsel in relation to this case—in the same disclosure in which Defendants learned of the three former-JTTF agents' participation as investigators in this litigation; (4) Defendants have constructively waived their rights to seek this discovery in any manner other than posing questions to Dr. Gunaratna related to the Defendants' "fishing expedition" in his expert deposition; and (5) Defendants were dilatory in serving these requests even as part of expert discovery where the Requests for Production were served 69 days after Plaintiffs served their expert witness disclosures and 52 days after Plaintiffs served Dr. Gunaratna's expert report. Defendants have repeatedly expressed their "surprise" that Plaintiffs submitted four expert reports in September 2021 and that one of those reports was by Dr. Gunaratna; however, Defendants waited until the eve of conducting expert depositions to serve numerous unwarranted and disallowed discovery requests unrelated to expert discovery on Dr. Gunaratna allegedly through Fed. R. Civ. P. 26, 33, and 34.

ECF No. 506, Ex. E at 2-3. In addition to the General Objection asserted as to each of Defendants' improper discovery requests to Plaintiffs' expert witness Dr. Rohan Gunaratna, Plaintiffs also made specific objections to each of the nine requests for production propounded by the Defendants. *Id.* at 3-9. These include objections related to undue burden, overbreadth, attorney work-product doctrine, privilege under Fed. R. Civ. P. 26(b)(4), relevance, vagueness, and ambiguity. *Id.*

Further, notwithstanding Plaintiffs' General Objections, the responses explicitly state that no additional documents would be provided for Request Nos. 1, 3, 6, 7, and 8; no documents existed in response to Request Nos. 2, 4, and 9; and additional invoices received from Dr. Gunaratna for work performed in this case would be produced upon receipt in response to Request No. 5. Any and all subsequent productions were subject to the objections provided in the

4

December 23, 2021 letter, and Defendants failed to ever address Plaintiffs' objections in any meaningful way.

### SPECIAL MASTER'S DECEMBER 22, 2022 OPINION AND ORDER

On December 22, 2022, the Special Master appointed to oversee discovery disputes in this case, Hon. Joseph A. Dickson, issued the "Opinion and Order of the Special Master Regarding Plaintiffs' Motion for a Protective Order" ("Opinion").[4]  The Special Master's Opinion and Order addressed Plaintiffs' June 30, 2022 motion for a protective order seeking to cut off any additional discovery aside from the expert deposition of Plaintiffs' expert witness Dr. Rohan Gunaratna and Defendants' cross-motion to compel additional compliance with Defendants' discovery requests as to Dr. Gunaratna.  Opinion at 5-8 (discussing the papers submitted to the Special Master).

The Special Master set out the law that applies in these circumstances including the requirement that good cause be demonstrated that disclosure of the requested discovery "will cause a clearly defined and serious injury." Opinion at 8-9 (citing *Campbell v. Sedgwick Detert, Moran & Arnold*, No. 11-642, 2013 U.S. Dist. LEXIS 45981, at *23 (D.N.J. Mar. 28, 2013)).  Further, the injury "must be supported by specific examples and reasons." *Id.* at 9.  If a determination is made that the information sought needs to be produced, then the issue "becomes whether it should be disclosed in a designated way or whether any limitations of disclosure should be ordered." *Id.* The Special Master set forth the bases upon which the parties' positions relied and then embarked upon an analysis of the "four categories of potentially relevant materials at issue: (1) Plaintiffs' purportedly inadequate responses to Defendants' interrogatories and document requests; (2)

---

[4] The Opinion and Order was provided to counsel under seal pending any requests for redactions in accordance with the Discovery Confidentiality Order in this case.  References to the Opinion and Order are to the pages of the Slip Opinion provided to counsel on December 22, 2022 via e-mail.

5

redacted communications withheld by Plaintiffs pursuant to a purported 'government documents' privilege; (3) attachments to Dr. Gunaratna's otherwise produced WhatsApp communications; and (4) additional disclosures related to Dr. Gunaratna's expert report." *Id.* at 10.

