## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARUNAMUNIGE CHAMILA KRISHANTHI, et al.<br><br>v.<br><br>RAJAKUMARA RAJARATNAM, et al. | Civil Action No. 2:09-cv-05395-BRM-JSA<br><br>OPINION AND ORDER OF THE SPECIAL MASTER REGARDING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER<br>(ECF No. 506) |

This matter comes before the Special Master by way of Plaintiffs' Motion for a Protective Order precluding Defendants from obtaining additional written and document discovery from or concerning Plaintiffs' affirmative expert witness Dr. Rohan Gunaratna ("Dr. Gunaratna"). (ECF No. 506). Defendants opposed Plaintiffs' motion and further requested that I order Plaintiffs' production of materials previously requested by Defendants. (ECF No. 521). Both parties subsequently submitted supplemental responses. (ECF Nos. 525, 526).

I have reviewed the submissions and the relevant controlling law. For the reasons set forth below, Plaintiffs' Motion for a Protective Order is hereby **GRANTED**, and Defendants' request for the production of materials is **DENIED**.

## I.    INTRODUCTION

I presume that the parties are familiar with the facts surrounding the underlying action and claims. Accordingly, I will recite only the relevant procedural and factual background necessary to address the disputes at hand.

As stated in my previous Opinion and Order dated June 22, 2022 (*see* ECF No. 502), this matter concerns allegations that, between 2006 and 2009, and under the cover of charitable contributions to United States-based relief organizations, Defendants financed the Liberation

Tigers of Tamil Eelam ("LTTE"), a known terrorist organization in Sri Lanka. (ECF No. 384 ¶¶ 25–197). Plaintiffs allege that Defendants made numerous contributions to the Rajaratnam Family Foundation between 2001 and 2005, knowing that the contributions would be transferred to the LTTE through the Tamils Rehabilitation Organization ("TRO"). (ECF No. 161 at 3). In 2007, the United States Treasury Department designated the TRO as a "charitable organization that acts as a front to facilitate fundraising procurement for the LTTE." (*Id.* at 2).

The Court permitted Defendants to explore the nature of these alleged relationships through subpoenas to a confidential witness (the "Confidential Witness") and three Joint Terrorism Task Force ("JTTF") agents who worked as investigators for Plaintiffs in the present litigation. In June 2018, Defendants served these individuals with subpoenas and, on January 15, 2021, they produced responsive and non-privileged documents. (ECF Nos. 395, 445). On July 21, 2021, following a status conference with the parties, the Honorable Jessica A. Allen, U.S.M.J. entered a scheduling order directing, in relevant part, the parties to: (1) disclose the names of any affirmative experts, and the subject(s) upon which the experts will be offering opinions, by September 3, 2021; (2) serve expert reports by September 20, 2021; and (3) complete expert depositions and all related expert discovery by December 19, 2021. (*See* ECF No. 464 at 2). On September 3, 2021, pursuant to Judge Allen's scheduling order, Plaintiffs disclosed to Defendants the names, backgrounds, and testimony subjects of four testifying experts, including Dr. Gunaratna. (*See* ECF No. 506-1 at 5–10). On September 20, 2021, in addition to Dr. Gunaratna's expert report, Plaintiffs provided Defendants with the curriculum vitae of Dr. Gunaratna, as well as a list of materials considered and related to his expert report. (*See generally* ECF No. 525-2; 525-3; 525-4).

On November 11, 2021, Defendants served Plaintiffs with discovery requests concerning Dr. Gunaratna. According to Defendants, "Dr. Gunaratna's expert report and the discovery

