<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **KARUNAMUNIGE CHAMILA KRISHANTHI,** *et al.*, | |
| **Plaintiffs,** | **Civil Action No. 09-5395 (BRM) (JSA)** |
| **v.** | |
| **RAJAKUMARA RAJARATNAM,** *et al.*, | **OPINION** |
| **Defendants.** | |

<u>**JESSICA S. ALLEN, U.S.M.J.**</u>

Before this Court is Defendants Raj Rajaratnam and the Estate of J.M. Rajaratnam's ("Defendants") appeal, pursuant to Federal Rule of Civil Procedure 53(f), of an Opinion and Order entered by Special Master Joseph A. Dickson, U.S.M.J. (ret.) on December 22, 2022, (the "Special Master's Opinion and Order"), granting Plaintiffs'[1] motion for a protective order and denying Defendants' cross-motion to compel discovery. (ECF Nos. 527, 530). Plaintiffs have opposed the appeal. (ECF No. 529). No oral argument was heard. Fed. R. Civ. P. 78(b). For the reasons set forth below, and for good cause shown, Defendants' appeal is **DENIED**, and the Special Master's Opinion and Order is **AFFIRMED**.

**I.      <u>RELEVANT BACKGROUND AND PROCEDURAL HISTORY</u>**

The facts and procedural history are well-known to the parties and have been detailed in

---

[1] There are dozens of Plaintiffs in this action, who are identified in Plaintiffs' Third Amended Complaint. (ECF No. 384). For the sake of brevity, the Court will refer to them collectively as "Plaintiffs."

several court opinions and orders.[2]  As such, the Court includes only the facts and procedural history necessary to decide this appeal.

This litigation began in 2009.  Plaintiffs allege that, between 2006 and 2009, Defendants, through charitable contributions to United States-based relief organizations, financed the Liberation Tigers of Tamil Eelam ("LTTE"), a known terrorist organization in Sri Lanka, for the purpose of advancing bombings that took place in Sri Lanka and harmed Plaintiffs.  On January 24, 2022, the Honorable Brian R. Martinotti, U.S.D.J. appointed the Honorable Joseph A. Dickson, U.S.M.J. (Ret.) as a Special Master (herein, "the Special Master" or "Judge Dickson") to manage and facilitate discovery in this case.  (ECF No. 496).

### A.    History of the Underlying Discovery Disputes

The underlying discovery disputes that precipitated the discovery motion practice and appeal[3] date back to 2021.  A recitation is necessary before addressing the merits of the appeal.

On July 21, 2021, the Undersigned entered a Scheduling Order, requiring, among other things: (i)  disclosure of names of any expert witnesses and the subject of their testimony by September 3, 2021; (ii) service of affirmative expert reports by September 21, 2021; (iii) service of responsive expert reports by November 4, 2021; and (iv) completion of expert depositions and all

---

[2] *Krishanthi, et al. v. Rajaratnam, et al.*, 2019 WL 13170095 (D.N.J. Feb. 19, 2019); *Krishanthi, et al. v. Rajaratnam, et al.*, 2014 WL 4677175 (D.N.J. Sept. 19, 2014); *Krishanthi, et al. v. Rajaratnam, et al.*, 2012 WL 503828 (D.N.J. Feb. 14, 2012); *Krishanthi, et al. v. Rajaratnam, et al.*, 2011 WL 4962394 (D.N.J. Oct. 17, 2011); *Krishanthi, et al. v. Rajaratnam, et al.*, 2011 WL 2607108 (D.N.J. June 30, 2011); *Krishanthi, et al. v. Rajaratnam, et al.*, 2011 WL 1885707 (D.N.J. May 18, 2011); *Krishanthi, et al. v. Rajaratnam, et al.*, 2010 WL 3429529 (D.N.J. Aug. 26, 2010).

[3] The record includes four letter briefs from the parties, respectively, to the Special Master, (ECF Nos. 506, 521, 525, 526), and three briefs submitted in connection with the appeal. (ECF Nos. 527, 529, 530).  For ease of reference, filings are referenced by their ECF entry numbers throughout this Opinion.

related expert discovery by December 19, 2021.  (*See* ECF No. 464 at 2).  On September 3, 2021, Plaintiffs disclosed Dr. Rohan Gunaratna ("Dr. Gunaratna") as a testifying expert, and on September 20, 2021, provided Dr. Gunaratna's expert report, his curriculum vitae, and a list of materials considered and/or relied upon by Dr. Gunaratna in forming his expert opinion.  (*See* ECF No. 531 at 2).

Dr. Gunaratna is the Director General of the Institute for National Security in Sri Lanka and a Professor of Security Studies at the S. Rajaratnam School of International Studies at the Nanyang Technological University, Singapore, as well as the founder of the International Centre for Political Violence and Terrorism Research in Singapore.  (ECF No. 506-1, Ex. A at 6).  In the Spring of 2009, Dr. Gunaratna began working as a non-testifying expert consultant for Plaintiffs in connection with this case.  (*See* ECF No. 506-1, Ex. E at 2).  In July 2016, Plaintiffs converted Dr. Gunaratna into a testifying expert and indicated he would testify about, among other things, the LTTE's history of violence and the network of organizations that engaged in supporting the LTTE, both financially and logistically.  (*See* ECF No. 506-1, Ex. A at 1, Ex. E at 2).  Dr. Gunaratna's involvement in this litigation as a consultant became known to Defendants in 2016 while conducting discovery regarding other witnesses.  (*See* ECF No. 506 at 8).  Dr. Gunaratna's interactions and relationship with those witnesses have been explored in some detail in discovery.  (*Id.*).

