# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARUNAMUNIGE CHAMILA KRISHANTHI, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>RAJ RAJARATNAM, *et al.*<br><br>Defendants. | Civil Action No. 09-05395 (BRM) (JSA)<br><br>*Document filed electronically.* |

## MEMORANDUM OF LAW IN OPPOSITION OF PLAINTIFFS' MOTIONS TO SUBSTITUTE

**GIBBONS P.C.**
Thomas R. Valen
Noel L. Hillman
Anne M. Collart
Marwan M. Rashed
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

**VENABLE LLP**
Samidh Guha
151 West 42nd Street, 52nd Floor
New York, NY 10036
(212) 503-9846

*Attorneys for Defendants Raj Rajaratnam and the Estate of Jesuthasan M. Rajaratnam*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY ......................... 4

LEGAL STANDARD ................................................................................................................. 6

ARGUMENT .............................................................................................................................. 8

I.   Plaintiffs' Motions are Unreasonably and Inexcusably Delayed. ...................... 9

II.  Plaintiffs' Delay and Motions to Substitute will Prejudice Defendants. ......... 12

III. The Court Should Hold a Hearing To Address Plaintiffs' Counsel's Authority With Respect to the Substitute Plaintiffs. ................................................................. 13

CONCLUSION ......................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Belfi v. Wagner*,
   No. 23-4346, 2024 U.S. Dist. LEXIS 176702 (E.D. Pa. Sep. 30, 2024) .................................8

*Cale v. Keim Lumber Co.*,
   Civil Action No. 20-1763, 2025 U.S. Dist. LEXIS 16513 (W.D. Pa. Jan. 30,
   2025) ........................................................................................................................................6

*Chrebet v. Cty. of Nassau*,
   No. CV 09-4249 (DRH) (AKT), 2014 U.S. Dist. LEXIS 63986 (E.D.N.Y.
   Feb. 28, 2014) ........................................................................................................................6

*Debellis v. Kulp*,
   166 F. Supp. 2d 255 (E.D. Pa. 2001) ....................................................................................12

*Doraleh Container Terminal SA v. Republic of Djibouti*,
   109 F.4th 608 (D.C. Cir. 2024) .....................................................................................7, 8, 13

*In re Eaton Vance Corp. Sec. Litig.*,
   220 F.R.D. 162 (D. Mass. 2004) .............................................................................................9

*EMI Entm't World, Inc. v. Karen Records, Inc.*,
   2013 U.S. Dist. LEXIS 81470 (S.D.N.Y. Jun. 10, 2013) ........................................................6

*Esposito v. United States*,
   368 F.3d 1271 (10th Cir. 2004) ...............................................................................................7

*Fed. Ins. Co. v. Z&L Holdings, LLC*,
   No. 2:23-cv-10866-MRA-MRW, 2024 U.S. Dist. LEXIS 235071 (C.D. Cal.
   Oct. 31, 2024) .................................................................................................................7, 8, 13

*Frank v. Wells Fargo Bank, N.A.*,
   620 F. Supp. 3d 1024 (C.D. Cal. 2022) ..................................................................................9

*Hatfield v. King*,
   184 U.S. 162 (1902) ................................................................................................................8

*Jordan v. Fox, Rothschild, O'Brien, & Frankel*,
   20 F.3d 1250 (3d Cir. 1994) ....................................................................................................7

*Killmeyer v. Oglebay Norton Co.*,
   817 F. Supp. 2d 681 (W.D. Pa. 2011) .....................................................................................7

*Kuelbs v. Hill*,
  615 F.3d 1037 (8th Cir. 2010) ........................................................................................9

*Lausin ex rel. Lausin v. Bishko*,
  727 F. Supp. 2d 610 (N.D. Ohio 2010) ..........................................................................12

*Nelson v. Cnty of Allegheny*,
  60 F.3d 1010, 1015 n.8 (3d Cir. 1995) ............................................................................6

*Osborn v. Bank of the U.S.*,
  22 U.S. (9 Wheat.) 738 (1824) ....................................................................................7, 13

*Scott v. Vantage Corp.*,
  336 F. Supp. 3d 366 (D. Del. 2018) ...............................................................................10

