**GIBBONS**

THOMAS R. VALEN
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4885 Fax: (973) 639-6240
tvalen@gibbonslaw.com

August 22, 2025

**VIA ECF**
Hon. Joseph A. Dickson, U.S.M.J. (Retired)
Chiesa Shahinian & Giantomasi PC
105 Eisenhower Parkway
Roseland, New Jersey 07078

Re: *Krishanthi, et al. v. Rajaratnam, et al.*,
    **Docket No. 2:09-cv-05395-BRM-JSA**

Dear Judge Dickson:

This firm represents Defendants in the above-referenced matter. In accordance with the July 31, 2025 Consent Order Extending Discovery (ECF No. 600), please accept this Letter Brief in lieu of a more formal submission in support of Defendants' Motion to Compel. The parties have held extensive meet and confers regarding Phase II discovery and have narrowed the dispute to two remaining issues. The following arguments address objections made by Plaintiffs to Interrogatory Request No. 9 and Interrogatory Request No. 38, as to which the parties could not reach an agreement. Specifically, the interrogatories ask Plaintiffs simply: (1) to identify persons other than legal counsel with whom Plaintiffs discussed this litigation; and (2) to identify how and when Plaintiffs first became aware of the law firm, Motley Rice, in connection with this litigation. Although both requests are legally appropriate for the reasons stated below under normal circumstances, they take on heightened importance given the most recent and ongoing evidence of Motley Rice's lack of contact and communication with Plaintiffs.

**I.   BACKGROUND**

We presume that the Court is well aware of the allegations lodged by Motley Rice ostensibly on behalf of Plaintiffs against Defendants in this litigation. As part of the Court's bifurcation of discovery in this matter, ECF No. 193, Phase II focuses on "circumstances specific to each Plaintiff, *including* Plaintiffs' damages and discovery as to who carried out the underlying terrorist acts[.]" *Id.* (emphasis added).

Phase II discovery began in January 2025 and has been beset with complications stemming from Plaintiffs' counsel's lack of contact with their clients. At a conference on February 4, 2025, Motley Rice conceded that it had no contact with Plaintiffs even after the December 18, 2024 ruling on the motion for summary judgment and was unable to immediately provide basic address and identification information for Plaintiffs. While citing purported cultural and logistical hurdles, Motley Rice pledged to gather the requisite information personally and provide it by March 7, 2025 as ordered by the Special Master. *See* ECF No. 565. Motley Rice failed to do so and never sought an adjournment or extension of the deadline.

Gibbons P.C.

August 22, 2025
Page 2

Instead, it slowly produced, and continues to slowly produce, information in a haphazard matter, only to later revise and sometimes change even those previously produced, late disclosures.

As far as we can tell, Motley Rice is still laboring with this simple task that was due to be completed now almost five months ago. On May 30, 2025, Motley Rice filed motions to substitute Plaintiffs to address the fact that, unbeknownst to Motley Rice, many of whom were identified as minors in the litigation and pleadings had in fact reached the age of majority. On August 7, Motley Rice filed motions to substitute estates for Plaintiffs who had died during the course of this litigation. *See* ECF Nos. 578-587 and 604. These are not administrative or clerical issues. They go directly to issues of standing, justiciability, due process, choice of law, and the orderly administration of justice. Notably and remarkably, with each new revelation, it should be now well-established that Motley Rice has filed numerous incorrect pleadings and submissions, including major motions and a series of amended complaints, which both perpetuated old errors and committed new ones, all on behalf of Plaintiffs they have clearly not spoken to, in some cases, for over a decade, if at all, or at least not directly. As recently as three days ago, in response to your question, Motley Rice conceded that at least *forty-five more* motions to substitute are forthcoming, offering no explanation for the continued delay and no date of expected completion even now. We opined in another submission that what was disclosed as the deadline passed suggested it was the mere tip of the iceberg. The iceberg is indeed bigger when first revealed and getting bigger by the day.

This context, which is the subject of separate motion practice in this litigation, has direct relevance to this motion to compel. Each of the two interrogatories at issue here seek disclosure by Plaintiffs as to their relationship and contact with Motley Rice, mindful not to seek actual attorney-client communications.

Defendants served their Second Set of Interrogatories on Plaintiffs on March 21, 2025, after it became clear that Motley Rice had failed to meet your March 7, 2025 deadline heightening concerns about its contact with Plaintiffs.