Regarding Plaintiffs' responses to Defendants' discovery requests to Dr. Gunaratna, the Special Master determined that these requests "all ask for information that is irrelevant to the deposition of Dr. Gunaratna; is found in the disclosures previously made by Plaintiffs; or can be asked at the deposition." *Id.* The Special Master continued that, "[t]hey are not, as far as I can see, related to the substance of [Dr. Gunaratna's expert] opinion or the claims and defenses in this litigation." *Id.* at 11. Regarding redactions in the production of materials for Dr. Gunaratna, the Special Master reviewed unredacted versions of these documents *in camera* and, while dismissing Plaintiffs' "governmental immunity" argument, the Special Master determined that "much, if not all, of the information contained in the redacted emails and WhatsApp transcripts to be irrelevant to the deposition of Dr. Gunaratna as an expert witness" and further that the Special Master "perceive[s] no interest that the Defendants have in this information other than to attack the credibility of Dr. Gunaratna, Plaintiffs' counsel, and/or Plaintiffs' investigators in this case. Based on the extensive record in this matter, and the information Defendants have obtained, I have concluded that withholding this sensitive information will not unduly preclude Defendants' efforts in this regard." *Id.* at 12.

Turning to embedded documents that were not produced from the WhatsApp chat histories produced by Plaintiffs, the Special Master relied on the representations of Plaintiffs' counsel—which were true at the time they were made notwithstanding Defendants' attempts to sully the

6

record—that they were not in possession of these files to justify entering a protective order on this issue.[5]

Finally, the Special Master addressed the sufficiency of Plaintiffs' disclosures and production pursuant to Fed. R. Civ. P. 26(a)(2)(B) for Dr. Gunaratna given his role as a "dual hat" expert who at one point served as a consulting expert and then was converted into a testifying expert. The Special Master credited Plaintiffs' representations that all materials he relied upon in formulating his expert report—including any documents that related to his time as a consulting expert that he relied upon in formulating his expert opinion—had been produced. The Special Master held, "Plaintiffs' expert disclosures, which included the materials that Dr. Gunaratna has relied upon as an expert witness and information related to his compensation, were proper." Opinion at 15. Further, the Special Master preserved Defendants' argument regarding any obligation that Dr. Gunaratna may have had to preserve documents stating, "Defendants may ultimately attack any alleged impropriety on Plaintiffs' or Dr. Gunaratna's part concerning Dr. Gunaratna's preservation of discoverable materials." *Id.*

Defendants' now appeal the Special Master's Order on what Plaintiffs contend to be specious grounds.

---

[5] During the pendency of the Special Master's consideration of the motions, Plaintiffs' counsel endeavored to work with Dr. Gunaratna to obtain copies of these missing embedded files. Because Dr. Gunaratna resides in Southeast Asia and is not particularly technologically savvy, this process was cumbersome, and these files were obtained in the days just prior to the Special Master issuing his Opinion. While the Opinion did not require the production of these files, Plaintiffs' counsel had already determined that they would produce, informed defense counsel they would produce, and did produce, those files that did not contain information that would otherwise violate privacy interests of unaffiliated third parties. Such information included contact-card information for a variety of individuals primarily within Sri Lanka that was exchanged between Dr. Gunaratna and the Confidential Witness and documents that were directly related to portions of the WhatsApp Chat histories that have been previously redacted (one of which was a copy of a passport of an individual not involved in the WhatsApp chat). As the Special Master noted, these materials were not considered by Dr. Gunaratna in preparing his expert report.