produced by other witnesses in this case demonstrate that Dr. Gunaratna investigated this case on behalf of Plaintiffs at least since 2010," but that his "sole disclosure for the services that he has provided to Plaintiffs . . . consists of a single sentence, in which he states that he is 'being compensated by Plaintiffs in this case according to an hourly billable rate of one hundred twenty-five U.S. dollars or one thousand U.S. dollars per day.'" (ECF No. 506-1 at 12). Defendants' interrogatories sought, *inter alia*, information related to Dr. Gunaratna's work—as an expert witness or otherwise—for, among other individuals and entities, Plaintiffs' counsel and the former JTTF agents, including his role, tasks, commencement of work, dates of retention, and compensation. (ECF No. 521-1 at 14–17). Defendants also sought information related to Dr. Gunaratna's relationship and communications with the former JTTF agents, the Confidential Witness, and Anonymous Witness No. 1. (*Id.* at 15–16). Similarly, Defendants' requests for production sought any and all non-privileged communications, agreements, and information related to Dr. Gunaratna's relationship with Plaintiffs, Plaintiffs' counsel, the former JTTF agents, the Confidential Witness, and Anonymous Witness No. 1, including any invoices or other documents memorializing payments or other financial benefits between the parties. (*See* ECF No. 521-2 at 14–15). Defendants asserted in their accompanying letter that, "[w]ithout this information, [Defendants] cannot, among other things, explore the extent of Dr. Gunaratna's bias and interest in helping Plaintiffs in this case as [Defendants] are entitled to do." (ECF No. 506-1 at 13).

On November 22, 2021, Plaintiffs responded to Defendants' discovery request, stating that: (1) "the scope and breadth of [Defendants'] requests are improper under . . . Federal Rule of Civil Procedure"; (2) Defendants' requests are unduly burdensome and unlikely to lead to the discovery of admissible evidence; and (3) Defendants' requests, served fifty-two days after Plaintiffs provided Dr. Gunaratna's expert report and sixty-nine days after disclosure of Dr. Gunaratna as an

expert witness, were untimely. (*Id.* at 51). Plaintiffs, however, provided "invoices demonstrating the amounts paid to Dr. Gunaratna by Motley Rice LLC," and indicated that they were in the process of "preparing for production [of] the invoices submitted by Dr. Gunaratna with certain information redacted dating back to Dr. Gunaratna's initial involvement in this litigation." (*Id.* at 51, 53). Plaintiffs further represented that "Dr. Gunaratna has not received any payments from Plaintiffs' other investigators (or the entities with which they are affiliated) or from the Confidential Witness or Anonymous Witness 1." (*Id.* at 53). Finally, Plaintiffs provided the following information regarding Dr. Gunaratna's work with Motley Rice:

> Dr. Gunaratna has only worked as an expert witness for Motley Rice LLC in this litigation and not for any other party or entity listed in your discovery requests. His work as a consultant who introduced Plaintiffs to Anonymous Witness 1 was disclosed five years ago (in November 2016). Information regarding Dr. Gunaratna was included in the Confidential Witness' document production in 2018 and was the subject of your discovery requests to the JTTF agents and to the Confidential Witness; however, now three and a half years later, Defendants have untimely sought broad discovery not authorized by the Federal Rules for expert discovery. The invoices to be produced will set forth the time periods for which Dr. Gunaratna has received compensation for his services in this litigation. The only compensation anticipated by Dr. Gunaratna beyond what he has been paid to date is for future preparation for his deposition, taking his deposition and/or trial testimony, and to the extent he may serve as an expert witness in subsequent phases of this litigation, he would also be compensated for that work by Motley Rice LLC.

(*Id.*).

On December 1, 2021, the parties held a meet and confer to discuss Defendants' discovery requests. On December 23, 2021, Plaintiffs sent Defendants a letter stating, *inter alia*, that interrogatories to non-parties such as Dr. Gunaratna are prohibited under the Federal Rules of Civil Procedure, and that, if Defendants sought information from Dr. Gunaratna, they could address this at his deposition. (*Id.* at 59). Plaintiffs also stated that, in the spring of 2009, Dr. Gunaratna began

his expert consultant relationship with Plaintiffs, but that, as of July 2016, he had been serving as a testifying expert. (*Id.* at 60). Plaintiffs nonetheless responded to Defendants' discovery requests, providing relevant communications and information but otherwise invoking privilege related to work product. (*Id.* at 60–67).