On or about November 11, 2021, Defendants propounded seventeen (17) interrogatories and nine (9) document demands on Dr. Gunaratna (sometimes, collectively, the "discovery requests"), which were served via e-mail on Plaintiffs' counsel.  (ECF No. 506-1, Ex. B).  The discovery requests seek information relating to: (1) when Dr. Gunaratna began working for Plaintiffs' law firm, Motely Rice, and other entities, including investigative and security companies; (2) compensation Dr.

Gunaratna may have received from Motely Rice and these other entities; and (3) communications and interactions that Dr. Gunaratna may have had with other witnesses and/or individuals, particularly in Sri Lanka.  (*Id.*).

On December 23, 2021, Plaintiffs wrote to Defendants ("the December 23rd Letter"), stating that Dr. Gunaratna is a non-party witness and not subject to party written discovery requests, and that the discovery requests were improper and in violation of Federal Rules of Civil Procedure 26 and 45.  (ECF No. 506-1, Ex. E at 1, Ex. E at 3).  Notwithstanding those objections, "in order to expedite the deposition of Dr. Gunaratna," Plaintiffs agreed to provide Defendants with some of the information sought.  (ECF No. 506 at 5).  To that end, Plaintiffs included, in the December 23rd Letter, a written response to the document demands, which identified by bates numbers certain responsive documents previously produced in discovery and confirmed Plaintiffs' agreement to produce additional documents.  (ECF No. 506, Ex. E at 3).

On May 27, 2022, Plaintiffs produced "[1] 14 responsive emails, [2] a privilege log, [3] a series of documents concerning prior engagement letters between Motley Rice and Dr. Gunaratna .... and [4] a March 8, 2022 report generated by a Sri Lankan entity related to its search of Dr. Gunaratna's emails, and information regarding the email retention policy of Nanyang Technological University."  (ECF No. 506 at 5 & Ex. I) (bracketed numbers added).  Plaintiffs also produced, in redacted form, what has been described as "two WhatsApp message chains between Gunaratna and confidential witnesses and Anonymous Witness No. 1 . . . ." (ECF No. 521 at 4).  However, Plaintiffs refused to respond to Defendants' interrogatories propounded on Dr. Gunaratna and withheld seven emails, which allegedly reflected, among other things, "ongoing criminal investigations in Sri Lanka that were being conducted by Dr. Gunaratna in his role as Director General of the Sri Lankan Institute

of National Security Studies which operated under the Sri Lankan Ministry of Defence and also in his role as a consultant to the Sri Lankan Government."  (ECF No. 525 at 7-8).  Plaintiffs claimed that five of the withheld emails and the redacted WhatsApp messages were protected by a "governmental secrets" privilege and two documents were protected by the attorney work-product doctrine.  (ECF No. 506 at 7 & Ex. I at 3).   Plaintiffs refused to produce any additional written discovery relating to Dr. Gunaratna and asked Defendants to either schedule Dr. Gunaratna's deposition or move to compel more specific responses to their discovery requests.  (*Id.*)

Defendants neither scheduled the deposition nor moved to compel at that time.  Instead, throughout May and June 2022, the parties exchanged additional letters and emails wherein, among other things, Plaintiffs continued to request that Dr. Gunaratna's deposition be scheduled. Defendants declined to do so until Dr. Gunaratna responded to the outstanding discovery requests.  (ECF No 506, Exs. J-L).

## B. **Motion for a Protective Order and Cross-Motion to Compel**

Having reached an impasse, on June 30, 2022, Plaintiffs submitted a letter application to the Special Master seeking the entry of a protective order, pursuant to Federal Rule of Civil Procedure 26(c), to preclude any additional discovery from Dr. Gunaratna, other than his expert deposition. (ECF No. 506).  Plaintiffs advanced four main arguments.  First, the discovery requests lacked any relevance to Dr. Gunaratna's expert opinions or the materials on which he relied in forming his opinions.  (*Id.* at 1).  Relatedly, the discovery requests directed to Dr. Gunaratna, a non-party, violate the Federal Rules.  (*Id.*  at 3-4).  Third, given the voluminous discovery produced during the seven-year fact discovery period, any additional discovery sought would be cumulative and an improper litigation delay tactic.  (*Id.* at 8-10).  Finally, according to Plaintiffs, they had complied with their

5

mandatory expert disclosure requirements, pursuant to Rule 26(a)(2)(B), and thus Defendants could inquire into the subjects of their discovery requests during Dr. Gunaratna's deposition.  (*Id.* at 8-11).

On August 17, 2022, Defendants opposed Plaintiffs' motion for a protective order and cross-moved for an order directing Plaintiffs to produce the following: the emails and redacted portions of the WhatsApp messages withheld pursuant to the "governmental secrets privilege"; attachments to the WhatsApp messages; further responses to their document demands; and responses to their interrogatories (the "August 17th Letter").  (ECF No. 521 at 1, 13).  Defendants advanced three primary arguments.  First, Plaintiffs had improperly invoked an inapplicable governmental secrets privilege.  (*Id.* at 7-8).  Second, Defendants' discovery requests were procedurally appropriate because Motely Rice "invited" Defendants to serve the requests.  (*Id*. at 12).  Finally, the discovery requests sought information regarding Dr. Gunaratna's dual role as a consulting non-testifying expert and his subsequent role as a testifying expert as well as the details of his "unconventional compensation." *(Id*.).