*Scott v. Vantage Corp.*,
  845 F. App'x 170 (3d Cir. 2021) ......................................................................................6

*Segal v. Brook*,
  Civil Action No. 20-3110, 2020 U.S. Dist. LEXIS 235215 (D.N.J. Dec. 15,
  2020) .........................................................................................................................10, 11

*Seph Acquisitions, LLC v. Readycap Lending, LLC*,
  Civil Action No. 24-11335 (JXN) (LDW), 2025 U.S. Dist. LEXIS 107721
  (D.N.J. June 6, 2025) .......................................................................................................6

*Tool-Plas Systems, Inc. v. Camaco, LLC*,
  No. 09-12003, 2010 U.S. Dist. LEXIS 32750 (E.D. Mich. Mar. 31, 2010) ....................7

*Vandiver v. Hardin Cty. Bd. of Educ.*,
  925 F.2d 927 (6th Cir. 1991) .........................................................................................12

*W.A. Gage & Co. v. Bell*,
  124 F. 371 (W.D. Tenn. 1903) ........................................................................................8

*Wesley v. Samsung Elecs. Am., Inc.*,
  Civil Action No. 20-18629-JMV-AME, 2022 U.S. Dist. LEXIS 187282
  (D.N.J. Oct. 13, 2022) ...................................................................................................12

*Wright v. Linebarger Googan Blair & Sampson, Ltd. Liab. P'ship*,
  782 F. Supp. 2d 593 (W.D. Tenn. 2011) .........................................................................7

**Rules**

Fed. R. Civ. P. 17, 1966 Amendment ......................................................................................6

Federal Rule of Civil Procedure 17 .....................................................................................6, 8

Local Rule 10.1 .........................................................................................................................4

RPC 1.4(b) ...........................................................................................................................10

RPC 1.4(b) and (c) ..............................................................................................................11

RPC 1.4(c)...........................................................................................................................10

Rule 17(a)..............................................................................................................................6

Rule 17(a)(3).........................................................................................................................7

Defendants Raj Rajaratnam ("Rajaratnam") and the Estate of Jesuthasan M. Rajaratnam (the "Estate", and together with Rajaratnam, the "Defendants"), through their undersigned counsel, respectfully submit this memorandum of law in opposition to Plaintiffs' Motions to Substitute. On May 30, 2025, Plaintiffs' Counsel brought motions on behalf of ten Plaintiffs, maintaining that each has reached the age of majority and therefore may pursue this litigation on their own behalf (collectively, the "Substitute Plaintiffs"). ECF Nos. 578-587. For the reasons set forth below, each of the Substitute Plaintiffs' motions (the "SP Motions") should be denied. In the alternative, the Court should at a minimum hold a brief hearing requiring Plaintiffs' Counsel and Substitute Plaintiffs to establish a record allowing the Court to consider fully the SP Motions.

## PRELIMINARY STATEMENT

The SP Motions, authored and submitted by Plaintiffs' Counsel, are bare-bones to say the very least, consisting of merely the request to substitute, identification of the individual, and a statement of when the individual turned eighteen. This is not merely an effort at efficient pleading. To the contrary, Plaintiffs' Counsel's submissions elide the substantial and worrying lack of requisite contact between Plaintiffs' Counsel and their purported clients that underlies the SP Motions and the timing of their filing. Furthermore, even the scant information contained in the SP Motions make clear that Plaintiffs' Counsel has made numerous substantial filings—including, for several of the Substitute Plaintiffs, the Third Amended Complaint (the "TAC")—purportedly on Plaintiffs' behalf *after* the Plaintiffs had attained the age of consent but apparently without Plaintiffs' involvement or authorization.

*First*, Plaintiffs' Counsel make no attempt to provide justification for the delay in seeking this substitution. The SP Motions allege claim only that "during the pendency of this action," the Substitute Plaintiffs reached the age of majority and are now the real party of interest. *See* ECF Nos. 578-587. But this framing by Plaintiffs' Counsel hides the ball. Simply comparing the

1

Substitute Plaintiffs' respective ages of consent against the filings by Plaintiffs' Counsel highlights the problem that either (i) Plaintiffs' Counsel maintained insufficient, if any, contact with the Substitute Plaintiffs over the course of this litigation; or (ii) Plaintiffs' Counsel knew earlier of the change in status of the Substitute Plaintiffs and implausibly forgot to correct their filings with this new information and failed in its duty to advise the Court and Defendants within a reasonable time.