Interrogatory No. 9 requests that Plaintiff:

> Provide a list of everyone, other than Your attorneys, with whom you have ever discussed this litigation and Your reasons for discussing it with them. If recorded or set forth in writing, attach audio or video recording of the conversations or the writing containing the conversation. If the discussion(s) were not recorded in any way, summarize their content with each individual.

*See* Plaintiffs' Objections to Defendants' Second Set of Interrogatories attached hereto as Exhibit A.

Interrogatory No. 38 requests an explanation as to:

GIBBONS P.C.

August 22, 2025
Page 3

> How did You become aware of the law firm, Motley Rice? If introduced by a person or persons, state their name(s). Provide a summary of what the person or persons informed you regarding Motley Rice.

*See id*. Plaintiffs object that these requests are "overbroad, unduly burdensome, harassing, and irrelevant[.]" *See id*. Motley Rice has offered no other description of these terms, which they have repeated in boilerplate fashion to object to virtually every request over the course of this litigation. Tellingly, Motley Rice is not objecting on the basis of privilege.

For the reasons set forth below, Plaintiffs are incorrect. These requests are narrowly tailored to critical issues in this case. Additionally, these requests, especially, Interrogatory No. 9, are reasonably calculated to lead to discovery of potential admissions that will assist Defendants in defending this litigation. Thus, Plaintiffs should be ordered to respond to both requests within ten days.

II.  **LEGAL ARGUMENT**

The primary purpose of these interrogatories is to discovery of potential admissions relevant to the proceedings and to determine both bias and incentives that may be relevant to Plaintiffs' claims and testimony should this matter proceed to trial. It is abundantly clear by now that Motley Rice did not themselves recruit Plaintiffs for this litigation. That was always likely, given that the firm is based in South Carolina, has no known prior relationship with Sri Lanka, its civil war or tsunami prior to its retention of the Former JTTF Agents. of the unusually limited and potentially non-existent contact between Motley Rice and its clients has now been confirmed. Motley Rice has conceded that it has utilized "consultants" and other personnel "on the ground" upon whom they rely on to communicate with Plaintiffs. Motley Rice has also admitted that they cannot communicate with Plaintiffs without these undisclosed intermediaries.

Interrogatory 9 and Interrogatory 38 ask Plaintiffs only to disclose those non-attorneys with whom they have spoken or otherwise communicated with about this litigation and how they were introduced to Motley Rice. Disclosures of this information will assist in assessing the basis for their understanding of this litigation both initially and on an ongoing basis given Motley Rice's admitted lack of contact with them; what efforts Motley made to conduct due diligence with regard to both the initial claims of all Plaintiffs and the changed circumstances of literally dozens of Plaintiff since then; how non-privileged documents including retainer agreements were obtained, secured and updated in light of those same changed circumstances; and what non-privileged representations or promises may have been made to Plaintiffs to join this litigation.

"Whether certain documents are relevant is viewed in light of the allegations of the complaint, not as to evidentiary admissibility[.]" *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, Civil Action No. 08-4168 (MLC), 2011 U.S. Dist. LEXIS 128430, at *40 (D.N.J. Nov. 7, 2011). "The more progressive approach to interrogatories dealing with legal matters is to view them in the

GIBBONS P.C.

August 22, 2025
Page 4

factual context within which they arise." *Microtron Corp. v. Minnesota Mining & Mfg. Co.*, 269 F. Supp. 22, 25 (D.N.J. 1967); *Deibler v. Sanmedica Int'l, LLC*, No. 19-20155(NLH/MJS), 2021 U.S. Dist. LEXIS 247974, at *9 (D.N.J. Dec. 30, 2021) ("It is 'well recognized that the federal rules allow broad and liberal discovery.'"). "If the answer might serve some legitimate purpose, either in leading to evidence or in narrowing the issues, and to require it would not unduly burden or prejudice the interrogated party, the court should require an answer." *Id.*