**CORRECTIONS OF FACTUAL INACCURACIES IN DEFENDANTS' SUBMISSION**

While Defendants' submission is replete with factual inaccuracies, mischaracterizations, and some blatant lies, Plaintiffs believe it necessary to address only some of these to assist the Court in separating the proverbial wheat from the chaff in Defendants' appeal. Were Plaintiffs to respond fully to each and every falsehood and misrepresentation, this submission would far exceed any reasonable page limitations. The misrepresentations begin in the first paragraph of Defendants' submission where they claim the Special Master's Opinion "excus[ed Plaintiffs'] investigator-turned-expert witness, Rohan Gunaratna, from his discovery obligations." ECF No. 527-1 at 1. As the Court can ascertain, the Special Master determined that Plaintiffs and Dr. Gunaratna fulfilled their expert-discovery obligations:

- "I find that Defendants' further discovery requests have been adequately responded to by Plaintiffs, or that they can be asked during the deposition of Dr. Gunaratna…." Opinion at 11.

- The Special Master found "much, if not all, of the information contained in the redacted emails and WhatsApp transcripts to be irrelevant to the deposition of Dr. Gunaratna as an expert witness." *Id.*

- Because none of the redacted or withheld documents formed a basis for Dr. Gunaratna's expert opinions, the Special Master determined that "they lack relevance sufficient to expose what was, at least once, undoubtedly confidential to third parties, including those who may or may not have been requested to express their views on this matter." *Id.* at 12.

- "I perceive no interest that the Defendants have in this information other than to attack the credibility of [] Dr. Gunaratna, Plaintiffs' counsel, and/or Plaintiffs' investigators in this case," and "withholding this sensitive information will not unduly preclude Defendants' efforts [to attack the credibility] in this regard." *Id.*

- "Plaintiffs' expert disclosures, which included the materials that Dr. Gunaratna has relied upon as an expert witness and information related to his compensation, were proper." *Id.* at 15.

While it is certainly one thing to impugn Plaintiffs' counsel and others associated with Plaintiffs' counsel—as has been the case each time Defendants submit papers to the Court—it is quite another

8

for Defendants to blatantly misrepresent the determinations made by the Special Master as somehow "excusing" some form of perceived misconduct that does not exist.

Defendants assert that "Plaintiffs have been permitted to retain, cherry-pick, and utilize 'confidential governmental business or actual governmental investigations' obtained from Gunaratna offensively to prosecute their claims." ECF No. 527-1 at 2. The disingenuous nature of this allegation is belied by Plaintiffs' submissions to the Special Master upon which the Special Master relied in stating, "Plaintiffs' submission asserts that none of these documents were relied upon or considered by Dr. Gunaratna in his expert opinion." Opinion at 11. As Plaintiffs previously attested in their September 2, 2022 submission, "the specific information sought to be disclosed has no relationship with the underlying facts in this litigation or, for that matter, the defenses asserted by the Defendants other than the relationship between Dr. Gunaratna and the Confidential Witness." ECF No. 525 at 8. This is a far cry from Defendants' subsequent salacious (and false) allegation that "Plaintiffs have in part built their case on 'confidential governmental business or actual governmental investigation[ ]' information obtained by Gunaratna in his capacity working for the Sri Lankan Government against Defendants. Moreover, the only reason these materials were in Plaintiffs' counsels' possession was because electronic searches were run on Dr. Gunaratna's e-mail and WhatsApp messages in response to Defendants' discovery requests.

Defendants then argue that the Special Master's Opinion shields from discovery materials that Plaintiffs "have conceded to be relevant, to Defendants." ECF No. 527-1 at 2. Nothing could be further from the truth. Dating from their November 22, 2022 letter to Defendants objecting to the discovery requests as a whole to the present, Plaintiffs have insisted that the discovery requests served by the Defendants were improper, sought irrelevant information, and produced documents subject to and without waiving the objections Plaintiffs provided on December 23, 2021.

9

Defendants then pivot to assert that Plaintiffs somehow "hid" the identity of Dr. Gunaratna first as a consulting expert and then as a testifying expert despite there being no obligation to identify non-testifying experts and the Federal Rules establishing the manner of expert-witness disclosures under Rule 26—the Rule that was followed in disclosing Dr. Gunaratna as a testifying expert witness here.