## II.   ARGUMENTS

### A.   Plaintiffs' Motion for a Protective Order (ECF No. 506)

Plaintiffs move for the entry of a protective order "to preclude additional written and document discovery—separate and distinct from the deposition to which Defendants are entitled under Fed. R. Civ. P. 26(b)(4)(A)—as to Plaintiffs' affirmative expert witness Dr. Rohan Gunaratna." (ECF No. 506 at 1). Plaintiffs assert that a protective order is necessary due to Defendants' alleged intentional delay of this litigation, which I will briefly outline.

First, Plaintiffs contend that Defendants delayed this matter through their December 3, 2021 request for an extension of time for expert discovery due to, *inter alia*, Plaintiffs' alleged failure to fulfill their discovery obligations and "the relationship between Plaintiffs' counsel, the Former JTTF Agents, the confidential witness, and [Dr.] Gunaratna." (*See* ECF No. 479). According to Plaintiffs, the discovery issues raised in Defendants' request were irrelevant and did not justify delaying expert discovery. (ECF No. 506 at 3). Second, Plaintiffs assert that Defendants "have not provided a written response [to Plaintiffs' December 23, 2021 response to Defendants' November 11, 2021 discovery requests] or engaged in a meaningful meet and confer regarding Plaintiffs' objections and responses." (*Id.* at 3–4). Rather, Plaintiffs allege that "Defendants have simply ignored Plaintiffs' positions vis-à-vis this request and proceeded with the premise that Plaintiffs' objections are meaningless, and the only thing that will allow them to proceed with Dr. Gunaratna's deposition is responsive discovery that is to Defendants' sole

satisfaction." (*Id.* at 4). Third, Plaintiffs cite to Defendants' January 18, 2022 "unilateral adjournment" of all expert depositions due to Plaintiffs' outstanding discovery obligations. (*Id.*).

Plaintiffs assert that, in an effort to prevent further delays by Defendants, they sought a third-party review of Dr. Gunaratna's emails, text messages, and WhatsApp messages for communications between Dr. Gunaratna, the Confidential Witness, and Anonymous Witness 1. (*Id.*). Following issues with a vendor in Sri Lanka, Dr. Gunaratna worked with officials at the university in which his email address is hosted to generate communications responsive to Defendants' discovery requests. (*Id.* at 5). On May 27, 2022, Plaintiffs produced these materials, as well as fourteen responsive emails, a privilege log, and documents concerning Plaintiffs' counsel and Dr. Gunaratna. (*Id.*). Following this production, Plaintiffs maintained that they had "complied in full with any obligations [they] may have had with regard to the discovery requests served in relation to Dr. Rohan Gunaratna and believe that his deposition should now be scheduled." (*Id.*). Plaintiffs cite Defendants' June 2, 2022 response to this production as further delay tactics. (*Id.* at 5–6 (Defendants questioning, *inter alia*, the privilege asserted by Plaintiffs on behalf of Dr. Gunaratna and the payments made by Plaintiffs' counsel's law firm to Anonymous Witness 1)). According to Plaintiffs, "Defendants' e-mail makes clear that no amount of discovery will ever satisfy Defendants, and the only way that [they] will proceed to the next phase of this case is with the Court issuing a protective order precluding them from seeking any additional fishing-expedition discovery." (*Id.* at 6).

In support of their motion for a protective order, Plaintiffs set forth several arguments. First, Plaintiffs note that they filed this action on October 22, 2009, and that the parties' joint discovery plan was filed with the Court on October 13, 2014, over eight years ago. (*Id.* at 8). Furthermore, Plaintiffs state that Dr. Gunaratna's introduction of Plaintiffs' counsel to Anonymous

Witness 1 was disclosed to Defendants in November 2016, but Defendants have "failed to seek any discovery on this point in the intervening time period." (*Id.* at 8–9). According to Plaintiffs, "[t]he production would not have been substantially different than it is today, but the delay by Defendants provides a factor in the analysis of whether or not to permit this discovery to proceed unabated with no end in sight." (*Id.* at 9). Plaintiffs, accordingly, argue that "[h]ad Defendants acted with a minimal level of diligence, they could have inquired into all of their desired topics in the deposition of Dr. Gunaratna, but a protective order is appropriate 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." (*Id.* at 10 (citing Fed. R. Civ. P. 26(c)(1)).