In their reply submission of September 2, 2022, Plaintiffs reiterated their relevancy objections, the impropriety of serving the discovery requests on Plaintiffs' counsel addressed to a non-party, and Plaintiffs' compliance with their expert disclosure obligations.  (ECF No. 525 at 1). In support of their purported compliance with expert disclosures, Plaintiffs stated that they provided a 13-page document listing the voluminous materials that Dr. Gunaratna considered in connection with his report, and that they produced all submitted and paid invoices for Dr. Gunaratna for the work performed "as both a non-testifying expert and then as a 'dual hat' testifying expert from March 2009 through the present."  (*Id.* at 2).  Finally, Plaintiffs conceded that a "governmental secrets privilege" did not apply to the withheld emails and the redacted WhatsApp communications.

6

Nevertheless, Plaintiffs argued that the materials should not be disclosed because they involve Dr. Gunaratna's work with the Ministry of Defence in Sri Lanka, and because the documents have "no relationship with the underlying facts in this litigation or, for that matter, the defenses asserted by the Defendants other than the relationship between Dr. Gunaratna and the Confidential Witness." (*Id.* at 8, 9).  Finally, Plaintiffs asserted, for the first time, that international comity considerations support the issuance of a protective order.  (*Id.*).

In their sur-reply of September 12, 2022, Defendants dispute Plaintiffs have met their burden of showing comity considerations justify barring production of the withheld documents.   (ECF No. 526 at 2).

## C.  <u>The Special Master's Opinion and Order</u>

On December 22, 2022, Judge Dickson entered his Opinion and Order.  (ECF No. 531). Judge Dickson determined that four categories of information were in dispute:

> (1) Plaintiffs purportedly inadequate responses to Defendants' interrogatories and document demands; (2) redacted communications withheld by Plaintiffs pursuant to a purported governmental documents privilege; (3) attachments to Dr. Gunaratna's otherwise produced WhatsApp communications; and (4) additional disclosures related to Dr. Gunaratna's expert report.

(ECF No. 531 at 10).

Judge Dickson addressed each of the four categories of information.  <u>First</u>, as to the sufficiency of Plaintiffs' responses to Defendants' discovery requests, Judge Dickson concluded the requests seek information that is irrelevant to the deposition of Dr. Gunaratna.  (*Id.* at 10).  Relatedly, Judge Dickson also found that the requests were not proportional because they were "by and large, if not completely," related to credibility and did not relate "to the substance of [Dr. Gunaratna's]

7

opinion or the claims and defenses in this litigation." (*Id.* at 10).  To that end, Judge Dickson found

that the information sought is either contained in Plaintiff's prior disclosures or could be asked at the

deposition.  (*Id.*).

     <u>Second</u>, with respect to the redacted and/or withheld emails and communications, Judge

Dickson concluded that while no governmental privilege attached to the documents, they contained

information that involved confidential "government business" and investigations, were "irrelevant

to the deposition of Dr. Gunaratna," and were not relied upon or considered as part of Dr. Gunaratna's

expert opinion. (*Id.* at 11-12). Judge Dickson further concluded that the documents lacked sufficient

relevance to "reveal the identity of certain party(ies) apparently engaged in investigative activity on

behalf of or in conjunction with a foreign government."  (*Id.* at 11).  Finally, Judge Dickson

determined that any relevance was limited to Dr. Gunaratna's credibility but that, due to the

"extensive record in this matter, and the information Defendants have obtained," further disclosure

was not necessary, and a protective order was appropriate.  (*Id.*).

     <u>Third</u>, with respect to the WhatsApp attachments, Judge Dickson relied on the representation

of Plaintiffs' counsel that they had produced all the documents in their possession. (*Id.* at 12).  As

such, he did not compel Plaintiffs to produce anything further.

     <u>Fourth</u>, Judge Dickson accepted Plaintiffs representation that they had provided "all

documents from Dr. Gunaratna's time as a consulting expert that he may have relied upon in his

capacity as an expert witness" and that he had "no reason to doubt Plaintiff's assertions concerning

this production[,] [n]or could I compel Plaintiffs to produce documents that do not exist." (*Id.* at 14-

15).  As a result, Judge Dickson concluded that Plaintiffs' expert disclosures "were proper." (*Id.* at

15).

Accordingly, Judge Dickson granted Plaintiffs' request for a protective order and denied Defendants' request to produce.  (*Id.*).

**D.     The Appeal**

In their opening brief, Defendants restate many of the arguments from their August 17th Letter, including that no governmental privilege or considerations of comity apply to justify withholding the documents sought and that there is no basis for a protective order.  (ECF No. 527). The thrust of their argument on appeal is set forth succinctly in their reply brief.  Defendants contend that Judge Dickson erred, essentially, in three ways: (1) "the Special Master failed to identify any good cause for the entry of the protective order"; (2) "the Special Master erred in failing to acknowledge the lenience of relevant inquiry and the appropriateness of potential impeachment as a basis for disclosure"; and (3) "the Special Master's focus on delay incorrectly blames Defendants for the delay attributable to Motley Rice and the Special Master himself."[4]  (ECF No. 530 at 3; *see also* ECF No. 527 at 16 n.9, 17-22).

In opposition, Plaintiffs argue that the discovery requests were procedurally improper and a "nullity."  (ECF No. 529 at 1, 15).  Plaintiffs further argue that the discovery sought is not relevant, and the lack of relevance is sufficient good cause for a protective order.[5]  (ECF No. 529 at 1, 11).

---

[4] There is no indication that the Special Master's rulings were based on any finding that Defendants were responsible for delaying this litigation.  In any event, this Court reaches its decision to grant the motion for protective order and deny the motion to compel for reasons independent of whether either party caused any delay.  Accordingly, any dispute about delay is not germane to this Court's rulings herein.