The timeline is neither complex nor subject to dispute. Plaintiffs filed the TAC on November 13, 2018. At that time, four of the Substitute Plaintiffs were already over the age of eighteen:

- Nagodage Sashika Methmal ("Methmal"), who seeks to take the place of Plaintiff N.S.M., turned eighteen on May 5, 2012, **six years before** the TAC was filed. ECF No. 583.

- Niroshi Priyangani Sirisena ("Sirisena"), who seeks to take the place of Plaintiff N.P.S., turned eighteen on May 11, 2013, **five years before** the TAC was filed. ECF No. 585.

- Thusitha Madusanka Dharmapala ("Dharmapala"), who seeks to take the place of Plaintiff T.M.D., turned eighteen on January 6, 2014, **four years before** the TAC was filed. ECF No. 586.

- Ilukwattage Supun Sanjaya Thilakaratna ("Sanjaya Thilakaratna"), who seeks to take the place of Plaintiff I.W.S.S.T., turned eighteen on May 28, 2014, **four years before** the TAC was filed. ECF No. 580.

The most logical conclusion is that the operative pleading in this matter was filed on behalf of these four Substitute Plaintiffs without their authorization.

For five of the remaining six Substitute Plaintiffs, Plaintiffs' Counsel waited years after they turned eighteen to bring these motions:

- Lakshan Madusanka Dharmapala ("Lakshan Dharmapala"), who seeks to take the place of Plaintiff L.M.D., turned eighteen on February 10, 2019, **six years before** filing this motion. ECF No. 582.

- Walisingha Arachige Subashini (Subashini"), who seeks to take the place of Plaintiff C.S., turned eighteen on April 6, 2019, **six years before** filing this motion. ECF No. 587.

2

- R. Nipun Madusanka Bandara ("Madusanka Nipun"), who seeks to take the place of Plaintiff N.M., turned eighteen on May 3, 2020, **five years before** filing this motion. ECF No. 584.

- K.V. Danura Yogith ("Yogith"), who seeks to take the place of Plaintiff "minor child of Kankanam Vitharanage Piyaratna," turned eighteen on November 20, 2020, **four years before** filing this motion. ECF No. 581.

- Ilukwattage Shashikala Sewwandi Thilakaratna ("Sewwandi Thilakaratna"), who seeks to take the place of Plaintiff I.W.T., turned eighteen on March 20, 2023, more than **two years before** filing this motion. ECF No. 579.

The only remaining Substitute Plaintiff reached the age of majority approximately six months prior to the motion being filed. One thing is clear: the SP Motions each lack any specific, let alone legally cognizable, reasons why these motions were delayed and why they are only being made now.

The SP Motions, in identifying the date that each of the Substitute Plaintiffs turned eighteen years old, acknowledge that each of the Substitute Plaintiffs long ago reached the age to become the real parties in interest. The fact that Plaintiffs' Counsel made numerous submissions without their participation or consent of the real parties in interest raises serious concerns as to the propriety of the pleadings as to the Substitute Plaintiffs.

At a bare minimum, absent dismissal of the SP Motions, the Court should hold a brief hearing requiring Plaintiffs' Counsel and the Substitute Plaintiffs to create an evidentiary basis for the motions before adjudicating them. These motions should not be granted without the Court first determining why Plaintiffs' Counsel have waited so long to add these Plaintiffs to the litigation, as the record is currently devoid of any justification for the delay – which in most cases spans years. Doing so would have the additional benefit of confirming for the Court the willingness of Substitute Plaintiffs to fully participate in this matter.

3

## **RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs initially filed suit on October 22, 2009, ECF No. 1, before amending their complaints multiple times, adding new plaintiffs and new alleged attacks with each amendment. In total, Plaintiffs filed four complaints.[1] The final TAC was filed on November 13, 2018, nine years after the initial Complaint. ECF No. 384. Discovery was bifurcated, with Phase I discovery focusing upon liability issues. ECF No. 193. At the conclusion of Phase I discovery, Defendants filed a Motion for Summary Judgment on April 8, 2024. ECF No. 547. The Court issued an opinion on December 18, 2024, partially denying Defendants' motion. ECF Nos. 560-61.