Here, Defendants are merely requesting that Plaintiffs "[p]rovide a list of everyone, other than [their] attorneys, with whom [they] have ever discussed this litigation." *See* Ex. A. Such a request is not "overbroad, unduly burdensome, harassing, [or] not reasonably calculated to lead to the discovery of admissible evidence[,]" but in fact entirely proper, and courts held such interrogatories to be reasonable. *See Rhodes v. Marix Servicing, LLC*, Civil Action No. 3:12-1636 (MAS), 2013 U.S. Dist. LEXIS 116989, at *5-6 (D.N.J. Aug. 19, 2013) (ordering defendant to respond to interrogatory seeking "the identity [of] each person who has knowledge of any facts relevant to the allegations in the Second Amended Complaint and/or [defendant's] Answer[.]" and ordering defendant to "provide the specific names of those individuals whom it believes have knowledge of relevant facts."); *Abraham v. Alpha Chi Omega*, 271 F.R.D. 556, 560 (N.D. Tex. 2010) (ordering defendant to identify "all persons with personal knowledge of . . . why [they] first contracted with [Affinity Marketing Consultants]," find that "[p]laintiff's request does not appear to be overly broad or unduly burdensome, and…[t]he request is limited to the time frame surrounding each Defendant's decision to initially contract with AMC, and it is limited to identifying individuals with knowledge of that specific decision."); *St. Paul Fire & Marine Ins. Co. v. King*, 45 F.R.D. 521, 522 (W.D. Okla. 1968) (narrowed Interrogatory and ordered plaintiff to provide the name of individuals "only with respect to persons interviewed or contacted by it who have knowledge of relevant facts.").

Each Plaintiff is similarly obligated to disclose how they learned about this litigation and to whom they have spoken with about their interest in the litigation. There is nothing either burdensome or prejudicial about making this basic disclosure in a non-class action case for each individual Plaintiff. Given the unusual circumstance here of Motley Rice's detachment from their erstwhile clients, it is even more relevant for Defendants (and potentially the Court) to have transparency as to this process. Moreover, this litigation has suffered for years from the clandestine relationship between Motley Rice, the Former JTTF Agents, and witnesses. With this history, the fuller transparency provided by these two limited Interrogatory responses will help to define what influence and motivations may have been brought to bear by third parties to each Plaintiff.

Defendants are entitled to know whether, when, and how Plaintiffs possessed either actual or constructive knowledge of their claims and understand their diligence in bringing their claims here in the United States. *See Burge v. Teva Pharm. Indus.*, No. 22-cv-2501 (DDC)(TJJ), 2025 U.S. Dist. LEXIS 24393, at *17 (D. Kan. Feb. 11, 2025) (overruling plaintiffs' relevance objections and holding that defendant was entitled to discovery on the nature of each individual

GIBBONS P.C.

August 22, 2025
Page 5

plaintiff's pre-suit investigation, the timing of when it occurred, the documents or other information considered, and the sources of that information); *Winiadaewoo Elecs. Am., Inc. v. Opta Corp.*, No. 13-cv-01247 (VC)(MEJ), 2018 U.S. Dist. LEXIS 140146, at *16 (N.D. Cal. Aug. 16, 2018) (ordering plaintiff to "inform [d]efendants *when [p]laintiff* knew enough to pursue claims of alter ego and successor liability in its current lawsuit and *how [p]laintiff* became aware of potential alter ego and successor liability claims."); *Carve Designs, Inc. v. Australian Apparel Pty. Ltd.*, 2016 U.S. Dist. LEXIS 187340, at *1 (C.D. Cal. Aug. 16, 2016) (ordering plaintiff to answer interrogatory request that sought information regarding when plaintiff learned of defendant's existence and when and how plaintiff first became aware of defendant's United States Patent and Trademark Office application).

Finally, Plaintiffs' assertion that the Court's December 17, 2014 Order forecloses this request is simply incorrect. The Court's Order states that "Phase II is to be limited to circumstances specific to each individual Plaintiff, *including* Plaintiff's damages[.]" ECF No. 193, p. 1 (emphasis added). The plain language of the Court's order did not limit, as Plaintiffs seek to do, Phase II to *just* damages. Moreover, these requests are directly relevant to potential impeachment of Plaintiffs if and when they testify at deposition and at trial.

\* \* \*

Based on the foregoing, we respectfully request that the Court grant Defendants' motion to compel responses to Interrogatories Nos. 8 and 38. We thank the Court for its attention to this matter.

Respectfully submitted,

s/ Thomas R. Valen
Thomas R. Valen

cc: All Counsel of Record (via ECF)