Finally, as if their submission was not disingenuous enough, Defendants argue that Plaintiffs' original motion from June 2022 included an "inaccurate representation" about whether or not Plaintiffs' counsel was in possession of the embedded documents from the WhatsApp chat history for Dr. Gunaratna that had been produced. *See* ECF No. 527-1 at 10. As Plaintiffs' counsel has stated, when the chat histories were received, they did not contain any embedded documents. They were provided by an IT professional in Singapore as text files only. In October 2022, Plaintiffs' counsel agreed to seek to obtain these documents which were still not in their possession. As set forth in footnote 5 above, Plaintiffs worked with Dr. Gunaratna to obtain these documents over the course of the ensuing two months given Dr. Gunaratna's difficulties with technology. Plaintiffs were preparing to produce the documents at the same time that the Opinion was issued on December 22, 2022, and counsel concluded to produce the documents subject to privacy concerns as detailed in the footnote above. In short, the "change in circumstances" regarding possession of these files fell concurrently with the issuance of the Opinion by the Special Master. Any insinuation that Plaintiffs had incorrectly represented these facts to the Special Master is false.

## STANDARD OF REVIEW

Plaintiffs agree with the standard of review of a Special Master's order on appeal with a single caveat: while the standard for reviewing findings of fact and conclusions of law by a Special

10

Master are subject to *de novo* determination, but "in an appeal of a Special Master's decision, the parties 'cannot raise entirely new arguments for the first time on an objection to a Special Master's Report.'" *Net2Phone, Inc. v. eBay, Inc.*, No. 06-2469, 2008 U.S. Dist. LEXIS 50451, at *12 (D.N.J. June 25, 2008), *quoting World Triathlon Corp. v. Dunbar*, 539 F. Supp.2d 1270, 1278 n. 13 (D. Hawaii 2008).

## ARGUMENT

**I.     Irrelevancy of the Requested Documents Satisfies the "Good Cause" Requirement for a Protective Order**

Defendants' appeal rests on the premise that the protective order sought by Plaintiffs is akin to a confidentiality order, and the cases that Defendants cite reflect this misconception. "A court may issue a protective order to regulate the terms, conditions, time or place of discovery." *Adesanya v. Novartis Pharms. Corp.*, Case No. 13-cv-5564 (SDW-SCM), 2015 U.S. Dist. LEXIS 159712, at *5 (D.N.J. Nov. 24, 2015) (citing generally to Fed. R. Civ. P. 26(c)). A court may also issue a protective order "to protect a party from undue burden or expense by forbidding certain disclosure or discovery, or by limiting the time and/or scope of discovery." *Robinson v. Horizon Blue Cross Blue Shield of N.J.*, Case No. 12-2981 (ES), 2014 U.S. Dist. LEXIS 98345, at *10-*11 (D.N.J. July 21, 2014). Furthermore, the Third Circuit has determined that "the party seeking the protective order must show good cause by demonstrating a particular need for protection." *Cipollone v. Liggett Grp. Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986); *see also Allah v. Bartkowski*, 2022 U.S. Dist. LEXIS, at *14.

As the Special Master, and Defendants, state, "a party establishes good cause by demonstrating that disclosure will cause a clearly defined and serious injury." *Campbell v. Sedgwick Detert, Moran & Arnold*, No.11-642, 2013 U.S. Dist. LEXIS 45981, at *23 (D.N.J. Mar. 28, 2013). A balancing test is employed if a court determines that the discovery should be

11

disclosed but when addressing whether or not to limit the means of such discovery. Courts consider the following factors: "(i) whether the information is being sought for a legitimate purpose or improper purpose; (ii) whether disclosure will promote fairness and efficiency among litigants; and (iii) whether a party benefitting from the order is a public entity, public official or private litigant and whether the case involves matter of legitimate public interest." *Campbell*, 2013 U.S. Dist. LEXIS 45981, at *24, *citing Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-88 (3d Cir. 1994).