Plaintiffs further argue that Dr. Gunaratna's role as a previously non-testifying expert now testifying should not change my analysis of the parties' discovery disputes. According to Plaintiffs, courts that have addresses this issue—*i.e.*, the "dual hat" expert—have "concluded that an expert's proponent still may assert a privilege over such materials, but only over those materials generated or considered uniquely in the expert's role as a consultant." (*Id.* at 11). Plaintiffs maintain that their actions have satisfied not only Rule 26, but the standard that courts have adopted concerning "dual hat" experts:

> Plaintiffs provided Dr. Gunaratna with a copy of the Complaint when it was filed, but otherwise, any documents that were exchanged would have been provided to Plaintiffs' counsel (and not vice versa) which were subsequently produced to Defendants, and Dr. Gunaratna was not asked during the period where he was acting as a consulting expert to provide written memoranda that would be discoverable. Therefore, the documents that [Dr. Gunaratna] claims to have considered in the course of preparing his expert report include documents provided to him by counsel after he agreed to be a testifying expert witness and those documents he relied upon as an expert in this field.

(*Id.*).

**B.      Defendants' Opposition (ECF No. 521)**

Defendants oppose Plaintiffs' motion for a protective order and request that I "require Plaintiffs to comply fully with their discovery obligations on all fronts within thirty days," as well as "order the immediate production of the materials which Plaintiffs' counsel have already acknowledged to be in their possession, but which they are unreasonably withholding." (ECF No. 521 at 1). Defendants' second request characterizes the materials purportedly withheld by Plaintiffs as follows: (1) "documents which are being withheld by Plaintiffs pursuant to their claim of a 'Governmental Documents' privilege"; and (2) "documents which were attached to two recently produced WhatApp chains between [Dr.] Gunaratna and the confidential witness and Anonymous Witness No. 1 but are inaccessible to Defendants because of the format of Plaintiffs' production." (*Id.*).

Defendants further allege that "Plaintiffs' expert disclosures regarding [Dr.] Gunaratna are grossly inadequate," and that "Plaintiffs are required to produce any and all materials considered by [Dr.] Gunaratna in preparing his expert report, including all materials provided to him by Plaintiffs' counsel and all materials he obtained through his investigative work for them." (*Id.* at 9–11).

## III.   DISCUSSION

Upon a finding of good cause, Rule 26 permits a court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden of expense" by, *inter alia*, (1) "forbidding the disclosure or discovery"; (2) "prescribing a discovery method other than the one selected by the party seeking discovery"; or (3) "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c). "In seeking a protective order, a [moving] party establishes good cause by demonstrating that disclosure will

cause a clearly defined and serious injury." *Campbell v. Sedgwick Detert, Moran & Arnold*, No. 11-642, 2013 WL 1314429, at *8 (D.N.J. Mar. 28, 2013) (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786–87 (3d Cir. 1994)). "However, broad allegations of harm do not support a showing of good cause, so the alleged injury must be supported by specific examples and reasons." *Id.* (citing *Pansy*, 23 F.3d at 786–87); *see also A&B Ingredients, Inc. v. Hartford Fire Ins.*, No. 08-6264, 2010 WL 335616, at *4 ("Importantly, the party asserting that discovery should be prohibited bears the burden of establishing the lack of relevancy or undue burden.").

To determine whether good cause exists for Plaintiffs' proposed protective order, I must balance Defendants' need for the information requested pursuant to the November 11, 2021 discovery request "against the injury that might result if uncontrolled disclosure" is granted. *Pansy*, 23 F.3d at 787. If I find that the information Defendants seek should be produced, "the issue then becomes whether it should be disclosed in a designated way or whether any limitations of disclosure should be ordered." *A&B Ingredients*, 2010 WL 335616, at *4. "Factors to consider include: (i) whether the information is being sought for a legitimate purpose or for an improper purpose; (ii) whether disclosure will promote fairness and efficiency among litigants; and (iii) whether a party benefitting from the order is a public entity, public official or private litigant and whether the case involves matters of legitimate public interest." *Id.* (citing *Pansy*, 23 F.3d at 787–88).