[5] In their papers, Plaintiffs make a passing reference to their "invocation of comity concerns or a quasi-law enforcement privilege . . . [as] an equitable concern."  (ECF No. 529 at 14).  They argue "the documents that were withheld are not relevant to this case even in the broadest formulation, they are not being used to support Plaintiffs' litigation interests, and they do not inform the expert testimony that Dr. Gunaratna is prepared to provide."  (*Id.*).  As a result, it appears Plaintiffs no longer claim privilege and comity as independent bases to withhold the documents, but rather submit such considerations are part of a larger continued relevancy objection.

9

## II.   <u>STANDARD OF REVIEW</u>

This Court's review of the Special Master's Opinion and Order is governed by Federal Rule

of Civil Procedure 53.  In relevant part, Rule 53 states:

(f) Action on the Master's Order, Report, or Recommendations.

(1) Opportunity for a Hearing; Action in General.
In acting on a master's order, report, or recommendations, the court must give the parties notice and an opportunity to be heard; may receive evidence; and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions.
. . .
(3) Reviewing Factual Findings.
The court must decide de novo all objections to findings of fact made or recommended by a master, unless the parties, with the court's approval, stipulate that:
(A) the findings will be reviewed for clear error; or
(B) the findings of a master appointed under Rule 53(a)(1)(A) or (C) will be final.

(4) Reviewing Legal Conclusions. The court must decide de novo all objections to conclusions of law made or recommended by a master.

(5) Reviewing Procedural Matters. Unless the appointing order establishes a different standard of review, the court may set aside a master's ruling on a procedural matter only for an abuse of discretion.

Fed. R. Civ. P. 53(f) (emphasis added).  Here, the parties agree that Rule 53's *de novo* standard of

review applies.  (*See* ECF No. 527 at 10; ECF No. 529 at 10-11).  *See also* Fed. R. Civ. P. 53(f)(3)-

(4).[6]  "'The phrase '*de novo* determination' . . . means an independent determination of a controversy

---

[6] As one court has recently observed, there is a split in authority regarding the standard of review that applies to reviewing a Special Master's rulings on scope of discovery matters. *See, e.g.*, *Arconic Corp. v. Novelis, Inc.*, 2021 U.S. Dist. LEXIS 187885 (W.D. Pa. Sept. 30, 2021) (noting split in authority and collecting cases); *In re Lincoln Nat'l Coi. Litig.*, 2019 U.S. Dist. LEXIS 141746, at *6 (E.D. Pa. Aug. 21, 2019) (same).  The *Arconic* court found that "[t]he majority of courts regard a special master's determination about the scope of discovery as a procedural matter subject to 'abuse of discretion' review." *Id.* at *6; *see also Nippon Steel & Sumitomo Metal Corp. v. Posco*, 2014 WL 1266219, at *1 (D.N.J. Mar. 26, 2014) (Chesler, J.) (applying abuse of discretion standard to special master's rulings on discovery matters). Noting this split, the *Arconic* court decided to follow the minority view which applies the *de novo* standard to scope of discovery disputes. *Id.* at * 6-7 (citing *Callwave Commc'ns LLC v. AT&T Mobility LLC*, 2016 U.S. DIST. LEXIS 78278, at *1 (D. Del. 2016)). Given the split in authority, it is not inherently clear here whether the Special Master's Opinion and Order is subject to review for an "abuse of discretion" or "*de novo*."  Since the parties agree that *de novo* is the proper standard of review, in an abundance of caution, the Undersigned will apply the *de novo* higher standard of review.

that accords no deference to any prior resolution of the same controversy.'" *In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, 2022 U.S. Dist. LEXIS 141982, at *20 (D.N.J. Aug. 9, 2022) (Martinotti, J.) (quoting *United States v. Raddatz*, 447 U.S. 667, 690 (1980) (Stewart, J., dissenting)); *see United States v. First City Nat'l Bank*, 386 U.S. 361, 368 (1967) (observing that "review *de novo*" means "that the court should make an independent determination of the issues").

## III.   **DECISION**

Although the parties' respective arguments turn primarily on whether the information and documents sought in the discovery requests are relevant, the Court first considers whether Defendants may properly serve expert interrogatories and document demands on Dr. Gunaratna.

### A.   **Appropriateness of Serving Expert Witness Discovery Requests**

Defendants served Plaintiffs' counsel with expert interrogatories and document demands for Dr. Gunaratna to answer.  According to Defendants, this was appropriate because Plaintiffs' counsel "invited" the service of the discovery demands.  (ECF No. 530 at 3-4).[7]  To the contrary, Plaintiffs repeatedly objected to Defendants' discovery demands as being an improper discovery tool.  (ECF No. 506-1, Ex. E at 1, 3; ECF No. 525 at 1, 3-4; ECF No. 529 at 2, 4, 15).  Plaintiffs objected to all of the discovery requests on the basis that they are not permissible under the Federal Rules of Civil Procedure.  This Court agrees.

Interrogatories are governed by Federal Rule of Civil Procedure 33 and may not be served

---

[7] Defendants cite to a statement in a letter submitted to the Court on October 21, 2021, (ECF No. 472), as support for their position that Plaintiffs invited them to serve discovery requests on Dr. Gunaratna.  (*Id.* at 4).  However, based on this Court's review, the letter does not state that Defendants should serve expert interrogatories and document demands on Plaintiffs' counsel.