Shortly thereafter, the parties conducted a series of meet and confer sessions to discuss a schedule for the completion of Phase II discovery. Phase II discovery, by design and agreement of the parties, was the first time that Plaintiffs' Counsel was required to produce discovery unique to each Plaintiff. The first meet and confer regarding Phase II discovery occurred shortly after the New Year.

The parties discussed a discovery timeline, starting with Plaintiffs' continued obligation to provide initial disclosures, including Plaintiffs' names, current addresses,[2] and telephone numbers. During these meet and confers, Defendants pushed for the production of Plaintiffs' addresses and contact information, and for depositions to be conducted in person in New Jersey. Counsel for Defendants did so in part out of concerns that at least some of the Plaintiffs (most of whom, according to Plaintiffs' counsel, are impoverished people living in undeveloped parts of Sri Lanka)

---

[1] Excluding the TAC, Plaintiffs filed their amended complaints on: (1) June 13, 2014, ECF No. 163; and (2) March 8, 2016, ECF No. 225.

[2] Per the Local Rules, Plaintiffs' Counsel was obligated to continuously inform Defendants and, more importantly, the Court of the Plaintiffs' address changes. Specifically, Local Rule 10.1 requires that: "Counsel and/or unrepresented parties must advise the Court of any change in their or their client's address within seven days of being apprised of such change by filing a notice of said change with the Clerk. Failure to file a notice of address change may result in the imposition of sanctions by the Court."

4

might not be willing, informed, and active participants, prepared to fulfil the obligations associated with bringing a lawsuit in U.S. federal court; Plaintiffs' Counsel resisted these demands.

Instead, Plaintiffs' Counsel insisted that Defendants did not need their telephone numbers or email addresses to conduct any investigation, and that many of the Plaintiffs lived in areas where making any contact with them extremely difficult, and that they should not be required to travel to New Jersey for depositions or otherwise.

At the ensuring conference before the Special Master on February 4, 2025, Plaintiffs' Counsel admitted that they had no recent contact with any of its Plaintiffs and was in the process of arranging "calls" through unidentified third-parties in Sri Lanka to connect with their purported clients.  Plaintiffs' Counsel, however, never mentioned that certain Plaintiffs, with whom they should have been in active contact, were no longer minors.[3]  Each and every time Defendants sought more information regarding the Plaintiffs, Plaintiffs' Counsel took the position that Defendants have all the information they need, or that it would be too difficult to retrieve the information and that Plaintiffs' Counsel should be excused from doing so.  The Special Master rejected Plaintiffs' Counsel's extreme position and set a deadline over their objection to provide the Plaintiffs' basic identifying information.

On February 7, 2025, the Special Master entered a Scheduling Order requiring Plaintiffs to "provide Defendants with Plaintiffs' identifying information with as much specificity as possible" by March 7, 2025.  ECF No. 565.  Two weeks later, Plaintiffs provided "Round 1" of their client contact information, which included identification of any individuals who passed away during the

---

[3] Plaintiffs' Counsel did admit that some of their clients had passed away (and later that one client who they represented had passed away was in fact alive), and they have since filed 15 suggestions of death.  None of these filings reveal when the Plaintiff died or when counsel learned of their deaths.

5

pendency of this litigation. Plaintiffs' Counsel did not otherwise meet the Special Master's March 7, 2025 deadline and never sought leave for its failure or request extensions of the deadline. Over the next few months, extending far beyond the deadline set by the Special Master, Plaintiffs' Counsel made a total of seven disclosures, providing names, addresses (often only partial), and information on Plaintiffs who passed away. Plaintiffs' Counsel also revised and at times provided contrary information to even the disclosures that it had earlier made.

Almost seven years after the filing of the TAC, many years after substantial pleadings in this matter, six months after the Court's decision on Defendants' Summary Judgment Motion, and five months after the first meet and confer, the Substitute Plaintiffs, through the pleadings filed by Plaintiffs' Counsel, now seek without explanation to substitute individuals who are no longer minors according to their respective motions.