Defendants argue that Plaintiffs have not stated any "good cause" for permitting the protective order; however, "[c]ourts have found that irrelevancy of the proposed discovery is sufficient to satisfy the 'good cause' requirement for a protective order." *Allah*, 2022 U.S. Dist. LEXIS, at *15. The Special Master, in his review of the facts underlying the motions before him, determined that the written discovery propounded on Dr. Gunaratna was not "related to the substance of opinion or the claims and defenses in this litigation." Opinion at 11. Judge Dickson as the Special Master is not new to this litigation having served as the presiding Magistrate Judge over this case for a decade prior to returning to private practice. His familiarity with the issues in this case, while subject to *de novo* determination, is informative for the Court on the history of this litigation. With regard to the redacted communications, the Special Master again found that these "lack relevance sufficient to expose what was, at least once, undoubtedly confidential to third parties…." *Id.* at 12. But even assuming relevance, the Special Master addressed the balancing test in equating Defendants' desire "to attack the credibility of []Dr. Gunaratna, Plaintiffs' counsel, and/or Plaintiffs investigators in this case" as constituting an "improper purpose" for the discovery. Further, by stating that "withholding this sensitive information will not unduly preclude Defendants' efforts in this regard," the Special Master determined that disclosure would not

12

promote efficiency among the litigants. With regard to Plaintiffs' expert disclosures, the Special Master reviewed the submissions and determined that they were proper. *Id.* at 15.

In addition to irrelevancy, as Plaintiffs submitted in their motion for a protective order from June 30, 2022, undue burden based on the duration of the action may establish good cause for a protective order. In *Robinson v. Horizon Blue Cross Blue Shield of N.J.*, No. 12-2981 (ES), 2014 U.S. Dist. LEXIS 98345, at *11 (D.N.J. July 21, 2014), the court found good cause for entry of a protective order where the case had persisted for two years and based on the amount of discovery already produced. As stated on numerous occasions, this case has been pending in this Court for over 13 years. During that time period, Defendant Raj Rajaratnam was prosecuted for insider trading, sentenced to an eleven-year sentence, and released after serving seven years of his sentence, and we have still not briefed summary judgment motions on the issue of Phase I liability. Further, Defendants had numerous opportunities to seek discovery regarding Dr. Gunaratna—who was disclosed to Defendants in November 2016 as being involved in introducing Plaintiffs' counsel to Anonymous Witness 1 and whose name appears in connection with discovery produced years ago. Relevant non-protected documents have been produced to the Defendants; nevertheless, Defendants insist on attempting to obtain irrelevant materials unrelated to the merits of this litigation.[6] For these reasons, the order granting a protective order should be sustained.

## II. Plaintiffs Have not Relied on Foreign Law to Withhold Documents

In one of Defendants' common non sequiturs, Defendants argued that Plaintiffs' counsel

---

[6] Defendants blame the length of this case on Plaintiffs; however, it took five years until the first discovery schedule was set in this case, and over six years have been dedicated to Defendants' "investigation" into the Confidential Witness' relationship with Plaintiffs, Plaintiffs' counsel, Plaintiffs' investigators, and now, Plaintiffs' expert witness Dr. Rohan Gunaratna. This "investigation" has now exceeded the length of merits discovery in this case by well over four years.

13

never appropriately raised an issue of foreign law under Fed. R. Civ. P. 44.1. But Plaintiffs have never stated they were relying on foreign law. As is evident from their objections to the discovery requests propounded as to Dr. Gunaratna, relevancy is the prime concern with regard to the requests. Plaintiffs' invocation of comity concerns or a quasi-law enforcement privilege is simply an equitable concern that the documents that were withheld are not relevant to this case even in the broadest formulation, they are not being used to support Plaintiffs' litigation interests, and they do not inform the expert testimony that Dr. Gunaratna is prepared to provide. In short, when Plaintiffs produced documents and a log to the Defendants, they did so subject to and without waiving the objections previously provided on December 23, 2021. Defendants have never attempted to establish relevancy other than to argue that they want these documents and that Plaintiffs should hand them over. That is not the manner in which courts address discovery, and the irrelevant inquiries from the Defendants should be subject to a protective order.