In support of the present motion, Plaintiffs argue that the length of this litigation—which began on October 22, 2009—necessitates the entry of a protective order. (ECF No. 506 at 8). Plaintiffs further assert that (1) the close of formal fact discovery occurred on October 13, 2014, and (2) "Dr. Gunaratna's role in introducing Plaintiffs' counsel to Anonymous Witness 1 was disclosed in November 2016." (*Id.*). Finally, Plaintiffs maintain that much of the discovery

Defendants now seek, including that related to the relationship between Dr. Gunaratna and the Confidential Witness, Anonymous Witness 1, and the former JTTF agents, has been produced previously via the Confidential Witness's March 2018 production or via Plaintiffs' responses and objections to Defendants' present request. (*Id.* at 8–9). Accordingly, Plaintiffs argue that Defendants' opportunity, over years of litigation, to seek discovery on the issue of Dr. Gunaratna's relationship with several parties, coupled with the information that has already been produced, requires a prohibition on additional discovery requests beyond Dr. Gunaratna's deposition. (*Id.* at 8–10).

Upon review of the parties' submissions, it appears that there are four categories of potentially relevant materials at issue: (1) Plaintiffs' purportedly inadequate responses to Defendants' interrogatories and document requests; (2) redacted communications withheld by Plaintiffs pursuant to a purported "governmental documents" privilege; (3) attachments to Dr. Gunaratna's otherwise produced WhatsApp communications; and (4) additional disclosures related to Dr. Gunaratna's expert report. I will address each of these issues separately and through the lens of Plaintiffs' request for a protective order and Defendants' request for the production of materials.

### A.    Plaintiffs' Responses to Defendants' Interrogatories and Document Requests

I will first address Plaintiffs' responses to Defendants' discovery requests. Upon review of the requests, I find that they all ask for information that is irrelevant to the deposition of Dr. Gunaratna; is found in the disclosures previously made by Plaintiffs; or can be asked at the deposition. And while I understand—and Defendants have cited—that there is law that permits additional discovery requests to be served in certain circumstances, I do not find that such circumstances exist here. In such circumstances, the subsequent discovery requests to non-parties

such as Dr. Gunaratna must "remain[] within the bounds of Rule 26(b)(1)" and satisfy the relevance and proportionality requirements enumerated therein. *See D'Souza v. Marmaxx Operating Corp.*, No. 15-256, 2017 WL 1322243, at *5 (Apr. 7, 2017). The discovery sought here by interrogatories and document demands are by and large, if not completely, tailored to get at Dr. Gunaratna's relationship(s), if any, with Plaintiffs, witnesses, and Plaintiffs' law firms and his credibility.  They are not, as far as I can see, related to the substance of opinion or the claims and defenses in this litigation.

Accordingly, because I find that Defendants' further discovery requests have been adequately responded to by Plaintiffs, or that they can be asked during the deposition of Dr. Gunaratna, Defendants' request for additional discovery through the requests is hereby denied.

### B.    Redacted Communications

Next, in connection with the redacted materials, I have reviewed all of them in their unredacted form. They all appear to contain information that was received in confidence by Dr. Gunaratna and are related to either confidential governmental business or actual governmental investigations. And while there is no sufficiently argued "governmental immunity," I am concerned about the release of this information, which contains the identity of certain party(ies) apparently engaged in investigative activity on behalf of or in conjunction with a foreign government. Moreover, I find that much, if not all, of the information contained in the redacted emails and WhatsApp transcripts to be irrelevant to the deposition of Dr. Gunaratna as an expert witness. I have concluded, therefore, that the materials need not be produced in an unredacted form in this litigation.  There is an additional reason that I decline to require the disclosure of this information: Plaintiffs' submission asserts that none of these documents were relied upon or considered by Dr. Gunaratna in his expert opinion. Accordingly, while I decline to hold that a

"governmental documents" privilege protects the withheld portions, I do find that they lack relevance sufficient to expose what was, at least once, undoubtedly confidential to third parties, including those who may or may not have been requested to express their views on this matter. Finally, I perceive no interest that the Defendants have in this information other than to attack the credibility of the Dr. Gunaratna, Plaintiffs' counsel, and/or Plaintiffs' investigators in this case. Based on the extensive record in this matter, and the information Defendants have obtained, I have concluded that withholding this sensitive information will not unduly preclude Defendants' efforts in this regard.