on non-parties.  *See, e.g.*, *SEC v. Desai*, 672 Fed. Appx. 201, 206 (3d Cir. 2016) ("The District Court correctly noted that Rule 33 of the Federal Rules of Civil Procedure only provides for sending interrogatories to another *party* in the lawsuit.") (emphasis in original); *see also Russe v. United States*, 2022 WL 4137837, at *1-2 (W.D.N.C. Sept. 12, 2022) (denying request to have a non-party expert respond to interrogatories); *Taggart v. Wells Fargo Home Mortgage, Inc.*, 2012 WL 4462633, at *2 (E.D. Pa. Sept. 27, 2012) (granting protective order, and noting, "[i]nterrogatories served on nonparties are nullity."); *Arugu v. City of Plantation*, 2010 WL 11520178, at *3 (S.D. Fla. June 21, 2010) (rejecting interrogatories directed to expert served on opposing counsel).  Likewise, Rule 34 requests for production may be served on a non-party only in conjunction with a Rule 45 subpoena. *See, e.g.*, *Lehman v. Kornblau*, 206 F.R.D. 345, 346 (E.D.N.Y. 2001) ("Any interrogatories or requests for production of documents served on non-parties are a nullity. Discovery of non-parties must be conducted by subpoena pursuant to Fed. R. Civ. P. 45, not the rules governing discovery of parties."); *Chiquita Fresh North America v. Long Island Banana Corp.*, 2018 WL 4853049, at *3 (E.D.N.Y. Sept. 18, 2018) (rejecting use of document demands served on a non-party absent a subpoena).  The amended Federal Rules of Civil Procedure do not contemplate serving an expert witness with discovery demands.

The Court's analysis in *McPherson v. Wells Fargo Bank* is instructive:

> The Court's review of the record shows that Plaintiff is plainly correct. The Federal Rules of Civil Procedure were amended only recently with respect to the manner and means by which expert discovery should be obtained. The drafters of the 2010 amendments to Rule 26 focused extensively on the proper scope that expert discovery should take given the documented abuses by all sides and the unnecessary costs that were impeding the orderly resolution of litigation. This work resulted in revamped and enhanced pretrial disclosures by testifying experts under Rule 26(a)(2). The Rule also

> contemplated that these mandatory enhanced disclosures, coupled with depositions, would allow for meaningful expert discovery yet balance the cost and intrusiveness involved. *See* Adv. Comte. Notes, 2010 Amds., Fed. R. Civ. P. 26.
>
> The pending discovery requests seek to undermine the process that the Federal Rules now contemplate by adding an additional and wasteful layer of discovery: expert interrogatories that are not approved in either Rule 26 or Rule 33. Indeed, as Rule 33 expressly provides, interrogatories may be served "on any other party[.]" The Rule does not contemplate service of interrogatories on witnesses or even expert witnesses. Thus, the pending requests seek discovery that is outside the scope of the Federal Rules of Civil Procedure.

*McPherson v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 193990, at *7-9 (S.D. Fla. Oct. 25, 2013).

This Court finds this sound reasoning persuasive.  While the cases cited by Defendants seem to suggest that an expert witness could be properly served with a Rule 45 *subpoena* for testimony and documents,[8] these cases, like the amended rules, do not endorse serving party interrogatories or document requests under Rule 33 and 34 on expert witnesses.  *See, e.g.*, *D'Souza*, 2017 WL 1322243, at *3-5.

In short, this Court finds that Defendants' discovery requests impermissibly seek information outside the proper scope of the Federal Rules of Civil Procedure.  Thus, they are a nullity.  *See Lehman*, 206 F.R.D. at 346.  On this independent basis, the request for a protective order is granted, and the motion to compel is denied.  *See, e.g.*, *Pickens v. Hendricks*, 2023 WL 5216964, at *7 (W.D.N.C. Aug. 14, 2023) (granting protective order to non-party improperly served with

---

[8] *See D'Souza v. Maemaxx Operating Corp.*, 2017 WL 1322243 (W.D. Tex. Apr. 7, 2017); *United States v. Bazaarvoice, Inc.*, 2013 WL 3784240 (N.D. Cal. July 18, 2013); *EMW Women's Surgical Center, P.S.C. v. Meier*, 2018 WL 10215971, at *2 (W.D. Ky. Nov. 9, 2018).

interrogatories); *Taggart*, 2012 WL 4462633, at *2 (granting protective order, and noting, "[i]nterrogatories served on nonparties are nullity."). Having found the discovery requests are outside the scope of the Federal Rules of Civil Procedure, this Court need not consider whether the discovery requests seek information relevant to claims and defenses of the parties or Dr. Gunaratna's expert opinions. Nevertheless, for completeness, the Court addresses Plaintiffs' relevancy objections as a separate basis for granting their request for a protective order and denying Defendants' motion to compel.

**B.    Scope of Discovery Under 26(b) and Establishing "Good Cause"
Under Rule 26(c)**

Federal Rule of Civil Procedure 26(b)(1) governs the general scope of discovery, in relevant part, as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The Court maintains broad discretion to resolve issues pertaining to the scope of discovery under Rule 26. *See Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987). However, the Court recognizes that "the scope of discovery is not without limits." *Robbins v. Camden City Board of Educ.*, 105 F.R.D. 49, 55 (D.N.J. 1985). Accordingly, "[d]iscovery should be tailored to the issues involved in the particular case." *Id.*

"The party seeking discovery has the burden of showing that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *EEOC v. Princeton*

14

*Healthcare System*, 2012 WL 1623870, at *19 (D.N.J. May 9, 2012) (quoting *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000)).   Yet, consistent with the standards set forth in Rule 26(b)(2), "'the party resisting discovery has the burden of clarifying and explaining its objections to provide support thereof.'" *Id.* (quoting *Tele-Radio Sys. Ltd. v. DeForest Elects., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981)).   In resolving discovery disputes, the Court must consider the rule of proportionality, which "'guard[s] against redundant or disproportionate discovery,'" and thus affords the Court "'authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry.'" *Takacs v. Union Cty.*, 2009 WL 3048471, at *1 (D.N.J. Sept. 23, 2009) (quoting *Bowers v. National Collegiate Athletic Assoc.*, 2008 WL 1757929, at *4 (D.N.J. Feb. 27, 2008)).