## **LEGAL STANDARD**

"Under [Federal Rule of Civil Procedure 17], a new party may be substituted to ensure the real party in interest has his day in court. Substitution is permitted 'when determination of the proper party to sue [was] difficult or when an understandable mistake has been made.'" *Scott v. Vantage Corp.*, 845 F. App'x 170, 180 (3d Cir. 2021) (citing *Nelson v. Cnty. of Allegheny*, 60 F.3d 1010, 1015 n.8 (3d Cir. 1995)); *Seph Acquisitions, LLC v. Readycap Lending, LLC*, Civil Action No. 24-11335 (JXN) (LDW), 2025 U.S. Dist. LEXIS 107721, at *5 (D.N.J. June 6, 2025). Moreover, Rule 17 "is meant to protect a party from 'understandable mistake' in identifying the proper party when that determination is 'difficult.'" *Cale v. Keim Lumber Co.*, Civil Action No. 20-1763, 2025 U.S. Dist. LEXIS 16513, at *6-7 (W.D. Pa. Jan. 30, 2025) (*citing* Fed. R. Civ. P. 17, 1966 Amendment, advisory committee's note).

Although "[a] Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the

6

events or the participants[,]" *Seph Acquisitions, LLC*, 2025 U.S. Dist. LEXIS 107721, at *6 (D.N.J. June 6, 2025), Rule 17 was not created to allow parties to wait years after a complaint was filed to substitute the rightful plaintiffs, or to excuse the absence of a real party in interest. *See EMI Entm't World, Inc. v. Karen Records, Inc.*, 2013 U.S. Dist. LEXIS 81470, at *9-10 (S.D.N.Y. Jun. 10, 2013) (holding that one-year delay after learning of need to join parties in interest was not reasonable); *see also Chrebet v. Cty. of Nassau*, No. CV 09-4249 (DRH) (AKT), 2014 U.S. Dist. LEXIS 63986, at *58 (E.D.N.Y. Feb. 28, 2014) ("nearly two-year delay in seeking leave to amend, after having been specifically alerted to the standing defect by Defendants' Answer to the Complaint, does not constitute a 'reasonable time' under Rule 17(a)(3)").

As such, notwithstanding the liberal standard, courts have denied such substitution motions where appropriate. *See Killmeyer v. Oglebay Norton Co.*, 817 F. Supp. 2d 681, 690 (W.D. Pa. 2011) (adjudication of motions under Rule 17(a)(3) "is a matter of judicial discretion and will depend on the facts of each case."). Specifically, courts consider factors such as whether there has been unreasonable delay, any tactical maneuvering, and undue prejudice to the non-moving party. *Wright v. Linebarger Googan Blair & Sampson, Ltd. Liab. P'ship*, 782 F. Supp. 2d 593, 615 (W.D. Tenn. 2011) ("In deciding whether to allow a real party in interest to substitute into an action for the named plaintiff, the Court considers whether there has been an honest mistake as opposed to tactical maneuvering, unreasonable delay, or undue prejudice to the non-moving party."); *Tool-Plas Systems, Inc. v. Camaco, LLC*, No. 09-12003, 2010 U.S. Dist. LEXIS 32750, at *2 (E.D. Mich. Mar. 31, 2010) (*citing Esposito v. United States*, 368 F.3d 1271, 1275-76 (10th Cir. 2004); *Jordan v. Fox, Rothschild, O'Brien, & Frankel*, 20 F.3d 1250, 1278 (3d Cir. 1994) (court may appropriately consider delay and undue prejudice, as well as futility, in denying motion to amend)).