**III.     Plaintiffs are not Seeking a Confidentiality Order to Protect Disclosure of the Requested Documents but Rather an Order Prohibiting Further Non-Deposition Discovery of Dr. Gunaratna**

In another argument devoid of context to the motion before the Court, Defendants raise arguments from cases seeking confidentiality orders under a Rule 26(c) analysis; however, Plaintiffs' request under Rule 26(c) seeks to forbid the disclosure or discovery because it is unwarranted, irrelevant, oppressive, and unduly burdensome. If Defendants are permitted to continue to propound their overbroad discovery with little relationship between their requests and the underlying issues in this case, then this litigation will continue into perpetuity contrary to Fed. R. Civ. P. 1 which states that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Discovery without an end and without any

14

discernable boundaries—precisely what Defendants seek here—runs directly contrary to this principle.

### IV. Aside from the Foregoing Arguments, Defendants' Requests to Dr. Gunaratna Were Procedurally Improper

Defendants' submission conflates so many principles that it becomes difficult to follow at times; however, one thing is clear: the discovery requests regarding Dr. Gunaratna were procedurally improper. Defendants appear to take issue with the proposition that a party's testifying expert witness is a non-party or third-party to the action. Dr. Gunaratna is certainly not a litigant in this case, and the discovery sought from him extends far beyond the scope of his relationship with Plaintiffs' counsel. Nevertheless, Defendants served their discovery requests—citing only to Fed. R. Civ. P. 26—on Plaintiffs' counsel without determining if Plaintiffs' counsel were authorized to accept service on behalf of Dr. Gunaratna and without stating under what authority the discovery requests were being served. Because Dr. Gunaratna is not a party, these requests necessarily should have been served under Fed. R. Civ. P. 45. They were not. In fact, cases cited in earlier briefing by Defendants provide that "Rule 45 governs discovery from nonparties through the issuance of subpoenas." *D'Souza v. Marmaxx Operating Corp.*, 2017 WL 1322243, at *2 (W.D. Tex. Apr. 7, 2017). Furthermore, "interrogatories or requests for documents served on non-parties are a nullity. Discovery of non-parties must be conducted by subpoena pursuant to Fed. R. Civ. P. 45, not the rules governing discovery of parties." *Lehman v. Kornblau*, 206 F.R.D. 345, 346 (E.D.N.Y. 2001).

Defendants take issue with Plaintiffs seeking the protective order here rather than Dr. Gunaratna, but the only entity on whom the discovery was served were the Plaintiffs. While these requests pertained to Dr. Gunaratna, they were not actually served on him. And as a testifying expert witness, Plaintiffs sought to cut off the harassment and disparagement that has been rife in

15

Defendants' filings and submissions by obtaining a protective order to halt any additional written discovery as it pertains to Dr. Gunaratna. Defendants made no attempt to comply with Rule 45. As the *Lehman* decision states, this makes the requests a nullity under the law.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Court should affirm the Opinion and Order of the Special Master Regarding Plaintiffs' Motion for a Protective Order and set a schedule for dispositive motions to be filed as to Phase I liability issues. *De novo* review should result in the same outcome as that reached by the Special Master, and the Court should enter a protective order disallowing any further discovery as to Plaintiffs' expert witness Dr. Rohan Gunaratna with the exception of his deposition which is permitted under Fed. R. Civ. P. 26(b)(4)(A). Furthermore, Defendants' cross-motion to compel the production of additional documents related to Plaintiffs' expert witness Dr. Rohan Gunaratna should be denied as seeking information outside the bounds of relevancy in this case.

**LITE DEPALMA GREENBERG & AFANADOR, LLC**

Dated: January 23, 2023

*/s/ Joseph J. DePalma*
Joseph J. DePalma
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858

**MOTLEY RICE LLC**
Michael E. Elsner (admitted *pro hac vice*)
John M. Eubanks (admitted *pro hac vice*)
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450

*Attorneys for Plaintiffs*