The Plaintiffs' request, therefore, for a protective order preventing the disclosure of these documents is granted, and Defendants' request that these documents be produced is denied

### C.    WhatsApp Attachments

Next, Defendants assert that:

> [Plaintiffs' counsel] has produced two WhatsApp chats in PDF format which refer to 56 additional documents and videos exchanged between [Dr.] Gunaratna and the [C]onfidential [W]itness. These documents were not included on a privilege log and Plaintiffs have not claimed any alternate basis for their non-disclosure. . . . Those additional 56 documents . . . exist in the original WhatsApp chats and therefore must be produced.

(ECF No. 521 at 6–7). Plaintiffs have represented to the Court and me that they have "never received any imbedded documents from the WhatsApp chats to be produced," and that they "produced what they received minus certain redactions." (ECF No. 525 at 9). Defendants have not set forth any arguments or evidence that would permit me to doubt Plaintiffs' assertion. Plaintiffs' request, therefore, for a protective order preventing the disclosure of these documents is granted, and Defendants' request that these documents be produced is denied.

### D.    Expert Disclosure Obligations

Finally, Defendants maintain that Plaintiffs' expert disclosures regarding Dr. Gunaratna

were "grossly inadequate." (ECF No. 521 at 9).

This Court has previously "adopt[ed] the majority 'prodiscovery' position that 'a party must disclose all information provided to its testifying expert for consideration in the expert's report, including information otherwise protected by the attorney-client privilege or the work product [doctrine].'" *Beachfront N. Condominium Assoc., Inc. v. Lexington Ins.*, No. 14-6706, 2015 WL 4663429, at *3 (D.N.J. Aug. 5, 2015) (quoting *Synthes Spine Co. v. Walden*, 232 F.R.D. 460, 462 (E.D. Pa. 2005)); *see also F.T.C. v. Lane-Labs, USA, Inc.*, No. 00-3174, 2008 WL 4003927, at *1 (D.N.J. Aug. 25, 2008) ("Although the case law is not uniform, the overwhelming majority of courts have required the production of any information considered by a testifying expert in reaching his or her opinion, regardless of any privilege that may otherwise exist." (collecting cases)).

Complicating this matter, however, is Dr. Gunaratna's role in this litigation. As the parties note, Dr. Gunaratna has performed dual expert roles on Plaintiffs' behalf. At the outset of this matter, Dr. Gunaratna served as Plaintiffs' consulting expert. Materials reviewed or considered by Dr. Gunaratna during this time do not fall under Rule 26 and are not required to be disclosed. *See Bro-Tech Corp. v. Thermax, Inc.*, 2008 WL 724627, at *2 (E.D. Pa. Mar. 17, 2008) ("Information exclusively considered by such an expert in his or her capacity as a consulting expert does not fall under Rule 26(a)(2)(B)."); *see also Ansell Healthcare Products LLC v. Reckitt Benckiser LLC*, No. 15-915, 2017 WL 6328149, at *2 (D. Del. Dec. 11, 2017) ("Consulting expert discovery is much more limited than testifying expert discovery—materials considered by a consulting expert are generally not discoverable."). Since the fall of 2016, however, Dr. Gunaratna has worked exclusively as Plaintiffs' testifying expert, which, as stated previously, is a position that is wholly subject to discovery. *See Lane-Labs*, 2008 WL 4003927, at *1 ("The majority view is supported

by the advisory committee's note to Rule 26, which provides: 'The report is to disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.'").