Rule 26(c) provides that the Court may, for "good cause," enter a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," by, among other things, denying, restricting, or limiting the scope of discovery.   Fed. R. Civ. P. 26(c)(1)(A)-(H).   A protective order may forbid discovery altogether or specify limiting terms for such discovery.   Fed. R. Civ. P. 26(c)(1)(A)-(B).

To establish "good cause," the proponent must demonstrate "'that disclosure will work a clearly defined and serious injury.'" *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) (quoting *Pansy v. Boro. of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). "The injury must be shown with specificity [and] [b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Pansy*, 23 F.3d at 786-87. "The good cause determination must also balance the public's interest in the information against the injuries that disclosure would cause." *Wecht*, 484 F.3d at 211 (citing *Pansy*, 23 F.3d at 786-87).   In determining

15

whether to impose a protective order, courts generally consider a number of factors: "(1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public." *Arnold v. Pa. Dep't of Transp.*, 477 F.3d 105, 108 (3d Cir. 2007) (repeating factors known commonly as the "*Pansy* factors").

However, the *Pansy* factors are neither "***mandatory*** nor exhaustive," and the district court is "best situated to determine what factors are relevant to any given dispute." *In re Avandia Marketing and Sales Practices & Prod. Liability Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (emphasis added). Importantly, the party seeking discovery must "'first demonstrate relevance before the party seeking a protective order must demonstrate good cause.'" *Sciore v. Centric Bank*, 2021 U.S. Dist. LEXIS 138407, at *17 (E.D. Pa. Jul. 23, 2021) (quoting *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 195 (D.N.J. 2010)); *see Gardner v. Boone*, 2023 U.S. Dist. LEXIS 22536, at *7 (E.D. Pa. Feb. 9, 2023) (noting that only after the discovering party demonstrates relevance does the party moving for a protective order must show good cause exists "to limit or foreclose discovery."). To that end, several courts within this Circuit have held that the "irrelevancy of the proposed discovery is sufficient to satisfy the 'good cause' requirement for a protective order." *Allah v. Bartowski*, 2022 WL 17730036, at *5 (D.N.J. Nov. 15, 2022); *Barghout v. Bayer Healthcare Pharm.*, 2013 WL 12161870, at *4 (D.N.J. Feb. 11, 2013); *see also Sciore*, 2021 U.S. Dist. LEXIS 138407, at *48-54 (granting

16

protective order as to those requests for production of documents which seek irrelevant information); *Liberty Mut. Ins. Co. v. Universal Enters.*, 2010 U.S. Dist. LEXIS 162764, at *2 (E.D. Pa. Mar. 17, 2010) ("[G]ood cause is also satisfied by showing that the material requested is irrelevant to the pending claims.").

This Court adopts the sound reasoning of these courts in that good cause may be established by showing the discovery sought is not relevant to the claims and defenses or the expert opinions without having to consider the *Pansy* factors.  Accordingly, this Court rejects Defendants' argument that the Special Master's Opinion and Order should be reversed because the Special Master did not sufficiently address the *Pansy* factors and articulate "good cause" to support the entry of a protective order pursuant to Rule 26(c) and *Pansy* and its progeny.  (ECF No. 530 at 3).

In any event, by cross-moving to compel discovery, Defendants have placed the relevance of the discovery sought squarely at issue, as well as concerns relating to proportionality, cumulative and duplicative discovery, and the needs of the case.  Accordingly, the Special Master properly considered whether the information sought was relevant when deciding the merits of both the motion for a protective order and cross-motion to compel discovery.

## C.    Relevance of the Information Sought

The Special Master found that Defendants' discovery requests all seek information that is: (1) "irrelevant" to the deposition of Dr. Gunaratna; (2) found in the disclosures previously made by Plaintiffs; and (3) limited to credibility concerns that can be asked at his deposition.  (*See* ECF No. 531 at 10-11).[9]  Having reviewed the requests *de novo* and applying the good cause standard, this

---

[9] The Special Master found that all the discovery requests sought information irrelevant to the parties' claims or defenses or Dr. Gunaratna's deposition, and thus he did not separately analyze each request.  Having independently determined

Court finds that the information and documents sought, under Rule 26, are irrelevant to Plaintiffs'
claims or Dr. Gunaratna's expert opinion.   Plaintiffs allege that Defendants, through charitable
contributions to United States-based relief organizations, financed the LTTE, terrorist organization
in Sri Lanka, for the purpose of advancing bombings that took place in Sri Lanka and harmed
Plaintiffs.  The discovery requests do not seek information about Dr. Gunaratna's opinions about the
LTTE's alleged history of violence and the network of organizations that engaged in supporting the
LTTE, both financially and logistically.  In contrast, all of the discovery requests seek information
about Dr. Gunaratna's relationships with Plaintiffs' counsel, the confidential witness, the JTTF
agents, and others in Sri Lanka.  (ECF No. 506, Ex. B).  In other words, the discovery requests seek
impeachment information, which may be explored during Dr. Gunaratna's deposition, but not
through impermissible expert interrogatories and requests for production of documents.

   Defendants contend that Judge Dickson erred by "failing to acknowledge the lenience of
relevant inquiry and the appropriateness of potential impeachment as a basis for disclosure."  (ECF
No. 530 at 3).  But Judge Dickson did no such thing.  Rather, Judge Dickson recognized that the
discovery requests were targeted to Dr. Gunaratna's "relationship(s), if any, with Plaintiffs,
witnesses, and Plaintiffs' law firms and his credibility," (*id.* at 11), and thus the topics were relevant
for impeachment and could be explored during his deposition (*id.*).  *See Russe*, 2022 WL 4137837,
at *1-2; *Arugu*, 2010 WL 11520178, at *3.