7

Counsel's authority to represent each client "'must indeed exist.'" *Doraleh Container Terminal SA v. Republic of Djibouti*, 109 F.4th 608, 613 (D.C. Cir. 2024) (quoting *Osborn v. Bank of the U.S.*, 22 U.S. (9 Wheat.) 738 (1824)). Though a rare factual scenario, where concerns regarding counsel's authority to act on behalf of this purported client are raised, courts have resolved such issues though an evidentiary hearing. *See, e.g.*, *Doraleh Container Terminal SA*, 109 F.4th at 613-14 (remanding to conduct investigation into attorney's authority to file petition to enforce arbitration award); *Fed. Ins. Co. v. Z&L Holdings, LLC*, No. 2:23-cv-10866-MRA-MRW, 2024 U.S. Dist. LEXIS 235071, at *11 (C.D. Cal. Oct. 31, 2024) (holding in-person hearing at which parties and counsel were ordered to testify under oath). "And where allegations of representation without consent are raised, a full 'investigation should be had in the first place in the court where the wrong is charged to have been done and before the judge who, if the charges are correct, has been imposed upon by counsel, and it may be wise that both examination and cross-examination be had in his presence.'" *Fed. Ins. Co.*, 2024 U.S. Dist. LEXIS 235071, at *11 (citing *Hatfield v. King*, 184 U.S. 162, 168 (1902)). Indeed, "[w]hen a party requests the court inquire into the lawyer's authority and presents evidence showing 'sufficient ground to question the authority,' the request is 'always granted.'" *Doraleh Container Terminal*, 109 F.4th at 614 (quoting *W.A. Gage & Co. v. Bell*, 124 F. 371, 380 (W.D. Tenn. 1903)).

## ARGUMENT

There can be no doubt that the factors courts are required to assess when considering a Rule 17 motion all weigh in favor of denying the SP Motions here. There has been extensive and unreasonable delay—without explanation. But more critically, there is inherent prejudice in defending against claims that were not permissibly asserted—as here for the Substitute Parties who had reached the age of majority before the filing of the TAC.

8

I.  **Plaintiffs' Motions are Unreasonably and Inexcusably Delayed.**

A simple look at the time between when each Plaintiffs turned eighteen and when they filed these motions demonstrates that the delay here was unreasonable. Waiting, in some instances, almost twelve years to file the motion, cannot be considered reasonable, especially when Plaintiffs' Counsel should have known that at least four Plaintiffs were at or over the age of eighteen at the time they filed the TAC. *See Belfi v. Wagner*, No. 23-4346, 2024 U.S. Dist. LEXIS 176702, at *23-24 (E.D. Pa. Sep. 30, 2024) ("Belfi has made no effort to join or substitute the Trustee in this action after being alerted to this defect in December 2023. Accordingly, the UTPCPL claim will be dismissed[.]").

In addition, five of the remaining six Plaintiffs waited multiple years after they turned eighteen to file these motions. Sanjaya Thilakaratna, Yogith, Dharmapala, Nipun, and Subashini all turned eighteen between two to six years ago. Courts have held that waiting even a few months is unreasonable. *See Kuelbs v. Hill*, 615 F.3d 1037, 1043 (8th Cir. 2010) (affirming district court denial of motion to substitute that was delayed by six months); *Frank v. Wells Fargo Bank, N.A.*, 620 F. Supp. 3d 1024, 1029 (C.D. Cal. 2022) (finding motion to substitute filed seven months after complaint was filed was unreasonable). Thus, all the Plaintiffs' motions fall well outside what is considered reasonable delay.

Given the discovery produced in this matter, there is ample reason to believe that this litigation has been driven by Plaintiffs' Counsel and their agents, bringing suit "on behalf of only nominally interested plaintiffs in the hope of obtaining a quick settlement." *In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 168 (D. Mass. 2004). Defendants are aware of no evidence suggesting that Plaintiffs' Counsel was contacted by any of the Plaintiffs in an effort to bring suit against Defendants. To the contrary, Plaintiffs' Counsel has produced materials demonstrating that the Former JTTF Agents engaged with Plaintiffs' Counsel well before the filing of the initial

9

complaint and passed along many of the allegations (some later withdrawn) that comprise the pleadings.

The genesis of this litigation, long the subject of concern, becomes relevant in connection with the SP Motions. Plaintiff's Counsel has waited multiple years after almost all the Substitute Plaintiffs turned eighteen to file the present motions without explanation. This cannot be excused, given the origin story of this litigation, but must be understood as a logical consequence from an absence of required attorney-client communication and attorney diligence. Plaintiffs' Counsel had numerous opportunities, indeed obligations, to talk with their alleged clients and file these motions earlier. It chose not to do so and indeed at times has represented that it has great difficulty in communicating with Plaintiffs – their purported clients.