In cases such as this with a "dual hat" expert, "privilege applies 'only [to] those materials generated or considered uniquely in the expert's role as consultant.'" *Ansell*, 2017 WL 6328149, at *2 (quoting *S.E.C. v. Reyes*, 2007 WL 963400, at *1 (N.D. Cal. Mar. 30, 2007)). There, "[t]he party resisting disclosure of the documents must demonstrate that 'the information considered for consulting expert purposes was not also considered pursuant to the expert's testifying function.'" *Id.* (quoting *Bro-Tech*, 2008 WL 724627, at *2). If, however, "the subject matter of the materials sought to be protected relates to the facts and opinions the expert expresses in his report, a court should order disclosure when there is at least an ambiguity as to whether the materials informed the expert's opinion." *Robocast v. Apple, Inc.*, 2013 WL 12155813, at *3 (D. Del. Sept. 18, 2013).

Despite Defendants' assertions to the contrary, Plaintiffs maintain that they have provided Defendants with all documents from Dr. Gunaratna's time as a consulting expert that he may have relied upon in his capacity as an expert witness:

> Dr. Gunaratna's role prior to his being changed from a consulting expert to a testifying expert witness in this litigation was to assist Plaintiffs' counsel in addressing issues related to attack attribution; investigating and obtaining documentation that would assist Plaintiffs' counsel to certain individuals—including Anonymous Witness 1—who Dr. Gunaratna had encountered in the course of his role as one of the world's foremost experts on the LTTE and his personal research into the LTTE in the time period after 2009; and assisting Plaintiffs' counsel in understanding the LTTE as an organization and how it operated during the relevant time period to

this litigation. Plaintiffs provided Dr. Gunaratna with a copy of the Complaint when it was filed, but otherwise, any documents that were exchanged would have been provided to Plaintiffs' counsel (and not vice versa) **which were subsequently produced to Defendants**, and Dr. Gunaratna was not asked during the period where he was acting as a consulting expert to provide written memoranda that would be discoverable. Therefore, the documents that he claims to have considered in the course of preparing his expert report include documents provided to him by counsel after he agreed to be a testifying expert witness and those documents he relied upon as an expert in this field.

(ECF No. 506 at 11 (emphasis added)).

Just as I did in my analysis of the "governmental immunity" invocation, I find no reason to doubt Plaintiffs' assertions concerning this production. Nor can I compel Plaintiffs to produce documents that do not exist. Therefore, Plaintiffs' expert disclosures, which included the materials that Dr. Gunaratna has relied upon as an expert witness and information related to his compensation, were proper. Defendants may ultimately attack any alleged impropriety on Plaintiffs' or Dr. Gunaratna's part concerning Dr. Gunaratna's preservation of discoverable materials. I am not ruling on the existence or parameters of any duty on experts or consulting experts to preserve documentation. Such an application is premature prior to the deposition of Dr. Gunaratna.

For the purposes of this motion, however, Plaintiffs' request for a protective order must be granted, and Defendants' request for the production of documents must be denied.

## IV.  CONCLUSION & ORDER

For the foregoing reasons, it is on this 22nd day of December, 2022,

**ORDERED** that Plaintiffs' motion for a protective order precluding Defendants from obtaining additional written and document discovery from or concerning Dr. Gunaratna is **GRANTED**; it is further

**ORDERED** that Defendants' request for Plaintiffs to supplement their response to

Defendants' November 11, 2021 Interrogatories and Requests for Production to Dr. Gunaratna is **DENIED**; it is further

ORDERED that Defendants' request for unredacted copies of Dr. Gunaratna's WhatsApp communications is **DENIED**; it is further

ORDERED that Defendants' request for the production of attachments to Dr. Gunaratna's WhatsApp communications is **DENIED**; and it is finally

ORDERED that Defendants' request for additional expert witness disclosures is **DENIED**.

**SO ORDERED.**

*/s/ Joseph A. Dickson*
Hon. Joseph A. Dickson, U.S.M.J. (Ret.)
Special Master

Date: December 22, 2022