   Notwithstanding the discovery requests are outside the scope of the Federal Rules, Plaintiffs
voluntarily produced communications in redacted form.  Defendants contend that the redacted

---

that the requests seek information not relevant to the claims or defenses or Dr. Gunaratna's expert opinion, this Court
too finds it appropriate to collectively address the discovery requests.

communications[10] must be produced because they are not privileged and allowing Plaintiffs to withhold them would result in an unfair information asymmetry and cause Defendants to suffer prejudice.[11]

The Court has reviewed the redacted communications *in camera* and concludes that the redacted communications are irrelevant to the claims and defenses, let alone Dr. Gunaratna's expert opinion.[12]  For example, Document #1 on the log[13] consists of three sentences and does not contain information related to the claims in the case or Dr. Gunaratna's expert opinion.  Likewise, Documents #4 through 6 on the log appear to relate to the structure of certain agencies.  Finally, document #7 contains no substantive information that bears on Plaintiffs' claims in the case.[14]

---

[10] The Court has been provided with Plaintiffs' September 29, 2022, *in camera* submission to the Special Master.  The "redacted communications" are defined herein to include five of the seven emails withheld based on the governmental secrets privilege and the redacted WhatsApp transcripts (the "redacted communications").  Two of the seven emails (privilege log entry numbers two and three) have been withheld pursuant to the attorney work-product doctrine.  The redacted communications were all located in response to the document demands discussed in this Opinion.  Since the Court has already determined that those document demands were improperly served and that any further substantive response to them is not required, the redacted communications are essentially moot.  Nevertheless, the Special Master addressed the redacted communications separately.  For purposes of completeness, the Undersigned will as well.

[11] Defendants argue that the redacted communications are not protected by a governmental secrets privilege—at least one that Plaintiffs, as private parties, are permitted to invoke.  (ECF No. 527 at 10-15).  However, Plaintiffs concede both in the briefing below and in their appeal brief that they cannot assert privilege over the redacted communications.  (ECF No. 525 at 9; ECF No. 529 at 13-14).  And the Special Master did not find that they were privileged.  (ECF No. 531 at 11-12).  Rather, the Special Master found that the redacted communications were potentially sensitive documents that did not have relevance to the claims and defenses in this case or Dr. Gunaratna's expert opinion, and therefore, did not need to be produced.  (*Id.*)

[12] Defendants contend that Plaintiffs have conceded relevance of the documents and that the Special Master was wrong to hold otherwise.  To the contrary, Plaintiffs appear to have lodged relevancy objections immediately upon receipt of the discovery demands and throughout the proceedings.  (ECF No. 529 at 9; *see also* ECF No. 506, Ex. E at 3-5).

[13] "The log" refers to the privilege log that Plaintiffs provided to the Special Master by letter dated September 29, 2022.

[14] Documents #2 and 3 on the log were withheld on attorney work-product grounds, not based on an alleged governmental secrets privilege.  It does not appear that the parties argued attorney work-product in their submissions to the Special Master.  (*See, e.g.*, ECF No. 521 at 1, seeking production of "documents which are being withheld by Plaintiffs pursuant to their claim of a "Government Documents" privilege.").  And the Special Master's Opinion and Order did not address any such arguments.  Finally, the parties' appellate papers are devoid of any attorney-work product argument.  Therefore,

The same is true of the redacted portions of the WhatsApp communications. Putting aside that Defendants have the communications, albeit in redacted form, the unredacted portions do not bear on Plaintiffs' allegations that Defendants helped to finance a terrorist organization or Dr. Gunaratna's expert opinion about the LTTE organization.

The general purpose of the discovery rules is to even the playing field by ensuring that both sides have access to *relevant* information, to avoid surprise, and ensure parties have the information necessary to prepare for trial. *See, e.g.*, *Perna v. Electronic Data Systems Corp.*, 916 F. Supp. 388, 396 (D.N.J. 1995). Defendants claim that an information asymmetry would exist if Plaintiffs do not produce the redacted communications. That might be true if these documents were legitimately *relevant* to the claims and defenses, within the meaning and contemplation of Rule 26. Defendants have not articulated any relevancy to the claims in this case or Dr. Gunaratna's expert opinion. [15] Defendants argue the discovery sought pertains to credibility.

However, Defendants already possess discovery relating to Dr. Gunaratna's credibility. Specifically, discovery relating to the relationship between Dr. Gunaratna and the confidential witness was produced in 2018. (ECF No. 506 at 8). Defendants also have received information in response to their discovery demands, including the WhatsApp chat communications, which are largely unredacted. (ECF No. 506, Ex E). In addition, Defendants have referenced other information that they apparently intend to rely on to attack Dr. Gunaratna's credibility. (*See* ECF No. 527 at 9,

---

it appears there is no pending dispute over Documents #2 and 3 on the log. To the extent a dispute exists based on the attorney work-product doctrine, the issue should be raised in the first instance with the Special Master.