Plaintiffs have offered no explanation, let alone the "understandable mistake" that courts have recognized to excuse counsel's failure to file substitutions much earlier. *Scott v. Vantage Corp.*, 336 F. Supp. 3d 366, 373 (D. Del. 2018) (denying plaintiffs' motion to substitute because "plaintiffs have not adequately explained the alleged 'understandable mistake' through which plaintiffs failed to adequately research their claim[.]"). Instead, their motions are bare-bones, merely stating when the minors turned eighteen and their full names as adults. Notably missing is an explanation as to why counsel waited to file these motions even when Plaintiffs have reached the majority age for multiple years.

Also telling is that the motions do not explain whether Plaintiffs spoke with these now adult Plaintiffs, if so, when did they speak with them, and whether counsel has authority to represent them, and when counsel obtained such authority. This is particularly of concern here where a pleading and numerous motions was filed seemingly without authorization of the true parties in interest. Plaintiffs' Counsel have an ethical obligation to regularly communicate with

10

each of their clients and keep each of them informed of the status of their case. *Segal v. Brook*, Civil Action No. 20-3110, 2020 U.S. Dist. LEXIS 235215, at *6 (D.N.J. Dec. 15, 2020) ("RPC 1.4(b) provides that a lawyer 'shall keep a client reasonably informed about the status of a matter,' and RPC 1.4(c) states that a lawyer 'shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.'"). If this had been fulfilled, presumably such communications would have timely revealed the issue of Plaintiffs' age.

Three such instances in this case particularly highlight when counsel should have been in contact with each of their clients and discovered that some were no longer minors: (1) when counsel filed the TAC; (2) in April 2024, when Defendants filed their Motion for Summary Judgment; or (3) in December 2024 when the Court denied Defendants' Motion. It is inexcusable if Plaintiffs' Counsel was not in communication with their clients in connection with these three events. Had Plaintiffs' Counsel maintained the requisite contact, it is a near certainty that the communications would have led to the prompt filing of a motion to substitute. *See id*. at *7 ("[Counsel] did not consult with Plaintiff before submitting a settlement letter to the magistrate judge in the First Action or before filing certain documents in the Second Action, []; and failed to explain the legal significance of certain filings in the underlying matter, []. These allegations are sufficient to establish that [counsel] breached their duty as to Plaintiff under RPC 1.4(b) and (c).").

Defendants are not typically in a position to enforce the ethical obligations Plaintiffs' Counsel owes to its clients. However, when the potential violation of those ethical duties means that claims have been asserted and maintained against Defendants without communication with the real parties in interest, Defendants have serious and legitimate concerns about the authority of Plaintiffs' Counsel to have asserted such claims in the TAC. The Court, of course, may

11

independently seek verification in order to maintain the sanctity of these proceedings, either through its inherent powers or otherwise.

## II.      Plaintiffs' Delay and Motions to Substitute will Prejudice Defendants.

Even if the Court were to find that Plaintiffs' Counsel's decision to wait so many years after the Substitute Parties turned eighteen to file these motions was both an understandable mistake or a reasonable delay, Defendants were and are still prejudiced.

First, in light of the length of time that has gone by without the updated information as to the change in status and contact information—*i.e.*, their names—as to the Substitute Plaintiffs, Defendants have lost years during which investigation into these adult Plaintiffs could have been conducted. In truth, however, Counsel is not in a position to know the full extent of undue prejudice unless and until Defendants are able to ascertain more about the relationship, if any, between Substitute Plaintiffs and Plaintiffs' Counsel. Surely, being forced to defend against claims that have not been authorized by, or brought with the fully informed consent of, the real party in interest and for the benefit of that party (as opposed to, for example, the benefit of counsel), would constitute significant prejudice.