[15] As noted, this Court has found that Defendants failed to meet their threshold burden of establishing the relevancy of the documents sought. Accordingly, this Court declines to reach the merits of Defendants' contention that the documents are not protected by a law enforcement privilege or government documents privilege. (ECF No. 527-1 at 10).

referencing a judgment entered against Dr. Gunaratna for defamation arising out of false allegations of terrorism support).  Accordingly, this Court agrees with the Special Master's conclusion that not only do the discovery requests seek impeachment discovery that is irrelevant to the claims and defenses, but the information sought is cumulative and duplicative of the information already produced by Plaintiffs and independently obtained by Defendants from other sources.  Any additional related information on credibility may be explored during Dr. Gunaratna's expert deposition.  *See Russe*, 2022 WL 4137837, at *1-2; *Arugu*, 2010 WL 11520178, at *3.  Therefore, the requested information need not be produced pursuant to Rule 26(b)(C)(i), and the Court finds that a protective order, pursuant to Rule 26(c), is appropriate.  *See Allah*, 2022 WL 17730036, at *5; *Robinson,* 2014 U.S. Dist. LEXIS 98345, at *11.

### D.    WhatsApp Attachments

The Court next considers Defendants' contention that the Special Master erred by not compelling Plaintiffs to produce approximately fifty-six (56) attachments to the produced redacted WhatsApp communications.  When this issue was briefed before the Special Master, Plaintiffs represented that they did not possess the attachments, and therefore, were not able to produce them. (ECF No. 525 at 9).  Based on this representation, the Special Master denied Defendants' request for the production of these documents.  (ECF No. 531 at 12).  Considering the issue *de novo*, the Special Master was correct, as a party cannot be ordered to produce discovery that is not in its possession, custody or control.  *APG-Int'l, Inc. v. MERO-TSK, Inc.*, 2012 WL 13018967, at *2 (D.N.J. Jan. 12, 2012).

However, unbeknownst to the Special Master, it appears that Plaintiffs later came to possess the attachments.  Defendants allege that Plaintiffs agreed to produce the attachments, but then

reneged on producing them in unredacted form following the issuance of the Special Master's Opinion and Order.  (ECF No. 527 at 8-9, 18-19).  However, Defendants' allegation and the parties' dispute over the unredacted attachments was not presented to the Special Master.  Rather, Defendants have improperly raised this new issue for the first time in the context of this appeal.  *See, e.g.*, *Net2Phone Inc. v. eBay, Inc.*, 2008 U.S. Dist. LEXIS 50454, at *11-12 (D.N.J. June 25, 2008) (Shwartz, J.).  The parties are directed to meet-and-confer regarding this dispute.  To the extent the parties cannot reach agreement, the issue should be presented to the Special Master for resolution in the first instance.

### E.    Sufficiency of Dr. Gunaratna's Expert Disclosures

Rule 26(a)(2)(B) sets forth what a testifying expert must produce, including a written report and any facts and data considered in forming the expert's opinion.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i)-(iv).  Plaintiffs represented to the Special Master that they provided all information required by Rule 26(a)(2)(B), including having "provided Defendants with all documents from Dr. Gunaratna's time as a consulting expert that he may have relied upon in his capacity as an expert witness."  (ECF No. 531 at 14 (citing ECF No. 506 at 11)).  Based on that representation, the Special Master found that Plaintiffs' expert disclosure requirements were proper.  (ECF No. 531 at 15).  On appeal, Defendants appear to argue that Dr. Gunaratna's report contains references that "strongly suggest" additional discoverable information exists.  (ECF No. 530 at 8).  Following *de novo* consideration of this issue, the Court will not require additional expert disclosures.

First, Defendants' argument is speculative at best.  Defendants offer nothing to support their contention that other information exists regarding how Dr. Gunaratna formed his expert opinions.  Second, Defendants' contention that Dr. Gunaratna's *knowledge* has been drawn from other sources

not accounted for in the report appears to be an attack on his qualifications and experience. (ECF No. 530 at 8; *see also* ECF No. 525 at 6). Defendants are free to challenge his expert qualifications as well as his knowledge and experience based on his expert disclosures during Dr. Gunaratna's deposition. However, this does not mean Plaintiffs did not comply with Rule 26 disclosure requirements.

Rule 26(a)(2)(B) sets the parameters for mandatory testifying expert disclosures. To that end, Plaintiffs have made clear that all information Dr. Gunaratna considered in reaching his opinion has, in fact, been produced. The parties are undoubtedly aware that there are serious consequences should it later be determined that Dr. Gunaratna considered, but did not produce, additional materials in forming his opinion. However, based on the representations of Plaintiffs' counsel, and Defendants' failure to offer any competence evidence demonstrating that the disclosures are incomplete, the Court agrees with the Special Master that no additional information related to the expert disclosures must be produced at this time.

## IV.   <u>CONCLUSION</u>

For reasons stated above, following a *de novo* review of the record, Defendants' appeal, (ECF No. 527), is **DENIED**, and the Special Master's Opinion and Order is **AFFIRMED**.[16]  Plaintiffs'

---

[16] In the last paragraph of the last page of their reply brief, Defendants request that "the Court Order Motley Rice to provide within 30 days proof that its work with the Former JTTF Agents, the Confidential Witness, Gunaratna and the Anonymous Witness was known to and authorized by either the Department of Justice and/or the Sri Lankan government and that the government materials in its possession are similarly authorized and permitted for use in this litigation." (ECF No. 530 at 12). This request is improperly raised for the first time in reply and substantially exceeds the scope of this limited appeal. *See, e.g.*, *Net2Phone Inc.,* 2008 U.S. Dist. LEXIS 50454, at *11-12 (new issues shall not be raised in context of appeal of Special Master). For that reason, Defendants' request is **DENIED WITHOUT PREJUDICE**. Any discovery issues should be raised in the first instance with the Special Master.

motion for a protective order is **GRANTED**, and Defendants' cross-motion to compel is **DENIED**.

An appropriate form of order will be entered.

**s/Jessica S. Allen**
**HON. JESSICA S. ALLEN**
**United States Magistrate Judge**

**Dated: August 30, 2023**

cc:  Hon. Brian R. Martinotti, U.S.D.J.

24