But even putting all that aside, there is inherent prejudice in being forced to defend against claims that were not brought by a real party in interest and which may not have even been brought at all. At the time the TAC was filed, four of the Plaintiffs were represented by others, claiming that they were minors. This fatal mistake forecloses on any attorney-client relationship that may have existed, stripping the individuals who stood in place of these Plaintiffs of any authority. These individuals lacked authority to oppose numerous motions made throughout the years, including Defendants' Motion for Summary Judgment. *Wesley v. Samsung Elecs. Am., Inc.*, Civil Action No. 20-18629-JMV-AME, 2022 U.S. Dist. LEXIS 187282, at *7 (D.N.J. Oct. 13, 2022) ("Thus, no attorney-client relationship existed between them. D'Andrea's counsel had no

12

authority to act on his behalf in filing the Second Amended Complaint and assert the factual allegations and legal claims contained therein[.]").

Second, the parents or guardians of Sanjaya Thilakaratna,[4] Methmal,[5] Sirisena,[6] and Dharmapala[7] all lacked standing to bring the claims asserted in the TAC when it was filed in 2018. *See Debellis v. Kulp*, 166 F. Supp. 2d 255, 283-84 (E.D. Pa. 2001) (identifying "standing concerns," when plaintiff's parents brought action on daughter's behalf even though she was over eighteen); *Lausin ex rel. Lausin v. Bishko*, 727 F. Supp. 2d 610, 625 n.5 (N.D. Ohio 2010) ("[W]hen [the minor plaintiff] became 18 years old, [her mother] lost her standing to bring this lawsuit in a representative capacity on behalf of [her daughter]."); *see also Vandiver v. Hardin Cty. Bd. of Educ.*, 925 F.2d 927, 930 (6th Cir. 1991) (holding parents lost standing to bring claims in representative capacity to enforce son's rights when son turned eighteen, the age of legal majority under state law).  Thus, for these four Substitute Plaintiffs, there are no proper plaintiffs in the TAC for which they can be substituted.  It is important to determine whether Plaintiffs' Counsel has authority to continue to pursue these claims, given the filing of such an improper pleading without consultation with the purported clients. This remains true even if the Court were to determine that the substantial delay in filing these motions was somehow justified, for which there is currently no support in the record.

### III. The Court Should Hold a Hearing To Address Plaintiffs' Counsel's Authority With Respect to the Substitute Plaintiffs.

As should be readily apparent, the Substitute Plaintiffs' Motions are not the ordinary motions to substitute a party in interest that one might expect in the course of litigation.  They

---

[4] ECF No. 580.
[5] ECF No. 583.
[6] ECF No. 585.
[7] ECF No. 586.

13

reflect not only serious and years-long delay, but critically, they reveal that pleadings have been filed in the matter without authority of the real parties in interest. This, in the context of the other discovery issues that have surfaced over the past six months—all stemming from Plaintiffs' Counsel's failure to communicate with Plaintiffs—gives rise to a substantial concern that Plaintiff's Counsel's authority to represent each client indeed does not exist. *See Doraleh Container Terminal*, 109 F.4th at 613 (quoting *Osborn*, 22 U.S. (9 Wheat.) 738).

The SP Motions are deficient on their face given the utter absence of any necessary detail for the Court to adjudicate their respective requests. Accordingly, denial is appropriate on the papers alone. However, should the Court seek resolve this issue, Defendants request that the Court, as others have done, hold a hearing at which counsel and the Substitute Parties can be examined. *See id.* at 613-14 (directing full investigation on remand); *Fed. Ins. Co.*, 2024 U.S. Dist. LEXIS 235071, at *11 (ordering in-person hearing at which parties and counsel directed to testify under oath).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs motions to substitute. In the alternative, the Court should hold a hearing to confirm that Plaintiffs' Counsel has authority to pursue this litigation on behalf of each Substitute Plaintiff.

Dated: June 23, 2025

Respectfully submitted,

s/ Thomas R. Valen  
Thomas R. Valen  
Noel L. Hillman  
Anne M. Collart  
Marwan M. Rashed  
GIBBONS P.C.  
One Gateway Center  
Newark, New Jersey 07102-5310  
(973) 596-4500  

14

Samidh Guha
Venable LLP 151 West 42nd Street, 52nd Floor
New York, NY 10036
(212) 503-9846

*Attorneys for Defendants Raj Rajaratnam and the Estate of Jesuthasan Rajaratnam*